**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | ) **Case No.** 20-21595-GLT |
| Majestic Hills, LLC, | ) |
|     **Debtor,** | ) **Chapter** 11 |
| Majestic Hills, LLC, | ) |
|     **Movant,** | ) **Hearing Date:** 06/18/20 @ 10:00 a.m. |
|     vs. | ) **Response Due:** 06/08/20 |
| Mutual Benefit Insurance Company, | ) |
|     **Respondent.** | ) **Document No.** |

**DEBTOR'S MOTION FOR AN ORDER (I) APPROVING THE ASSUMPTION OF THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTOR AND MUTUAL BENEFIT INSURANCE COMPANY, (II) APPROVING THE SALE OF CERTAIN INSURANCE POLICIES, AND (III) ISSUING AN INJUNCTION PURSUANT TO THE SALE OF CERTAIN INSURANCE POLICIES**

**AND NOW**, comes the Debtor, Majestic Hills, LLC, by and through its counsel, Donald R. Calaiaro and Calaiaro Valencik, and presents the following:

**PRELIMINARY STATEMENT**

1. This Chapter 11 Case was filed to provide for the resolution of all current and future litigation claims against the Debtor, Majestic Hills, LLC. Through confirmation of a Chapter 11 plan of liquidation, the Debtor intends to establish a liquidating trust into which the proceeds of the Mutual Benefit Settlement Agreement, less certain fees and expenses, and other assets will be transferred. The liquidating trust will assume liability for, and use its assets to resolve, the litigation claims. By resolving the parties' respective rights and obligations under the Mutual Benefit insurance policies, obtaining the settlement payment from Mutual Benefit, and establishing procedures to govern distributions from the liquidating trust, the trust will be able to resolve, value, and, if eligible, pay current litigation claims that are submitted to the liquidating trust before an applicable bar date in a fair and efficient manner. Together, approval of the Mutual Benefit

Settlement Agreement and any other insurance settlement agreements and confirmation of a plan of liquidation will ensure a fair and equitable distribution among current litigation claimants. Accordingly, approval of the Mutual Benefit Settlement Agreement is integral to the successful conclusion of this Chapter 11 Case.

## JURISDICTION & VENUE

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicates for the relief requested herein are sections 105, 363, and 365 of the Bankruptcy Code. Such relief is warranted under Federal Rule of Bankruptcy Procedure 6004, 6006, and 9019 (the "Bankruptcy Rules").

## PARTIES

6.     The Movant is Majestic Hills, LLC, a Pennsylvania Limited Liability Company (hereinafter, "Majestic Hills" or "Debtor"), the Debtor-in-Possession in the above captioned bankruptcy. Majestic Hills continues to operate the Debtor's business as the Debtor-in-Possession and has all the rights and powers of a bankruptcy trustee pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

7.     The Respondent is Mutual Benefit Insurance Company (hereinafter, "Mutual Benefit", and collectively with Majestic Hills, the "Parties"), an insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Huntingdon, Pennsylvania. At all times material hereto, Mutual Benefit was authorized to transact business in the Commonwealth of Pennsylvania.

## **FACTUAL BACKGROUND**

8.  Majestic Hills, LLC filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Pennsylvania on May 21, 2020.

9.  The Debtor continues in the management of its business and properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in this Chapter 11 Case.

10.  This bankruptcy was filed by the Debtor to provide a resolution to certain litigation claims that have arisen from or are related to the development of properties located in North Strabane Township, Washington County, Pennsylvania.

11.  The Debtor entered into a Lot Purchase Agreement with NVR, Inc. d/b/a Ryan Homes to develop and sell to NVR one-hundred and seventy-nine (179) developed single family lots.

12.  Beginning on October 1, 2005 and continuing through October 1, 2019, Mutual Benefit issued primary-level and umbrella excess insurance policies (the "Policies")[1] to JND Properties, LLC, Majestic Hills, Ashwood Commons, LLC, Ashwood Land Partners, L.P, and Joseph N. DeNardo d/b/a JND Properties, as named insureds. Shari DeNardo and Parkridge Development LLC are potential insureds who asserted that Mutual Benefit has or will have coverage obligations based on their respective roles with Majestic Hills and or JND Properties, LLC.

