## SETTLEMENT AGREEMENT AND RELEASE

This Agreement (the "Agreement") is made as of the Execution Date by and among Mutual Benefit Insurance Company ("Mutual Benefit," as defined below) , Majestic Hills, LLC, ("Majestic," as defined below), JND Properties, LLC ("JND," as defined below), Parkridge Development LLC ("Parkridge," as defined below), Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.P. Each of the foregoing is a "Party," and, collectively, are the "Parties."

## RECITALS[1]

WHEREAS, claims have been made against Majestic, JND, Joseph N. DeNardo, and Shari DeNardo, and these Parties have been named as defendants or as cross-defendants in numerous Majestic Hills Claims seeking money damages from Majestic for property damage alleged as the result of earth movement at the Majestic Hills development in North Strabane Township, Pennsylvania;

WHEREAS, one Majestic Hills Claim also has been asserted against Parkridge in its capacity as a former member of Majestic;

WHEREAS, Mutual Benefit issued primary-level and umbrella excess Policies  to JND Properties, Majestic, Ashwood Commons, LLC, Ashwood Land Partners, L.P., and Joseph N. DeNardo d/b/a JND Properties, as named insureds, and also naming JND

---

[1] Capitalized terms not defined in these Recitals shall have the meanings ascribed to them in the Definitions Section of this Agreement, or elsewhere in this Agreement, as applicable.

1

Properties, Inc. as a named insured (though the Parties stipulate that no such entity exists or ever existed);

WHEREAS, Majestic, JND, Joseph N. DeNardo, and Shari DeNardo assert that Mutual Benefit has or will have coverage obligations in respect of the Majestic Hills Claims under one or more of the Policies;

WHEREAS, Parkridge separately asserts that Mutual Benefit has or will have coverage obligations to Parkridge in respect of the Majestic Hills Claims asserted against Parkridge under one or more of the Policies;

WHEREAS, Mutual Benefit disputes that any coverage exists under any of the Policies for the Majestic Hills Claims asserted against Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo;

WHEREAS, on March 1, 2019, Mutual Benefit commenced, and is actively prosecuting, the Coverage Action;

WHEREAS, on March 25, 2020, Mutual Benefit filed a motion for summary judgment in the Coverage Action seeking reformation of the Primary Policies to clarify that the parties thereto at all times intended to exclude all coverage arising from products or completed operations, and did not intend to create any exceptions to the exclusion of all such claims from coverage under the Primary Policies;

WHEREAS, Majestic has determined that it would be prudent to commence a bankruptcy proceeding under chapter 11 of the Bankruptcy Code, to provide for an orderly distribution of its remaining assets (including, in particular, proceeds from settlements with its insurers of its disputed insurance coverage and to provide for the orderly resolution and payment of the various Claims);

2

WHEREAS, Mutual Benefit has reached an agreement with Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.P. to settle all disputes and to resolve any potential disputes regarding the Policies and coverage relating to Majestic, subject to the terms and conditions of this Agreement, by buying back all of the Policies for fair and reasonable value to provide funding for the resolution of any Claims in a manner that is satisfactory to Majestic and its creditors;

WHEREAS, Ashwood Commons, LLC, Ashwood Land Partners, L.P., as named insureds, consent to this Agreement; and

WHEREAS, the Parties agree and understand that, as to Majestic, this Agreement will be an executory contract in Majestic's bankruptcy case, and that creditors and parties-in-interest therein will have the opportunity to appear and be heard in the Bankruptcy Court on the question of whether the assumption of this Agreement is in the best interest of the Majestic bankruptcy estate;

NOW, THEREFORE, intending to be legally bound, the foregoing recitals constituting a part of the substance of this Agreement, the Parties agree as follows:

**I.    DEFINITIONS**

As used in this Agreement, the following terms have the meanings set forth below.

1.    "Approval Date" means the date on which the Approval Order becomes a Final Order.

2.    "Approval Order" means an order, in substantially the form attached hereto as Exhibit 1, with only such modifications as are acceptable to the Parties,

3

entered by the Bankruptcy Court pursuant to Bankruptcy Code Sections 105, 363(b) and (f), and 365, and Bankruptcy Rules 6004, 6006, and 9019, as well as any other provision of the Bankruptcy Code or Bankruptcy Rules as may be appropriate, which Order shall:  (a) approve Majestic's assumption of this Agreement under Section 365 of the Bankruptcy Code; (b) authorize Majestic to undertake the remaining transactions contemplated by this Agreement, (c) authorize the sale of the Policies to Mutual Benefit free and clear of any and all Interests under Section 363(f) of the Bankruptcy Code; (d) find that Mutual Benefit is a good faith purchaser of the Policies and, as such, is entitled to all protections provided to a good faith purchaser under Bankruptcy Code Section 363(m); (e) provide for the Injunction (as defined below); (f) find that the releases in the Agreement and the policy buyback therein comply with the Bankruptcy Code and applicable non-Bankruptcy law; (g) approve the Agreement and find that the consideration exchanged constitutes a fair and reasonable settlement of the Parties' respective rights and obligations and constitutes reasonably equivalent value; (h) rule that upon the Approval Date the Policies shall be terminated and of no force and effect and be exhausted in respect of all coverages thereunder; and (i) find that the Agreement is binding on any chapter 11 trustee for Majestic and on any liquidating or other trust or distribution vehicle established under a chapter 11 plan for Majestic, and on any chapter 7 trustee in the event the case is converted to a chapter 7 proceeding.  Majestic shall use its best efforts to obtain an order in the form attached hereto as Exhibit 1 and, if not, pursuant to Section 4.6 below, agrees to work cooperatively with Mutual Benefit to the extent modifications to the Order are necessary.

4

3.    "Bankruptcy Case" means the case to be commenced by Majestic under chapter 11 of the Bankruptcy Code in the Bankruptcy Court within fifteen (15) business days of the Execution Date.

4.    "Bankruptcy Code" means Title 11 and the applicable provisions of Titles 18 and 28 of the United States Code, as amended from time to time.

5.    "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Pennsylvania.

6.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

7.    "Claims" means any and all past, present, or future, known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, matured or unmatured, liquidated or unliquidated, claims (including "claim" as defined in broadest reading of Section 101(5) of the Bankruptcy Code), proofs of claim, causes of actions, cross-claims, liabilities, rights, demands (including letter demands, notices, or inquiries from any person or government agency), penalties, assessments, damages, requests, suits, lawsuits, costs (including attorneys' fees and expenses), interest of any kind, actions, administrative proceedings, criminal proceedings, or orders, of whatever nature, character, type, or description, whenever and however occurring, whether at law or in equity, and whether sounding in tort or contract, or any statutory, regulatory or common law claim or remedy of any type including, without limitation:  (a) any Majestic Hills Claim; (b) any claim seeking any type of relief, including compensatory, consequential, exemplary or punitive damages, rescission, or declaratory or injunctive relief; (c) any claim for breach of contract or failure to perform any contract term; (d) any claim for failure to design, failure to properly construct, or failure to properly test

5

any soil or ground condition; (e) any claim on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act or similar statute, regulation or code, any unfair claims; (f) Any claim for fraud, conspiracy, concerted action, or other type of alleged misconduct; or (e) any claim for any other act or omission of Mutual Benefit of any type for which a claimant might seek relief.

8.     "Coverage Action" means the insurance coverage action against Majestic, JND, Joseph N. DeNardo, Shari DeNardo, and others, pending in the Huntingdon County Pennsylvania Court of Common Pleas, styled *Mutual Benefit Insurance Company v. Majestic Hills, LLC, et al.*, Case No. 2019-0348.