---

[1] Policies and other capitalized terms shall have the meanings ascribed to them in the Definitions Section of the Settlement Agreement, attached to this Motion as Exhibit A.

13. Subsequent to the completion of the development, landslides occurred on the properties. The landslides caused the condemnation and destruction of certain lots and structures on the developed property and damage to others.

14. The Debtor has become entangled in litigation as a result of these landslides, including a lawsuit with NVR, Inc. in the United States District Court for the Western District of Pennsylvania and several separate lawsuits with property owners whose homes were allegedly damages or destroyed, and the Township of North Strabane and its Municipal Authority, in the Court of Common Pleas of Washington County, Pennsylvania (collectively, the "Lawsuits").

15. There are numerous parties who may be liable and each party's insurance companies have tendered defenses. Some insurance companies have undertaken representation with a reservation of rights.

16. As a result of the litigation claims against Majestic Hills, the Debtor asserted that Mutual Benefit has or will have coverage obligations in respect of the claims under one or more of the Policies.

17. Mutual Benefit disputes that any coverage exists under any of the Policies and commenced the Coverage Action in the Court of Common Pleas of Huntington County to seek such determination.

18. A Motion for Summary Judgment is pending in the Coverage Action in which Mutual Benefit has asked for a determination that there is no coverage for the claims.

**The Mutual Benefit Settlement Agreement**

19. Prior to the Petition Date, the Debtor conducted extensive, good faith negotiations with Mutual Benefit for the purpose of resolving the Policies that, subject to

their respective terms, conditions, and exclusions cover or allegedly cover the cost of defending and indemnifying Debtor for the Lawsuits. The Mutual Benefit Settlement Agreement is the product of those negotiations and, among other things, results in a settlement payment to the Debtor in the aggregate amount of $1,000,000.00 (the "Settlement Payment").

20. Through the Mutual Benefit Settlement Agreement, the Debtor has resolved various issues regarding the scope of coverage that may be available under the Policies.

21. The Mutual Benefit Settlement Agreement is premised on the Debtor's desire and intent to commence this Chapter 11 Case and to establish a liquidating trust to resolve all current Litigation Claims that are to be submitted to a liquidating trust before an applicable bar date. There is no indication that the Mutual Benefit Settlement Agreement would have been achievable outside those parameters. Without the Mutual Benefit Settlement Agreement and absent the filing of this Chapter 11 Case, the Debtor would have been unable to pay the costs of those Litigation Claims or the costs of pursuing insurance coverage.

## SUMMARY OF THE SETTLEMENT AGREEMENT

22. The Mutual Benefit Settlement Agreement resolves all claims of the Debtor against Mutual Benefit in respect of each of the Policies issued to the Debtor by Mutual Benefit, and identified on **Exhibit B** attached hereto. The material terms can be summarized as follows:[2]

> (a) Mutual Benefit agrees to pay a total of $1,000,000.00 within twenty (20) days of the date of the Order approving the Mutual Benefit Settlement Agreement becomes final and non-appealable. This amount includes a

---

[2] This is a summary only. Reference should be made to the complete Mutual Benefit Settlement Agreement attached hereto as Exhibit A. The terms of the Mutual Benefit Settlement Agreement shall supersede the terms of this summary in all instances.

$50,000.00 payment that was made to the Debtor pre-petition within five (5) days of the date the Parties executed the settlement agreement.

(b) The Debtor shall use the proceeds of the Mutual Benefit Settlement Agreement solely to make payments to or for the benefit of holders of Litigation Claims and for other costs and expenses associated with this Chapter 11 Case.

(c) Immediately upon Mutual Benefit's payment of the full amount under the Mutual Benefit Settlement Agreement (the "Payment Date"), all Policies shall be deemed to have been sold back to Mutual Benefit pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, and the sale shall operate as if Mutual Benefit had never issued the Policies.

(d) Upon the occurrence of the Payment Date, (a) Mutual Benefit and its predecessors, successors, subsidiaries, affiliates, directors, officers, and representatives shall be irrevocably released from (i) all claims by the Debtor, on behalf of itself and the bankruptcy estate, JND Properties, LLC, Parkridge Development LLC, Joseph N. DeNardo, individually, Shari DeNardo, individually, Ashwood Commons, LLC, and Ashwood Land Partners, L.P., under, arising out of, related to, and/or in connection with the Policies, and (ii) all extra contractual claims arising out of, related to and/or in connection with the Policies, and (b) all rights and obligations between the Debtor and Mutual Benefit in respect of the Policies shall be fully and finally extinguished. The Debtor's releases of Mutual Benefit and sale of the Policies back to Mutual Benefit shall leave Mutual Benefit completely released as if it never issued the Policies.