9.     "Defense Costs" shall mean all amounts paid by Mutual Benefit on account of Majestic Hills Claims asserted against any or all of Majestic, JND, Parkridge, Joseph N. DeNardo, and/or Shari DeNardo that are not Indemnity Costs.

10.    "Direct Action Claim" means any Claim by any Person other than an insured under the Policies directly against Mutual Benefit under any Policy that arises from the activities or products of any such insured, or any insurance contract or Policy that is, or may in the future be, asserted to provide coverage for any of the aforementioned Claims, whether arising by contract, in breach of contract or tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against Mutual Benefit.

11.    "Estate" means the bankruptcy estate created under Section 541 of the Bankruptcy Code for Majestic as a result of the filing of the Bankruptcy Case.

6

12.    "Execution Date" means the first day upon which all Parties have executed this Agreement.

13.    "Final Order" means an order or judgment (including any modification or amendment thereof) that remains in effect and has not been reversed, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing, or certiorari has been taken or, if taken, has been resolved and no longer remains pending.

14.    "Including" means including without limitation.

15.    "Indemnity Costs" means amounts that Mutual Benefit pays as part or all of any settlement or judgment with respect to Majestic Hills Claim claims asserted against any or all of Majestic, JND, Parkridge, Joseph N. DeNardo, and/or Shari DeNardo.

16.    "Injunction" means a permanent injunction pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code to become effective upon the Approval Date permanently enjoining the prosecution, continuation, or commencement of any Interest that any Person holds or asserts or may in the future hold or assert against Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo or Mutual Benefit, and the assertion of any Claim or right to entitlement or taking any other action against Mutual Benefit for the purpose of obtaining any recovery or other relief from Mutual Benefit or under or in connection with the Policies, arising out of or in connection with of the activities covered by the Policies, or in connection with Majestic's activities giving rise to claims made or to be

7

made under the Policies, or any other person who may claim to be an insured,

additional insured, or otherwise entitled to any benefit under the Policies.  The

Injunction shall enjoin all Claims released under Section 5.1(a) of this Agreement.

17.    "Insurance Coverage Claim" means any Claim seeking defense or

indemnity or any other benefit, including any claim for contribution or indemnity by

Other Insurers, under or relating to the Policies, including as to alleged existence and

exhaustion of applicable limits of each and every Policy.  "Insurance Coverage Claim"

does not include a dispute arising under or with respect to this Agreement.

18.    "Interests" means all liens, Claims (including Majestic Hills Claims and

Direct Claims, claims  for Breach of Contract, claims asserting any failure to properly

design or test soil or development site conditions ), encumbrances, interests,

demands and other rights of any nature, whether at law or in equity.

19.    "JND" means JND Properties, LLC, a Pennsylvania Limited Liability

Company.

20.    "Majestic" means Majestic Hills, LLC, a Pennsylvania limited liability

company.

21.    "Majestic Hills Claim" means any Claim, including any Direct Action Claim,

arising from or relating to the development of the Majestic Hills, development in North

Strabane Township, Pennsylvania, in any manner or fashion, under any legal theory,

including, without limitation, the actions currently pending in the Washington County

Court of Common Pleas, and the United States District Court for the Western District

of Pennsylvania, against some or all of Majestic, JND, Parkridge, Joseph N. DeNardo,

or Shari DeNardo, or any other claims asserted against these Parties by any current

8

or former owner of a home in the Majestic Hills Development, or any governmental entity, whether such Claims fall within or outside the scope of the definitions of "products liability /completed operations hazard," or their equivalents, contained in the Policies.  "Majestic Hills Claim" includes Claims for contribution, indemnity, reimbursement or otherwise arising from the foregoing.

22.    "Motion" means the motion, and any exhibits attached thereto, to be filed by Majestic with the Bankruptcy Court for approval of Majestic's assumption of this Agreement and the sale of the Policies and entry of the Approval Order, which Motion shall be in form and substance acceptable to Mutual Benefit.

23.    "Mutual Benefit" means Mutual Benefit Insurance Company and its predecessors, successors, subsidiaries, affiliates, directors, officers, and representatives.

24.    "Notice of Motion" means the notice of the Motion, which notice shall be in form and substance acceptable to Mutual Benefit, and which notice Majestic shall serve at the time it files the Motion with the Bankruptcy Court on the Persons, and in accordance with the terms, set forth in Section 4.3 of this Agreement.

25.    "Other Insurer" means any Person, other than Mutual Benefit, that provided, or is claimed to have provided, any insurance coverage to Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), or Shari DeNardo.

26.    "Parkridge" means Parkridge Development LLC, a Pennsylvania Limited Liability Company and former member of Majestic, having sold its membership interest back to Majestic in July 2017.

9

27.    "Payment Date" means the date on which all portions of the Settlement Amount have been paid by Mutual Benefit according to the provisions of Section 3.2 of this Agreement.

28.    "Person" means and includes a natural person or persons; a group of natural persons acting as individuals; a group of natural individuals acting in collegial capacity (e.g., as a committee, board of directors, etc.); a corporation, partnership, limited liability company or limited partnership; a proprietorship, joint venture, trust, legal representative, or any other unincorporated association, business organization or enterprise; any government entity; and any successor in interest, heir, executor, administrator, trustee, trustee in bankruptcy, or receiver of any person or entity.

29.    "Petition Date" means the date on which Majestic files the Bankruptcy Case.

30.    "Policies" means:  (a) the insurance policies listed on Exhibit 2 attached hereto; (b) any other known or unknown primary, umbrella, excess, or other liability insurance policies, contracts, or coverages of any nature, type or kind, issued or allegedly issued by Mutual Benefit that provide coverage for Majestic Hills Claims and under which Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), or Shari DeNardo are, allegedly may be, or claim to be an insured, named insured, additional insured, additional named insured, or otherwise entitled to any insurance coverage or benefits; and (c) any binders, cover notes, and endorsements to any policies referenced in (a) or (b) above.

31.    "Settlement Amount" means the amount to be paid by Mutual Benefit pursuant to Section 3.2 of this Agreement.

10

References to this Agreement and other documents shall be deemed to include all subsequent amendments and other modification thereto.

## II.    Cessation of Litigation Activities

2.1    Except as provided in this Agreement, upon the Execution Date, the Parties shall cease all litigation activities against each other in the Coverage Action. Within three (3) days of the Execution Date, Mutual Benefit will cause to be filed with the court in the Coverage action a withdrawal of the praecipe to list its pending summary judgment motion for oral argument, but shall not be required to withdraw the motion for summary judgment itself.

2.2    Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo each agree from and after the Execution Date that (a) all outstanding tenders of Majestic Hills Claims to Mutual Benefit for defense and/or indemnity shall be deemed withdrawn; (b) Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo shall not tender any further Claims to Mutual Benefit; (c) Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo will not request that Mutual Benefit fund any judgments or settlements of any Claims; and (d) Mutual Benefit shall have no obligation to pay, handle, object to, or otherwise respond to any Claim, including without limitation any Majestic Hills Claims.

2.3    The Parties shall bear, as to each other only, their own costs, expenses, and counsel and professional fees in the Coverage Action and the Bankruptcy Case, except as provided in this Agreement.