(e) To prevent claims that directly or indirectly arise from, are based upon, are attributable to, or derive from the Policies being purchased by Mutual Benefit, the Mutual Benefit Settlement Agreement is conditioned upon the Court entering an order pursuant to section 105(a) of the Bankruptcy Code permanently staying, retraining, and enjoining all persons who hold or assert, or may in the future hold or assert, any claim against the Debtor arising out of or in connection with the activities covered by the Policies, or in connection with the Debtor's activities giving rise to claims made or to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies, from asserting any claim or right to entitlement, or taking any other action against Mutual Benefit and its predecessors, successors, subsidiaries, affiliates, directors, officers, and representatives, for the purpose of obtaining any recovery or other relief from such protected entities or under or in connection with the Policies (the "Insurance Policy Injunction").

## BASIS FOR RELIEF

**A.  The Court Should Authorize The Assumption Of The Mutual Benefit Settlement Agreement Under Section 365 Of The Bankruptcy Code.**

23. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor "may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (stating that section 365 is traditionally subject to the "business judgment" standard).

24. Once a debtor articulates a valid business justification for the assumption of its agreements, "then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction." In re Filene's Basement, LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr.D.Del., Apr. 29, 2014); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr.S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

25. The approval of the Mutual Benefit Settlement Agreement is an important part of the Debtor's efforts in this Chapter 11 Case. As indicated above, the settlement provides significant proceeds to the estate, without requiring the Debtor to incur expenses to litigate the existing insurance coverage disputes with Mutual Benefit. Moreover, the Mutual Benefit Settlement Agreement allows the Debtor to effect a fair and efficient distribution of the settlement proceeds to its litigation claimants. Thus, the Debtor believes

that the assumption of the Mutual Benefit Settlement Agreement is an exercise of its sound business judgment.

**B.    The Court Should Approve the Mutual Benefit Settlement Agreement Under Bankruptcy Rule 9019.**

26.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee [or debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises are a normal part of the bankruptcy process. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). As a matter of policy, compromises and settlements are favored in order to minimize litigation and expedite administration of the estate. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986); accord In re Heissinger Resources Ltd., 67 B.R. 378, 383 (C.D. Ill. 1986) ("the bankruptcy court is to consider that the law favors compromise.").

27.    The decision to approve a settlement is within a bankruptcy court's discretion. See In re Summit Metals, Inc., 477 Fed. App'x 18, 21 (3d Cir. 2012) (applying the abuse of discretion standard to affirm the bankruptcy court's approval of a settlement). A settlement should be approved where the court determines it is fair and equitable and in the best interests of the bankruptcy estate. See In re Capmark Financial Group, Inc., No. 09-13684, 2011 WL 6013698 (Bankr.D.Del. Apr. 15, 2011).

28.    A bankruptcy court's approval of a settlement agreement must be fair and equitable, and the Court must balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise. In re ICL Holding Co., Inc., 802 F.3d 547 (3d.Cir.2015).

29. In determining whether a proposed settlement is fair and equitable, neither an evidentiary hearing nor a rigid mathematical analysis is required. Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 655 (8th Cir. 2008); In re Am. Reserve Corp., 841 F.2d 159, 163 (7th Cir. 1987) (minitrial not required). Rather, the court must determine whether the proposed compromise falls within the reasonable range of litigation possibilities. Tri-State Fin., LLC v. Lovald, 525 F.3d at 654 (the court is required only to "determine that the settlement does not fall below the lowest point in the range of reasonableness."); see also In re Allegheny Int'l, Inc., 118 B.R. 282, 311 (Bankr. W.D.Pa. 1990).

30. There are four criteria that a bankruptcy court should consider in approving settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. Martin, 91 F.3d at 393, (citing TMT Trailer Ferry); see also In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D.Pa.1986). The Court also may apply weight to a debtor's business judgment that the proposed settlement should be approved. See In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D.Pa. 1987) (concluding that the court should not interfere with or second guess the debtor's sound business judgment).