## III.    SALE OF POLICIES, PAYMENT OF SETTLEMENT AMOUNT, AND DISMISSAL OF COVERAGE ACTION

3.1    Subject to all of the terms and conditions of this Agreement, including without limitation the approval of the Bankruptcy Court, in full and final settlement of all

responsibilities under and arising out of the Policies, and in consideration of the
conveyance of the Policies to Mutual Benefit, Mutual Benefit shall purchase from
Majestic, JND, Parkridge, Joseph N. DeNardo, Shari DeNardo, Ashwood Commons,
LLC, and Ashwood Land Partners, L.L.P., and Majestic, JND, Parkridge, Joseph N.
DeNardo, Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners,
L.L.P. shall sell, convey, transfer, and deliver to Mutual Benefit, upon the Approval Date,
each of the Policies, and any and all rights under the Policies, free and clear of any and
all Interests of any and all Persons.

    3.2    Subject to all of the terms of this Agreement, in full and final settlement of
all responsibilities under and arising out of the Policies, and in consideration of the sale
of the Policies to Mutual Benefit free and clear of any and all Interests of any and all
Persons, Mutual Benefit shall pay $1,000,000.00 in U.S. currency.

    A.  Mutual Benefit will pay $50,000.00 to Majestic within five (5) business days of
the Execution Date.  Said payment shall be non-refundable and may be used
to pay the costs of the preparation of the bankruptcy petition and all related
preparations;

    B.  Mutual Benefit will pay $950,000.00 within twenty (20) days of the Approval
Date. It is anticipated that $900,000.00 of this Settlement Amount shall be
used and disbursed for the resolution of all claims asserted against Majestic,
and $50,000.00 shall be used for administrative costs or creditor distribution
in the Bankruptcy Case, or as authorized by the Bankruptcy Code and
Bankruptcy Rules or by Bankruptcy Court order.

C. The amount that Mutual Benefit may become responsible to pay pursuant to
Section 3.2(B) of this Agreement shall be reduced dollar-for-dollar by the
amount of Indemnity Costs and/or Defense Costs that Mutual Benefit pays on
account of Majestic Hills Claims resolved by settlement or otherwise (i) during
the period from the Execution Date until the date Majestic files its bankruptcy
petition, (ii) during any period during which the Automatic Stay in the
Bankruptcy Case has been lifted, modified, or annulled by the Bankruptcy
Court, and/or (iii) at any time following the Execution Date to the extent that
such Indemnity Costs and/or Defense Costs are paid on behalf of Parties
other than Majestic.

3.3    The Parties agree that:  (a) the Settlement Amount is the total amount
Mutual Benefit is obligated to pay on account of any and all Claims of any kind made
under or related to the Policies or the fact that the Mutual Benefit issued any of the
Policies; (b) under no circumstance will Mutual Benefit ever be obligated to make any
additional payments to Majestic, the Estate, or any other Person in connection with the
Policies or directly or indirectly related to or arising out of Mutual Benefit having insured
Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND
Properties), or Shari DeNardo; (c) all limits of liability of the Policies, including all per
occurrence and aggregate limits, shall be deemed fully and properly exhausted; (d) the
Settlement Amount is the full purchase price of the Policies, and upon the Approval
Date, Mutual Benefit shall be deemed to own the Policies free and clear of any and all
Interests of any Person; (e) subject to the terms of this Agreement and the occurrence
of the Approval Date, Mutual Benefit shall have no further obligation to Majestic, the

13

Estate, or any other Person under the Policies for any Claim; and (f) the Settlement Amount is at least equal to the fair value of the Policies, in view of Mutual Benefit's coverage defenses, Majestic's intended Chapter 11 filing, and the ultimate termination of Majestic's existence as part of its Bankruptcy Case.

3.4     Effective immediately upon the Payment Date, and without any further action by any of the Parties, all Policies shall be deemed to have been sold back to Mutual Benefit pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, and that sale shall operate as though Mutual Benefit had never issued the Policies.

3.5     Within ten (10) days of the Payment Date, Mutual Benefit shall file a praecipe in the Coverage Action to mark the Coverage Action Settled, Discontinued, and Ended, with prejudice and without costs.

## IV.    BANKRUPTCY-RELATED OBLIGATIONS

4.1     Majestic shall commence the Bankruptcy Case within fifteen (15) business days after the Execution Date.

4.2     Within fifteen (15) business days after the Petition Date, Majestic shall file the Motion pursuant to Bankruptcy Code Sections 105, 363, 365, and Bankruptcy Rules 6004, 6006, and 9019.  Majestic shall seek a hearing date that will allow creditors and parties-in-interest a reasonable opportunity to review and respond to the motion. Majestic covenants and agrees that it will use its best efforts to obtain entry of the Approval Order as a Final Order, including (but not limited to) using best efforts to resolve or defeat any objections that may be raised by any holder of any Claims or their counsel, or by any other insurer of Majestic.

4.3    Majestic shall, promptly upon filing the Motion, serve a notice of the
Motion on:  (a) each Person known to Majestic to have a Claim against it or the Estate
through participating in the Bankruptcy Case, the filing of a lawsuit, or the filing of a
proof of claim or other assertion of a Claim, or otherwise (or, with the authorization of
the Bankruptcy Court, to such Person's counsel of record, if known to Majestic); (b) any
and all Persons known to Majestic entitled or allegedly entitled to insurance coverage
under the Policies, including additional insureds and those Persons falling within a
policy definition of "named insured"; (c) all other Persons who have filed timely proofs of
claim in the Bankruptcy Case; (d) Westfield Insurance Company and all other Persons
known to have provided general liability insurance to Majestic, JND, or Parkridge from
January 1, 2015 to the present; (e) all Persons on any master service list maintained in
the Bankruptcy Case; and (g) all other parties in interest pursuant to Bankruptcy Rules
2002 and 6004 and any other applicable local rules, including any Person who or that
filed a notice of appearance and demand for service of papers in the Bankruptcy Case.
In addition, to ensure the broadest notice possible, Majestic shall seek entry of an order
of the Bankruptcy Court, in a form agreed by Mutual Benefit, authorizing publication
notice of the hearing on the Motion in such publications as Mutual Benefit may
reasonably request.  Mutual Benefit shall reimburse Majestic or the Estate, as
applicable, for the costs of publishing notice of the hearing on the Motion, which
reimbursement shall be in addition to the Settlement Amount.  As soon as reasonably
practical after filing the Motion and completion of the publication notice, Majestic shall
file in the Bankruptcy Case a certificate of the service provided by mail and by
publication.

15

4.4    If the Approval Order or any other order of the Bankruptcy Court relating to this Agreement is appealed by any Person other than Majestic or Mutual Benefit (or a petition for certiorari or motion for rehearing or re-argument is filed by any Person other than Majestic or the Mutual Benefit with respect thereto), Majestic agrees to take all steps as may be reasonable and appropriate to defend against such appeal, petition, or motion at its sole expense; provided however, that nothing herein shall preclude the Parties from consummating the transactions contemplated herein if the Approval Order shall have been entered and has not been stayed and Mutual Benefit, in its sole discretion, waives in writing the requirement that the Approval Order be a Final Order.

4.5    Each of the Parties further agrees not to take any appeal from, or to seek to reopen, reargue, obtain reconsideration of, or otherwise contest or challenge in any way, directly or indirectly, the Approval Order or any other order provided for by, or executed or entered pursuant to, or in implementation of, this Agreement, except to the extent that any such order shall be inconsistent with the terms hereof.