31. In resolving its coverage disputes with Mutual Benefit, the Debtor reviewed, among other things, the Policies and applicable law and determined that $1,000,000 was an equitable settlement payment given the potential litigation outcomes.

32. Mutual Benefit disputes it had any obligations to provide coverage for the litigation claims under any of the Policies. Mutual Benefit has contended that both the primary-level and umbrella Policies contain "products/completed operations hazard

exclusions" that preclude any coverage for defense or indemnity of the Lawsuits. Mutual Benefit further contends that certain exceptions to this exclusion appear in the primary level Policies constitute a scrivener's error and Mutual Benefit has sought reformation of the primary level Policies.

33. Mutual Benefit has provided the Debtor with substantial underwriting documentation and communications, both between Mutual Benefit and the Debtor's Broker, and between the Broker and JND and Joseph N. DeNardo, that appear to provide support for Mutual Benefit's contentions.

34. Mutual Benefit recently moved for summary judgment against the Debtor, JND, and the other individuals and entities that it has been defending in the Lawsuits, seeking reformation of the primary-level Policies and a declaration that it owes no duty to them to further defend, or indemnify them in these suits.

35. Although the Debtor believes there is significant support under applicable policy language in the primary-level Policies for its position that coverage exists under at least one of the primary-level Policies, the Debtor believes that litigating the issues to completion will only continue to result in substantially more legal fees and that there is a substantial chance that Mutual Benefit will prevail and obtain a declaration of no-coverage under any of the Policies. If Mutual Benefit was to prevail on its position, the Debtor and the others claiming under the Policies would recover nothing, and Mutual Benefit would cease participating in their defense. The Mutual Benefit Settlement Agreement eliminates these risks by providing for liquidation of the Policies and making the settlement proceeds available shortly after this Court approves this Motion.

36. Given the significant risks inherent in litigating the Coverage Action with Mutual Benefit in relation to the Policies to completion, the recovery provided for in the Mutual Benefit Settlement Agreement must be viewed as significant and propitious for the Debtor and its creditors. Considering the range of reasonable outcomes of those disputes – which includes a real chance of no recovery at all – the resolution afforded by the Mutual Benefit Settlement Agreement – which represents one full $1,000,000 "per occurrence" limit under the 2017-2018 primary Policy certainly exceeds the lowest point in the range of reasonableness.

37. The Mutual Benefit Settlement is in the paramount interests of creditors because it (i) resolves and thereby eliminates the dispute between the Debtor and Mutual Benefit over the accessibility of additional coverage for litigation claims under the Policies, (ii) makes the settlement proceeds more immediately accessible than had the Debtor litigated with Mutual Benefit to completion or awaited the normal delays attendant to the legal system, and (iii) facilitates the fair and efficient distribution of proceeds to the Debtor's litigation creditors.

38. For the foregoing reasons, the Settlement Agreement satisfies the requirements of Bankruptcy Rule 9019 and the <u>Martin</u> factors.

**C.    The Court Should Approve The Sale Of The Policies To Mutual Benefit Under Section 363 Of The Bankruptcy Code.**

39. Section 363(c)(1) of the Bankruptcy Code provides that a debtor-in-possession may sell property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts have recognized that insurance policies are property of the debtor's estate, which may be sold with court approval under section 363 of the Bankruptcy Code. <u>See</u>, <u>e.g.</u>, <u>MacArthur Co. v. Johns-Manville Corp.</u>

(In re Johns-Manville Corp.), 837 F.2d 89, 92-93 (2d Cir. 1988) (because numerous courts have determined that a debtor's insurance policies are property of the estate, court authorized a settlement of the debtor's insurance coverage claims pursuant to the court's authority to approve the sale of the debtor's property); Estate of Lellock v. Prudential Ins. Co., 811 F.2d 186, 189 (3d Cir. 1987) (same).