4.6    Majestic agrees to reasonably cooperate with Mutual Benefit and its representatives in connection with the Approval Order and the Bankruptcy Case.  Such reasonable cooperation shall include consulting with Mutual Benefit at its request (so long as such request is not unreasonable) concerning the status of the Bankruptcy Case, including the status of the Motion or any objections to the Motion, and providing Mutual Benefit as soon as reasonably practicable with copies of non-privileged documents that are not otherwise filed as of public record relating to the Bankruptcy Case, the Motion, or the service of the Motion.

4.7    In the event that, at any time between the Petition Date and the Approval Date, any Person asserts a Claim against Mutual Benefit arising out of, in connection with, or related to the Policies, Majestic shall immediately seek an order from the Bankruptcy Court enjoining such Claim.

4.8    Majestic shall make best efforts to ensure that the Approval Order and any chapter 11 plan as to Majestic provide that as a condition to the receipt of any payment from the trustee or other claimant, each holder of an any Claim shall execute a release that, as to Mutual Benefit, is materially the same in scope and substance as the relevant Claimant Release attached hereto as Exhibit 3.  At no time shall the scope or contents of the form of any Claimant Release provided for in this Section as it applies to Mutual Benefit be modified without Mutual Benefit's written consent.  Neither the Estate nor any trust or entity paying Claims against Majestic or its estate shall allow, liquidate, compromise, or resolve any Majestic Hills Claim unless it first obtains from the Claimant an executed release which, as to Mutual Benefit, is materially the same in scope and substance as the relevant Claimant Release attached here to as Exhibit 3. Notwithstanding the foregoing, nothing in this Section shall prevent the Estate or entity paying Claims against Majestic or its Estate from:  (a) reviewing any Claim or making any offer to any Claimant to allow, liquidate, compromise, or resolve a Claim; provided, however, that should a Claimant accept such offer, the Claimant shall execute and provide a release to the extent provided hereinabove; (b) paying pursuant to any judgment or order as required by applicable law (whether or not a release is obtained as provided herein); or (c) disallowing or liquidating a claim at a zero value (whether or not a release is obtained as provided hereinabove).

17

4.9      Majestic shall make best efforts to ensure that any order confirming a chapter 11 plan proposed by Majestic includes a third party injunction (in addition to the injunction referenced in Sections I.2 and I.15 above) that bars assertion against Mutual Benefit of any Claims and/or of any Claim released hereunder.

4.10     Majestic shall make reasonable efforts to ensure that any chapter 11 plan for Majestic or order confirming such plan shall provide that the trustee or other payor of Claims will indemnify and hold harmless Mutual Benefit and Majestic for any costs, liability, damages, or Claims arising from, attributable to or resulting from any Claim or (as to Mutual Benefit) any other Claims released under this Agreement.

4.11     In the event that no chapter 11 plan that provides for the creation of a Trust becomes effective, Majestic agrees that it shall take all reasonable steps necessary to ensure that any other trustee or payor of Claims is bound to the obligations that are set forth in this Agreement, to further ensure that the trustee or payor of Claims shall act in accordance with the terms of the provisions set forth in Exhibit 4 to this Agreement (understanding that the trustee or payor of claims shall act in the role of the Trust under the terms of those provisions), and to cooperate with Mutual Benefit in good faith to ensure compliance with any additional requirements that are imposed under Medicaid statutes or regulations in the future in the event that any claims for bodily injury are asserted.  Mutual Benefit agrees that it shall consider any and all reasonable requests by the trustee or other payor of Claims for accommodations to the procedure established by this Agreement for the resolution and payment of the Claims.

(c)    The Parties agree that nothing in this Section 4.11 shall constitute or be construed as an admission.

## V.    RELEASES

5.1    Subject to the occurrence of the Payment Date and no exercise by any Party of its termination rights under Section 8.1 of this Agreement, effective upon payment of the Settlement Amount, and without any further action of the Parties:

(a)    Majestic, on behalf of itself and the Estate, and JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.L.P., hereby fully, finally, and completely remises, releases, acquits, and forever discharges Mutual Benefit from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected with respect to, relating to, or in any way arising out of the Policies, Mutual Benefit having issued the Policies or having insured Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), or Shari DeNardo including bad faith, unfair or improper claims handling or settlement practices, conspiracy, fraud, violation of any covenant of good faith and fair dealing, violation of any law, regulation, code, or statute, or other any other conduct whether based in contract, tort, or otherwise.  The release of Mutual Benefit under this Section 5.1 of this Agreement shall include, but shall not be limited to, any and all Claims for coverage with respect to, relating to, or in any way arising out of the Policies for property damage, bodily injury, personal injury, advertising injury, or any other form of loss potentially covered under the Policies.  In addition, to the extent not previously withdrawn pursuant to Section 2.2 of this Agreement, Majestic, on behalf of

itself, and the Estate, and JND, Parkridge, Joseph N. DeNardo, Shari DeNardo hereby withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted to Mutual Benefit under the Policies and further surrender, relinquish, and release any further right to tender or present any Claims whatsoever to Mutual Benefit under the Policies.  Furthermore, by virtue of the foregoing releases, Mutual Benefit shall have no duty to defend or indemnify Majestic or the Estate, or JND, Parkridge, Joseph N. DeNardo, or Shari DeNardo, with respect to any past, present, or future Claim, nor shall Mutual Benefit have any other duty or obligation whatsoever to any other Person with respect to any and all Claims arising out of, in connection with, and relating to the Policies, Mutual Benefit having issued the Policies or having insured Majestic, JND, Parkridge, Joseph N. DeNardo, Shari DeNardo, Ashwood Commons, LLC, or Ashwood Land Partners, L.L.P..

(b)    Mutual Benefit hereby fully, finally, and completely remises, releases, acquits and forever discharges Majestic, JND and Parkridge their members, officers, and/or representatives (in their respective capacities as such), and Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, Ashwood Land Partners, L.L.P., and the Estate, from any and all Claims whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected with respect to, relating to, or in any way arising out of the Policies.

5.2    The releases set forth in Section 5.1 of this Agreement are not intended to, and shall not, extend to or otherwise release or discharge any rights, privileges,

benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under, this Agreement.

5.3    The Parties acknowledge that there may be changes in the law with respect to interpretation of coverage under the Policies or otherwise, or the Parties may hereafter discover facts different from, or in addition to, those which they now believe to be true with respect to any and all of the claims herein released.  Nevertheless, the Parties hereby agree that the releases set forth above shall be and remain effective in all respects, notwithstanding any changes in the law or the discovery of such additional or different facts.  Moreover, Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo understand that Claims that have been or may be asserted against them may increase or decrease in amount or in severity over time, that Claims that have been or may be asserted against them may include progressive, cumulative, unknown, and/or unforeseen elements, and that there may be hidden, unknown, and unknowable damages, defense expenses, or other costs related to such Claims.  Nevertheless, the Parties irrevocably and knowingly agree that the releases contained in Section 5.1 of this Agreement include a full and complete and irrevocable release and discharge from all known and unknown rights or Claims or Interest arising out of, in connection with, or relating to the Policies.

5.4    In furtherance of their express intent to fully, finally, and irrevocably release and discharge each other for all Claims, known and unknown, from the beginning of time until the end of time to the extent set forth in this Section 5 of the Agreement, each of the Parties expressly waives any and all rights it may have under any contract, statute, code, regulation, ordinance, or the common law, which may limit

21

or restrict the effect of a general release as to Claims, arising out of, in connection with, or relating to the Policies.

5.5    The releases set forth in this Section 5 of the Agreement shall not apply to or have any effect on Mutual Benefit's right to any claim for reinsurance in connection with the Policies or Parkridge's rights against any insurer other than Mutual Benefit.