40. A debtor's sale of property outside the normal course should be authorized pursuant to section 363 of the Bankruptcy Code as long as a sound business purpose exists for doing so. See, e.g., In re Schipper, 933 F. 2d 513, 515 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1989); In re Lionel Corp., 722 F.2d 1063, 1070-71 (2d Cir. 1983). The Debtor's sale of the Policies to Mutual Benefit is an integral component of the Mutual Benefit's Settlement Agreement in exchange for which the Debtor and its creditors will receive the benefit of the Mutual Benefit's settlement payment of $1,000,000.00. And, as indicated above, payment of the settlement proceeds under the Mutual Benefit Settlement Agreement is integral to the success of this Chapter 11 Case and the fair and efficient administration of Claims by the liquidating trust. Accordingly, a sound business purpose exists for the sale of the Policies.

41. Section 363(f) of the Bankruptcy Code provides that the debtor-in-possession may sell property "free and clear of any interest in such property of an entity other than the estate" if at least one of the following conditions is satisfied: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable

proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(1)-(5). Section 363(f) authorizes a sale free and clear of "interests," not merely liens, and thus permits a sale of property free and clear of all claims and interests of any entity that "are derivative of the debtor's rights in that property." In re Dow Corning Corp., 198 B.R. 214, 244 (Bankr. E.D. Mich. 1996).

42. The Policies may be sold free and clear of all liens, encumbrances, and other interests of any entity pursuant to sections 363(f)(2), (f)(4) or (f)(5) of the Bankruptcy Code.

43. *First*, entities that receive notice of the Mutual Benefit Settlement Agreement and fail to object should be deemed to have consented to the Mutual Benefit Settlement Agreement for purposes of section 363(f)(2) of the Bankruptcy Code. See, e.g., In re Dura Auto. Sys., Inc., No. 06-11202 KJC, 2007 WL 7728109, at *6 (Bankr. D. Del. Aug. 15, 2007) (concluding that creditors who do not object to the asset sale are "deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code."); In re James, 203 B.R. 449, 453 (Bankr. W.D. Mo. 1997) (section 363(f)(2) satisfied where a secured creditor had notice and failed to object to proposed sale and thus "implicitly conveyed its consent to the sale"); In re Elliot, 94 B.R. 343, 345-46 (E.D. Pa. 1988) (implied consent sufficient to authorize section 363(f)(2) sale; consent implied from non-debtor that "received notice of the proposed sale and also admits that it did not file any timely objection"). Non-objectors should be deemed to have consented to the sale for purposes of section 363(f)(2) of the Bankruptcy Code.

44. *Second*, to the extent any objections are filed, the Policies may be sold free and clear of all claims and interests pursuant to either section 363(f)(4) of the Bankruptcy

Code. A sale free and clear is appropriate under section 363(f)(4) because the interests of the holders of such claims plainly are "in *bona fide* dispute" here. See In re Johns-Manville Corp., 837 F.2d at 93 (holding that vendor's alleged rights under certain endorsements for indemnity for asbestos claims was in *bona fide* dispute because a dispute existed as to whether "the product liability limits on the policies to which the vendor endorsements attach have been exhausted"). In particular, to the extent an objector is asserting the right as an insured under the Policies, the Debtor disputes the interest of such entity as an insured under such policies. To the extent an objector is a plaintiff asserting a right to recover directly from Mutual Benefit under the Policies, the Debtor has not conceded that any particular claim is valid at all or in the amounts sought by the claimant and expects that it or the liquidating trust will challenge or deny certain claims due to lack of proof. Accordingly, the interest of any objector in the Policies is in dispute. In short, there are a number of actual unresolved "disputes" with respect to the claims and interests that makes section 363(f)(4) of the Bankruptcy Code.

45. *Third*, under section 363(f)(5) of the Bankruptcy Code, holders of any Litigation Claims that object to the sale could be compelled to accept a money satisfaction for their interests. Indeed, the potential right to a money satisfaction is likely the *only* interest such claim or interest holders could have in the Policies. For this reason, courts have approved the sale of insurance policies free and clear of litigation claims pursuant to section 363(f)(5) of the Bankruptcy Code. See, e.g., In re Thorpe Insulation Co., No. 07-19271 (BB), Doc. Nos. 1676 and 1677 (Bankr. C.D. Cal. Nov. 25, 2008); In re Burns and Roe Enters., Inc., Case No. 0041610 (RG), Doc. No. 1200 (Bankr. D.N.J. Feb. 17, 2005).