5.6    Subject to the other provisions of this Agreement, to the extent that the releases set forth in this Section 5 of the Agreement run to the favor of any Persons who are not signatories hereto, this Agreement is hereby declared to be made in and for their respective benefits and uses.

5.7    Majestic, on behalf of itself and the Estate, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo, warrant and represent that none of the Claims herein released has been, or will be, assigned or transferred, in whole or in part, to any Person.  Majestic, on behalf of itself and the Estate, agrees to fully defend, indemnify, protect, save, and hold harmless Mutual Benefit from and against any such Claims (including, but not limited to, the payment of attorneys' fees and costs actually incurred, whether or not litigation is commenced) based on, in connection with, or arising out of such assignment or transfer, or purported or claimed assignment or transfer.

5.8    Majestic, on behalf of itself and the Estate, represents, warrants, and agrees that it will not in any way assist any Person in the establishment of any Claim against Mutual Benefit that arises out of, results from, or in any way relates to, Mutual Benefit's investigation, handling, defense, or settlement by Mutual Benefit of Claims, including those released under this Agreement.

## VI.    REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1    Each of the Parties separately represents and warrants as follows:

(a)    Subject to the entry of the Approval Order, he, she, or it has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement;

(b)    Subject to the Approval Date, the execution and delivery of, and the performance of the obligations contemplated by this Agreement have been approved by duly authorized representatives of the Party, and by all other necessary actions of the Party;

(c)    Each Party has expressly authorized his, her, or its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

(d)    This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for value and valuable consideration; and

(e)    Each Party will use his, her, or its best efforts to seek entry of the Approval Order as attached in Exhibit 1.

6.2    Mutual Benefit represents and warrants that it has made a reasonable investigation and that, based on that reasonable investigation, it is aware of no policies other than the insurance policies that are identified on Exhibit 2 to this Agreement that provide coverage for any liabilities.

## VII.    JUDGMENT REDUCTION

7.1    Majestic (for itself and the Estate) JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), and Shari DeNardo hereby agree as follows with respect to any Claim, case, controversy, arbitration, lawsuit, or other proceeding of any kind involving any one or more of them:

(a)    Such Parties will not seek to obtain payment from any Person or Other Insurer of any amount that may result in liability to Mutual Benefit; and

(b)    Without limiting the effect of the Injunction and the releases set forth in Section 5 of this Agreement, in the event that any Person or Other Insurer obtains a judicial determination, settlement or binding arbitration award that it is entitled to obtain a sum certain from Mutual Benefit as a result of a Claim for contribution, subrogation, indemnification, reimbursement or other similar Claim against Mutual Benefit for Mutual Benefit's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense or indemnity obligations of Mutual Benefit for any Claims released pursuant to this Agreement, such Party shall voluntarily reduce its/their judgment or Claim against, or settlement with, such Person or Other Insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification, reimbursement or similar Claims against Mutual Benefit.  To ensure that such a reduction is accomplished, Mutual Benefit shall be entitled to assert this Section 7 as a defense to any action for any such portion of the judgment, settlement, or binding arbitration award, and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Mutual Benefit from any liability for the judgment, settlement, or binding arbitration award.

24

(c)    Mutual Benefit shall not seek reimbursement for any payments it is obligated to make under this Agreement, whether by way of a Claim for contribution, subrogation, indemnification, reimbursement, or otherwise from any Other Insurer or Person (not including a reinsurer), to the extent such Person or Other Insurer agrees also to waive any such Claims against Mutual Benefit for contribution, subrogation, indemnification, reimbursement or otherwise for reimbursement, from anyone other than the Mutual Benefit's reinsurers in their capacity as reinsurers of Mutual Benefit. Notwithstanding the foregoing, if a third party pursues a contribution, subrogation, or indemnification Claim against Mutual Benefit relating to any of the Policies, then Mutual Benefit shall be free to assert such a Claim against such third party.  Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo shall use their reasonable best efforts to obtain agreements similar to those contained in this Section 7.1(c) from all Other Insurers with which any or all of them execute a settlement after the Execution Date.

## VIII.  MISCELLANEOUS PROVISIONS

8.1    Termination Rights.  If, after 12 months have elapsed since the filing of the Motion, the Parties agree after good faith discussions among each other that the Approval Order will not be entered or will not become or is unlikely to become a Final Order, the Parties shall have the option to terminate the Agreement.  Termination shall not be effective unless it is memorialized in a writing signed on behalf of all Parties.

8.2    Amendments.  Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by the Parties (or their successors or assigns).

25

8.3　　No Precedential Value.　The settlement reflected in this Agreement shall be without precedential value, and it is not intended to be, nor shall it be construed as, an interpretation of any insurance policies.　It shall not be used as evidence, or in any other manner, in any court or other dispute resolution proceeding, to create, prove, or interpret the obligations of Mutual Benefit under any insurance policies issued to Majestic or to any other Person, provided, however, notwithstanding the provisions of Section 8.14 of this Agreement, this Agreement may be used as evidence in any defense of Mutual Benefit of any obligation arising under the Policies.

8.4　　Agreement Voluntarily Entered Into By Each Of The Parties.　This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.　The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own choosing.

8.5　　Interpretation.　This Agreement has been negotiated at arm's length and between and among Persons sophisticated and knowledgeable in the matters dealt with in this Agreement.　In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties.　Accordingly, no Party shall be entitled to have any provisions of the Agreement construed against the other Party in accordance with any rule of law, legal decision or doctrine.

8.6　　No Admission of Liability.　The Parties agree that this Agreement is the result of a compromise of disputed issues, and that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission of

26

any liability, a course of performance, or wrongdoing on the part of any of them.  The

Parties acknowledge that this Agreement is not, and cannot be construed as, any

admission by Mutual Benefit that any defense, indemnity, or other coverage obligation

exists under the Policies, or that Mutual Benefit has any other obligation of any nature

whatsoever with respect to the Policies.  By entering into this Agreement, neither

Majestic (on behalf of itself and the Estate) nor Mutual Benefit has waived nor will be

deemed to have waived any right, obligation, privilege, defense, or position it may have

asserted or might assert in connection with any claim, matter, Person, or insurance

policy outside the scope of this Agreement.  Except as set forth in Section 5, no Person

other than the Parties hereto shall have any legally enforceable rights or benefits under

this Agreement.

       8.7     <u>Entire and Integrated Agreement</u>.  This Agreement is intended by the

Parties as a final expression of their agreement and is intended to be a complete and

exclusive statement of the agreement and understanding of the Parties with respect to

the subject matters contained herein.  This Agreement supersedes any and all prior

promises, representations, warranties, agreements, understandings, and undertakings

between or among the Parties with respect to such subject matters, and there are no

promises, representations, warranties, agreements, understandings, or undertakings

with respect to such subject matters other than those set forth or referred to herein.

       8.8     <u>No Third Party Beneficiaries</u>.  Except as set forth in Section 5, nothing in

this Agreement is intended or shall be construed to give any Person, other than Mutual

Benefit and Majestic (on behalf of itself and the Estate) and their respective successors,

and permitted assigns, any legal or equitable right, remedy, or claim under or in respect

27

to this Agreement or any provisions contained herein; this Agreement and any

conditions and provisions hereof being and intended to be for the sole and exclusive

benefit of Mutual Benefit and Majestic (on behalf of itself and the Estate) as well as

each of their successors and permitted assigns, JND, Parkridge, Joseph N. DeNardo,

Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.L.P., and for

the benefit of no other Person. Notwithstanding the foregoing, this Agreement shall be

binding on any chapter 7 or chapter 11 trustee appointed to administer the Majestic

estate and any liquidating trustee. Neither this Agreement nor the rights and obligations

set forth herein shall be assigned without the prior written consent of the other Party,

except that this Section shall not prohibit any assignment by Mutual Benefit (a) made by

merger, consolidation, or operation of law or (b) to a Person who succeeds to all or

substantially all of such Party's assets.