**D.    The Court Should Approve The Insurance Policy Injunction Under Section 105(a) Of The Bankruptcy Code.**

46.    To effectuate and supplement the "free and clear" nature of the sale of the Policies to Mutual Benefit pursuant to section 363(f) of the Bankruptcy Code, Mutual Benefit has conditioned consummation of the Mutual Benefit Settlement Agreement upon the issuance of an order containing the Insurance Policy Injunction.

47.    Consistent with the policy buyback contemplated in the Mutual Benefit Settlement Agreement, the Insurance Policy Injunction would operate to prevent all persons who hold or assert, or may in the future hold or assert, any claim against the Debtor arising out of or in connection with the activities covered by the Policies, or in connection with the Debtor's activities giving rise to claims made or to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies, from asserting any claim or right to entitlement, or taking any other action against Mutual Benefit, for the purpose of obtaining any recovery or other relief from Fireman's Fund or under or in connection with the Policies.

48.    The Court has authority to issue the Insurance Policy Injunction pursuant to section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Issuance of an order containing the Insurance Policy Injunction is necessary and appropriate to carry out and enforce the "free and clear" nature of the sale of the Policies to Mutual Benefit under the Mutual Benefit Settlement Agreement pursuant to section 363(f) of the Bankruptcy Code.

49. The basis and appropriateness of the Insurance Policy Injunction in connection with a policy buyback under section 363(f) of the Bankruptcy Code is well-established. As the Court in In re Dow Corning Corp. observed:

> Courts have long recognized that inherent within the authority to sell estate property free and clear of liens is the power to enjoin creditors from pursuing the purchaser of such property. Nevertheless, more explicit protection is often needed to effectuate this important aspect of a § 363 sale. In other words, an actual injunction barring creditors from suing a purchaser of estate assets is sometimes necessary and appropriate to give the 'free and clear' aspect of § 363(f) meaning. When this is the case, a court has the power to 'issue an [] order . . . necessary or appropriate to carry out [§363(f), one of] the provisions of the [Bankruptcy Code].' 11 U.S.C. §105(a).

In re Dow Corning Corp., 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996) (certain internal citations omitted).

50. Courts within this District have issued insurance policy injunctions, primarily in the context of asbestos cases: In re Geo. V. Hamilton, Inc., No. 15-23704 (GLT), Doc. No. 1831 (Bankr. W.D. Pa. Feb. 27, 2018); In re Global Indus. Technologies, Inc., et al., No. 02-21626 (JKF), Doc. No. 9444 (Bankr. W.D. Pa. Sept. 24, 2007); In re Pittsburgh Corning Corp., No. 00-22876 (JKF), Doc. No. 7711 (Bankr. W.D. Pa. May 15, 2013). Insurance policy injunctions have been issued in other districts as well. See, e.g., In re Oakfabco., No. 15-27062 (JBS), Doc. No. 764 (Bankr. N.D. Ill. Dec. 18, 2018); In re Metex Mfg. Corp., No. 12- 14554 (CGM), Doc. Nos. 554 and 555 (Bankr. S.D.N.Y. June 23, 2014).

**WHEREFORE,** for the reasons set forth herein, the Debtor respectfully requests that this Court enter an Order substantially in the form attached to this Motion: (i) approving the assumption of the Mutual Benefit Settlement Agreement pursuant to section 365(a) of the Bankruptcy Code; (ii) approving the Mutual Benefit Settlement

Agreement pursuant to Bankruptcy Rule 9019; (iii) approving the sale, transfer, and conveyance by the Debtor of its interest in the Policies to Mutual Benefit, free and clear of any and all liens, claims, encumbrances, and interests of any kind or nature pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code; (iv) issuing the Insurance Policy Injunction pursuant to section 105(a) of the Bankruptcy Code; (v) approving the completion of performance of the other terms and conditions of the Mutual Benefit Settlement Agreement; and (vi) granting such other and further relief as may be just and proper.

**Respectfully Submitted,**

**DATE:** May 21, 2020

**BY:** /s/ Donald R. Calaiaro
**Donald R. Calaiaro, PA I.D. #27538**
**dcalaiaro@c-vlaw.com**

**CALAIARO VALENCIK**
**938 Penn Avenue, Suite 501**
**Pittsburgh, PA 15222-3708**
**(412) 232-0930**