      8.9    <u>Reinsurance Recoveries and Allocation of Settlement Amount</u>. Mutual

Benefit will be free to pursue reinsurance claims against reinsurers or retrocessionaires

regarding any consideration paid by it in connection with this Agreement. Mutual

Benefit is free to allocate the consideration paid by it in connection with this Agreement

among the Policies, at its sole discretion.

      8.10    <u>Severability</u>. If any provisions of this Agreement, or the application

thereof, shall for any reason or to any extent be construed by a court of competent

jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and

application of such provisions to other circumstances, shall remain in effect and be

interpreted so as best to reasonably effect the intent of the Parties. Notwithstanding the

foregoing, if the releases (Section 5) or the Injunction provided for in the Approval Order

are found to be unenforceable or invalid by a court of competent jurisdiction, then such invalidity or unenforceability shall entitle, but not require, Mutual Benefit to rescind the entire Agreement by providing written notice to Majestic, JND, Parkridge, Joseph N. DeNardo, and Shari DeNardo. In such case, the Settlement Amount shall be returned to Mutual Benefit, less any amounts that have been or will be used to pay any reasonable and necessary administrative costs (as approved by the Bankruptcy Court where required under the Bankruptcy Code or the Bankruptcy Rules) incurred as of the time of rescission or that are required by the Bankruptcy Code or order of the Bankruptcy Court to effect an orderly winding-down of the bankruptcy estate and the closing of the Bankruptcy Case after the rescission. Any portions of the Settlement Amount not returned to Mutual Benefit pursuant to the foregoing subsections shall be set off, dollar for dollar, to reduce the limits, if any, available under the Policies, as allocated at Mutual Benefit's sole discretion.

      8.11   <u>Notice</u>. Any notice or request required or desired to be given pursuant to this Agreement shall be sufficient if made in writing and sent by first class mail, postage prepaid, or facsimile, with (in either case) a copy by electronic mail, to the Parties at the addresses set forth below or to such other Persons as any of them may designate in writing from time to time:

      (a)    As to Mutual Benefit:

              Mark E. Russell, CPCU, CIC, AIC, ARe
              Vice President - Claims
              Mutual Benefit Group
              409 Penn Street | PO Box 577 | Huntingdon, PA 16652

              With a copy to:

              Jacob C. Cohn, Esq.

Gordon Rees Scully Mansukhani LLP
Three Logan Square, Suite 610
1717 Arch Street
Philadelphia, PA  19103
jcohn@grsm.com

(b)     As to Majestic:

Donald R. Calaiaro, Esq.
938 Penn Avenue, Suite 501
Pittsburgh, PA 15222

(c)     As to JND Properties, LLC:

Joseph N. DeNardo, CEO
3625 Washington Pike
Bridgeville, PA 15017

With a copy to:

Melvin L. Vatz, Esq.
247 Fort Pitt Blvd., 4th Floor
Pittsburgh, PA 15222

(d)     As to Shari DeNardo:

Melvin L. Vatz, Esq.
247 Fort Pitt Blvd., 4th Floor
Pittsburgh, PA 15222

(e)     As to Parkridge:

William J. Moorhead, Esq.
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA  15219

(f)     As to Ashwood Commons LLC:

Melvin L. Vatz, Esq.
247 Fort Pitt Blvd., 4th Floor
Pittsburgh, PA 15222

(g)     As to Ashwood Land Partners, LP:

Melvin L. Vatz, Esq.

247 Fort Pitt Blvd., 4th Floor
Pittsburgh, PA 15222

8.12    Headings.  The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

8.13    Recitals.  The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted in any action or proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do any of the Parties intend such recitals to constitute admissions of fact by any of them.

8.14    Agreement Inadmissible.  Any evidence of the terms or negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except in:  (a) an action or proceeding to enforce the terms of this Agreement; (b) proceedings before the Bankruptcy Court to secure the Approval Order; or (c) any possible action or proceeding between Mutual Benefit and any of its reinsurers with respect to the Policies.  Except as set forth herein, this Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Parties' rights or obligations to each other or to any other Person.

31

8.15 <u>Additional Necessary Documents</u>. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

8.16 <u>Execution in Counterparts</u>. This Agreement may be signed in multiple counterparts and the separate signature pages executed by Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument. Facsimile signatures shall have the same force and effect as an original signature.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: ___5/15/2020_____

Majestic Hills, LLC.

By: _____

Name: Joseph DeNardo

Title: ___Managing Member_____

**[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: _May 14, 2020_

Mutual Benefit Insurance Company

By: _Mark E Russell_

Name: _Mark E Russell_

Title: _VP-Claims_

[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated:_____5/15/2020_____                JND Properties, LLC

                                                 By:_____
                                                    Text

                                                 Name: Joseph DeNardo

                                                 Title:___Managing Member_____

[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated:_____5/18/2020_____          Joe DeNardo

                                        By: _____

                                        Name: ___Joseph DeNardo_____

[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated:_____5/15/2020_____          Shari DeNardo

                                         By: _____*Shari A. DiNardo*_____

                                         Name: ____Shari A. DeNardo____

**[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: __May 14, 2020__                    Parkridge Development LLC

By: _____

Name: __Thomas Bailey__

Title: __Secretary__

[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: _5/15/2020_ _____

Ashwood Commons LLC

By: _____

Name: _Joseph N. DeNardo_____

Title: _Managing Member_____

**[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth opposite the respective signatures below.

Dated: _____5/15/2020_____                    Ashwood Land Partners LP

By: _____

Name: ___Joseph N. DeNardo___

Title: ___General Partner___

**[MAJESTIC-MUTUAL BENEFIT SETTLEMENT AGREEMENT SIGNATURE PAGE]**

**EXHIBIT 1**


**(Proposed Order)**

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 11 |
| Majestic Hills, LLC. | Case No. 20-[•] |
| Debtor. | Document No. _____ |
| | Related to Document No. _____ |

**ORDER (I) APPROVING THE ASSUMPTION OF THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTOR AND MUTUAL BENEFIT INSURANCE COMPANY, (II) APPROVING THE SALE OF CERTAIN INSURANCE POLICIES, AND (III) ISSUING AN INJUNCTION IN PURSUANT TO THE SALE OF CERTAIN INSURANCE POLICIES**

Upon the *Debtor's Motion for an Order (I) Approving the Assumption of the Settlement Agreement and Release between the Debtor and Mutual Benefit Insurance Company, (II) Approving the Sale of Certain Insurance Policies, and (III) Issuing an Injunction Pursuant to the Sale of Certain Insurance Policies* (the "Motion")[2] and the Court having reviewed the Motion, the First Day Declaration, and the Mutual Benefit Settlement Agreement; and having heard the statements of counsel at the hearing on the Motion; and the Court finding that: (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (ii) notice of the Motion and the hearing thereon was sufficient under the circumstances; and (iii) the legal and factual bases set forth in

---

[2] As used in this order, "Mutual Benefit" means Mutual Benefit Insurance Company and its predecessors, successors, subsidiaries, affiliates, directors, officers, and representatives, including, without limitation. Other capitalized terms used but not defined in this order have the meanings given in the Motion.

the Motion, the First Day Declaration, and the Mutual Benefit Settlement Agreement establish just cause for the relief granted herein;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    Any and all objections to the Motion and to the relief requested therein and/or granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.    Pursuant to section 365 of the Bankruptcy Code, the Debtor shall be, and hereby is, authorized and empowered to assume the Mutual Benefit Settlement Agreement.  The Mutual Benefit Settlement Agreement shall be deemed assumed upon entry of this Order

4.    Pursuant to Bankruptcy Rule 9019, the Mutual Benefit Settlement Agreement and each of its terms and conditions, including the releases contained therein, shall be, and hereby are, approved in their entirety.

5.    The Debtor shall be, and hereby is, authorized to undertake any transactions contemplated by the Mutual Benefit Settlement Agreement that remain uncompleted as of the date of this Order.

6.    Upon the occurrence of the Payment Date, (a) Mutual Benefit shall be irrevocably released from (i) all claims by the Debtor under, arising out of, related to, and/or in connection with the Policies, and (ii) all extra-contractual claims arising out of, related to, and/or in connection with the Policies, and (b) all rights and obligations between the Debtor and Mutual Benefit in respect of the Policies shall be fully and

3

finally extinguished.  As a result, the Policies shall be terminated and of no force and effect and be exhausted in respect of all coverages thereunder.

      7.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and empowered to sell, transfer, and convey the Policies to Mutual Benefit subject only to the terms and conditions in the Mutual Benefit Settlement Agreement. The Policies shall be deemed so conveyed to Mutual Benefit immediately upon payment in full of the Settlement Payment pursuant to the terms of the Mutual Benefit Settlement Agreement.

      8.    Pursuant to section 363(f) of the Bankruptcy Code, the Debtor's sale of the Policies to Mutual Benefit shall constitute a valid, legal, and effective transfer, which shall vest Mutual Benefit with all right, title, and interest in and to the Policies free and clear of all liens, claims, encumbrances, and other interests of any person, including, but not limited to, all rights and interests of the Debtor, as well as JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.L.P. (hereafter, the "Other Insureds"), any other person claiming by, though, or on behalf of the Debtor, any other insurer, any holder of any Claim against the Debtor, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, interests in the Policies that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of the estate or Mutual Benefit, as the case may be, in the Policies).

9.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, all persons who hold or assert, or may in the future hold or assert, any claim against the Debtor or the Other Insureds arising out of or in connection with the activities covered by the Policies, or in connection with the Debtor's or the Other Insured's activities giving rise to claims made or to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies, shall be and hereby are permanently stayed, restrained, and enjoined from asserting any claim or right to entitlement, or taking any other action against Mutual Benefit for the purpose of obtaining any recovery or other relief from Mutual Benefit or under or in connection with the Policies.

10.     The releases in the Mutual Benefit Settlement Agreement and the policy buyback therein comply with the Bankruptcy Code and applicable non-bankruptcy law.

11.     Mutual Benefit Insurance Company is a good-faith purchaser of the Policies and is entitled to, and hereby is granted, all of the protections provided to good faith purchasers under section 363(m) of the Bankruptcy Code.

12.     The transactions contemplated by the Mutual Benefit Settlement Agreement shall not be subject to avoidance under section 363(n) of the Bankruptcy Code.  All persons shall be and hereby are enjoined from commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code with respect to the Mutual Benefit Settlement Agreement and the transactions contemplated thereby.

13.     The sale of the Policies to Mutual Benefit under the Mutual Benefit Settlement Agreement will constitute a transfer for reasonably equivalent value and fair

consideration under the Bankruptcy Code and the laws of the Commonwealth of
Pennsylvania.

14.    The Debtor shall use the Settlement Payment solely to make
payments to or for the benefit of holders of Claims and for other costs and expenses
associated with this Chapter 11 Case.

15.    This Order shall be binding upon the Debtor, Mutual Benefit, the
Other Insureds all holders of claims against the Debtor, all insurers who received notice
of the Motion, all other persons and entities receiving notice as set forth in the Motion,
the respective successors and assigns of each person referred to in this paragraph, and
any chapter 11 trustee, liquidating trustee, or other trust or distribution vehicle
established under a chapter 11 plan of the Debtor, and on any chapter 7 trustee if this
Chapter 11 Case is converted to a chapter 7 proceeding.

16.    Each of the Parties hereby is authorized to take all actions and
execute all documents and instruments that it deems necessary or appropriate to
implement and effectuate the transactions contemplated by the Mutual Benefit
Settlement Agreement.

17.    Mutual Benefit is not, and shall not be deemed to be, a successor
to the Debtor by reason of any theory of law or equity or as a result of the
consummation of the transactions contemplated in the Mutual Benefit Settlement
Agreement.

18.    This Court shall retain jurisdiction to interpret and enforce the
provisions of the Mutual Benefit Settlement Agreement and this Order in all respects
and further to hear and determine any and all disputes relating to the Mutual Benefit

Settlement Agreement between the Parties or between a Party and any other person; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Mutual Benefit Settlement Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.  In the event this Chapter 11 Case has been closed, there shall be cause to have this Chapter 11 Case reopened upon motion or application for such purposes.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

19.    Counsel for the Debtor shall serve a copy of this order on the
Master Service List and file a certificate of service within three business days of entry of
this order.  Notice of the order by ECF or email shall constitute good and sufficient
notice of the order.

Dated: _____, 2020


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 2**

**(Schedule of Mutual Benefit Policies)**

1

## SCHEDULE OF MUTUAL BENEFIT POLICIES
## SUBJECT TO SETTLEMENT AGREEMENT AND RELEASE

| Policy No. | Effective Dates | Limits (including attachment point) |
|---|---|---|
| CP10917698 | 10/1/05-10/1/06, (with consecutive annual renewals through 10/1/19) | $1 million per occurrence $2 million general aggregate $0 Products/Completed Operation Hazard (Excluded) |
| CU00917698 | 10/1/05-10/1/06, (with consecutive annual renewals through 10/1/19) | $1 million per occurrence $1 million aggregate x/s Primary $0 Products/Completed Operation Hazard (Excluded) |

**EXHIBIT 3**

**(Form of Claimant Release)**

Majestic Hills, LLC.
**RELEASE AND INDEMNITY AGREEMENT**

NOTICE:  THIS IS A BINDING DOCUMENT THAT AFFECTS YOUR LEGAL RIGHTS.
PLEASE CONSULT YOUR ATTORNEY IN CONNECTION WITH EXECUTING THIS
DOCUMENT.  IF YOU DO NOT PRESENTLY HAVE AN ATTORNEY, YOU MAY WISH
TO CONSIDER CONSULTING ONE.

All capitalized terms not defined herein shall have the respective meanings ascribed to
them in the Plan of Liquidation of Majestic Hills, LLC. **[INSERT OFFICIAL TITLE OF
PLAN]** (the "Plan") filed in Bankruptcy Case No. [_____] before the United States
Bankruptcy Court for the [Western District of Pennsylvania].

WHEREAS, the undersigned, who is either the "Injured Party" or the/an "Official
Representative"[3] (either being referred to herein as the "Claimant"), has filed a claim
(the "Claim") with the Majestic Hills, LLC. (the "Liquidating Trust") pursuant to the Plan,
and such Claim asserts a Claim arising out of any action or  conduct that occurred
solely before January 1, 2008 for which Majestic Hills, LLC (the "Debtor") is alleged to
have legal responsibility; and

WHEREAS, the Claimant has agreed to settle and compromise the Injured
Party's Claim for and in consideration of the allowance of the Claim by the Liquidating
Trust, in accordance with the terms set forth therein and herein.

NOW, THEREFORE, the Claimant hereby agrees as follows:

1.	On behalf of the Injured Party, the Injured Party's estate, the Injured
Party's heirs, and/or anyone else claiming rights through the Injured Party, now and in
the future, the Claimant hereby fully and finally RELEASES, ACQUITS, and FOREVER
DISCHARGES the Liquidating Trust, the Trust Advisory Committee, the Debtor and its
members, the Debtor's Estate, the Reorganized Debtor, any Settling Insurance
Company, and their respective settlors, trustors, trustees, directors, officers, agents,
consultants, financial advisors, servants, employees, attorneys, heirs, executors, and
any Party (collectively the "Releasees") from any and all Claims and any claims related
thereto (collectively the "Released Claims"), except as expressly provided herein.

2.	The Claimant expressly covenants and agrees forever to refrain from
bringing any suit or proceeding at law or in equity against the Releasees with respect to
any Released Claim.

3.	The Claimant intends this Release and Indemnity Agreement to be as
broad and comprehensive as possible so that the Releasees shall never be liable,
directly or indirectly, to the Injured Party or the Injured Party's heirs, legal

---

[3]	The "Official Representative" is the/a person who under applicable state law or legal documentation has the
authority to represent the Injured Party, the Injured Party's estate, or the Injured Party's heirs.

2

representatives, successors or assigns, or any other person or entity claiming by, though, under, or on behalf of the Injured Party, for or on account of any Released Claim, whether the same is now known or unknown or may now be latent or may in the future appear to develop. If the Claimant is an Official Representative, the Claimant represents and warrants that the Claimant has all requisite legal authority to act for, bind and accept payment on behalf of the Injured Party and all heirs of the Injured Party on account of any Released Claim and hereby agrees to indemnify and hold harmless, to the extent of payment hereunder, excluding attorney's fees and costs, the Releasees from any loss, cost, damage, or expense arising out of or in connection with the rightful claim of any other Entity to payments with respect to the Injured Party's Released Claim.

4.      This Release and Indemnity Agreement is not intended to bar any cause of action, right, lien, or claim that the Claimant may have against any alleged person, entity or any other person or entity, not specifically named or described herein.

5.      The Claimant represents and warrants that all Valid Liens[4] subrogation, conditional payment, and reimbursement claims relating to benefits paid to or on account of the Injured Party in connection with, or relating to, the Claim have been resolved or will be resolved from the net proceeds of the settlement payment to the Claimant under this Release and Indemnity Agreement or from other funds or proceeds to the extent permitted under applicable lien settlement agreements or under applicable law. It is further agreed and understood that no Releasee shall have any liability to the Claimant or any other person or entity in connection with such liens or conditional payment or reimbursement claims and that the Claimant will indemnify and hold the Releasees harmless from any and all such alleged liability as provided in the following sentence. The Claimant will indemnify and hold the Releasees harmless, to the extent of the amount of payment hereunder, excluding attorney's fees and costs, from any and all liability arising from subrogation, conditional payment, indemnity, or contribution claims related to the Released Claim and from any and all compensation or medical payments due, or claimed to be due, under any applicable law, regulation, or contract related to the Released Claim.

6.      It is further agreed and understood that if the Claimant has filed a civil action against the Liquidating Trust, the Claimant shall dismiss such civil action and obtain the entry of an Order of Dismissal with Prejudice with respect to any Released Claim no later than 30 days after the date hereof.

7.      The Claimant understands that the Released Claim is being resolved by the Liquidating Trust, and a liquidated value ($_____) has been established for such Claim. The Claimant acknowledges that, pursuant to the Plan and Trust, after the

---

[4]    A "Valid Lien" is a lien that is permitted by applicable law and with respect to which the lien holder has taken all steps necessary under the terms of the documents creating the lien and under applicable law to perfect the lien.

3

liquidated value of the Claim is determined pursuant to the procedures set forth therein, the Claimant ultimately shall receive a pro rata share of that value based on the Trust Assets available for the payment of Claims. The Claimant further acknowledges that the Claimant may receive payment in one or more distributions, subject to determination by the Trustee.

8.      In the event of a verdict against others, any judgment entered on the verdict that takes into account the status of the Liquidating Trust as a joint party legally responsible for the Injured Party's injuries shall be reduced by no more than the total and actual amount paid as consideration for this Release and Indemnity Agreement or such lesser amount as required by law.

9.      The Claimant understands, represents, and warrants that this Release and Indemnity Agreement is a compromise of a disputed claim and not an admission of liability by, or on the part of, the Releasees. Neither this Release and Indemnity Agreement, the compromise and settlement evidenced hereby, nor any evidence relating thereto, will ever be admissible as evidence against the Liquidating Trust in any suit, claim, or proceeding of any nature except to enforce this Release and Indemnity Agreement. However, this Release and Indemnity Agreement is and may be asserted by the Releasees as an absolute and final bar to any claim or proceeding now pending or hereafter brought by or on behalf of the Injured Party with respect to the Claim released herein, except as expressly provided in this Release and Indemnity Agreement.

10.     The Claimant (a) represents that no judgment debtor has satisfied in full the Liquidating Trust's liability with respect to the Injured Party's Claim as the result of a judgment entered in the tort system, and (b) upon information and belief, represents that the Claimant has not entered into a release (other than this Release and Indemnity Agreement) that discharges or releases the Liquidating Trust's liability to the Claimant with respect to the Injured Party's Claim.

11.     The Claimant represents that he or she understands that this Release and Indemnity Agreement constitutes a final and complete release of the Releasees with respect to the Injured Party's Released Claim, except as expressly provided herein. The Claimant has relied solely on his or her own knowledge and information, and the advice of his or her attorneys (if any), as to the nature, extent, and duration of the Injured Party's injuries, damages, and legal rights, as well as the alleged liability of the Liquidating Trust and the legal consequences of this Release and Indemnity Agreement, and not on any statement or representation made by or on behalf of the Trust.

12.     This Release and Indemnity Agreement contains the entire agreement between the parties and supersedes all prior or contemporaneous oral or written agreements or understandings relating to the subject matter hereof between or among any of the parties hereto, including, without limitation, any prior agreements or understandings with respect to the liquidation of the Claim or other Releasee.

4

13.     This Release and Indemnity Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof, and shall be binding on the Injured Party and his or her heirs, legal representatives, successors and assigns.

14.     The Claimant authorizes payment pursuant to Paragraph 8 to the Claimant or the Claimant's counsel, as agent for the Claimant.

15.     The Claimant acknowledges that the Liquidating Trust's obligation to pay the Claimant is not triggered until the Liquidating Trust receives the executed Release and Indemnity Agreement from the Claimant.

### CERTIFICATION

I state that I have carefully read the foregoing Release and Indemnity Agreement and know the contents thereof, and I sign the same as my own free act.  I additionally certify, under penalty of perjury, that the information that has been provided to support the Claim is true according to my knowledge, information, and belief, and further that I have the authority as the Claimant to sign this Release and Indemnity Agreement.

I am:    _____ the claimant
         _____ the Official Representative of the claimant, the claimant's Estate, or claimants Heirs.


EXECUTED this _____ day of _____, 20_____.


_____
Signature of the Claimant


Name of the Claimant:  _____

                       SSN: _____


Name of the Injured Party if different from the Claimant:    _____

SSN of the Inured Party if different from the Claimant: _____