**THE DISCLOSURE STATEMENT RELATED TO THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AND, UNTIL APPROVED, THIS PLAN CANNOT BE, AND IS NOT BEING, USED FOR SOLICITATION PURPOSES.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In Re:** | **Bankruptcy No.** 20-21595-GLT |
| Majestic Hills, LLC, | **Chapter** 11 |
| **Debtor.** | **Document No.** |

_____

**CHAPTER 11 LIQUIDATING PLAN DATED MAY 21, 2020**
_____

**DATED:** May 21, 2020        **Donald R. Calaiaro, Esquire**
                               **dcalaiaro@c-vlaw.com**
                               **CALAIARO VALENCIK**
                               **938 Penn Avenue, Suite 501**
                               **Pittsburgh, PA  15222-3708**
                               **(412) 232-0930**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In Re:** | **Bankruptcy No.** 20-21595-GLT |
| Majestic Hills, LLC, | **Chapter** 11 |
| **Debtor.** | **Document No.** |

## CHAPTER 11 LIQUIDATING PLAN

Majestic Hills, LLC, Debtor-In-Possession, proposes the following Chapter 11 Liquidating Plan ("Plan") pursuant to Section 1121(b) and (c) of the Bankruptcy Code ("Code"), 11 U.S.C. §§ 1121(b), (d).

## ARTICLE 1 - DEFINITIONS

For purposes of this Plan, except as otherwise expressly provided herein or unless the context otherwise requires, the following capitalized terms shall have the meaning set forth below:

**1.1    *Administrative Claim*** means a Claim for a cost or expense of administration of the Estate under sections 503(b), 507(a)(1), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary cost and expense of preserving the Estate or operating the Debtor's business incurred after the Petition Date and through the Effective Date; (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date and through the Effective Date; (c) any Allowed compensation for Professional services rendered, and Allowed reimbursement of expenses incurred, by a Professional retained by order of the Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and (d) all fees due and payable pursuant to section 1930 of title 28 of the United States Code.

**1.2    *Administrative Claim Bar Date*** means the first Business Day that is fourteen

(14) calendar days after the Effective Date.

      **1.3**    ***Affiliate*** means an affiliate, as defined in section 101(2) of the Bankruptcy Code, of the Debtor.

      **1.4**    ***Allowed*** shall mean, means: (I) with respect to any Claim or Interest, such Claim or Interest or portion thereof against or in the Debtor: (a) that has been listed by the Debtor in the Schedules as liquidated in of Claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed, or the Debtor otherwise has assented to the validity thereof; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, overruled, or denied by a Final Order; or (d) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement by and between the holder of such Claim or Interest and the Debtor, or (iii) the Plan; and (II) with respect to any Litigation Claim, such Litigation Claim or portion thereof that is liquidated and allowed pursuant to the Liquidating Trust Agreement, or, if applicable, pursuant to a Final Order of the Bankruptcy Court.

      **1.5**    ***Allowed Claim*** shall mean a claim against the Debtors to the extent:

      *a.*    A proof of claim was:

        *1.*  Timely filed;

        *2.*  Deemed filed pursuant to Section 1111(a) of the Bankruptcy Code; or

        *3.*  Filed late with leave of the Bankruptcy Court after notice and opportunity for hearing given to the Debtor's counsel; and

      *b.*  *1.*  Which is not a Disputed Claim; or

        *2.*  Which is allowed (and only to the extent allowed) by a Final Order,

after objection, if any, and hearing; and

**c.**    If disputed, the creditor filed a Proof of Claim before the Claims Bar
Date.

**d.**    With respect to any Professionals seeking compensation in connection
with this case, when said compensation has been allowed by Order of
the Bankruptcy Court after notice and hearing as provided in the
Bankruptcy Code.

**1.6  Approved Insurance Settlement Agreement** means an Insurance Settlement
Agreement that has been approved by a Final Order, regardless of whether such Final
Order is entered before or after the Confirmation Date or before or after the Effective Date.

**1.7  Avoidance Actions** means any avoidance or recovery action under any of
sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code,
or under related state or federal statutes and common law, whether or not litigation has
been commenced with respect to such Cause of Action as of the Effective Date.

**1.8  Ballot** means a ballot providing for the acceptance or rejection of the Plan.

**1.9  Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. § 101 *et
seq*.

**1.10    Bankruptcy Case** shall mean this Chapter 11 Case at Bankruptcy Case
Number 20-21595-GLT.

**1.11    Bankruptcy Court** or **Court** shall mean that unit of the United States District
Court for the Western District of Pennsylvania known as the United States Bankruptcy Court
for the Western District of Pennsylvania located at 54th Floor, U.S. Steel Tower, 600 Grant
Street, Pittsburgh, Pennsylvania 15219 or any Court having jurisdiction over the Chapter 11

Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case and to hear and determine appeals from any order entered in, the Chapter 11 Case.

**1.12** **_Bankruptcy Rules_** shall mean, collectively: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 Case.

**1.13** **_Business Day_** shall mean any day, other than Saturdays, Sundays, national holidays, or other "legal holiday" (as defined in Bankruptcy Rule 9006(a)), between 9:00 a.m. and 5:00 p.m. local Pittsburgh time.

**1.14** **_Cash_** means legal tender of the United States of America and equivalents thereof.

**1.15** **_Cause of Action_** means any action, including any cause of action, liability, obligation, account, controversy, right to legal remedy, right to equitable remedy, right to payment, suit, debt, sum of money, damage, judgment, or claim whatsoever, whether known or unknown, now or in the future, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether asserted or assertable, directly or derivatively, in law, equity or otherwise, which may be brought by or on behalf of the Debtor and/or the Estate, arising under any provision of the Bankruptcy Code or other applicable law or regulation or similar governmental pronouncement.

**1.16** **_Claim_** shall mean the meaning set forth in §101(5) of the Bankruptcy Code.

**1.17** **Claim Holder** shall mean any holder of claims in any class, as defined herein, entitled to receive a Distribution under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.18** **Class** shall mean the category of holders of claims or equity interests in such category as provided by section 1122 and 1123(a)(1) of the Bankruptcy Code and as defined in the context of this Plan.

**1.19** **Closing Date** shall mean the closing by the Debtor as to all instruments and documents required to be executed under this Plan.  The closing shall occur at 10:00 a.m. Pittsburgh time at the offices of the attorney for the plan proponent, Calaiaro Valencik, 938 Penn Avenue, Suite 501, Pittsburgh PA 15222, on the 14th business day after the Confirmation Order becomes a Final Order; but the parties may conduct a closing on a sooner date and place by agreement.

**1.20** **Collateral** shall mean any property in which the Debtors have an interest and which secures an allowed claim.

**1.21** **Committee** means the Official Committee of Claimants appointed by the Office of the United States Trustee in the Chapter 11 Case.

**1.22** **Confirmation Date** shall mean the date when the Clerk of the Bankruptcy Court shall have entered the Confirmation Order on the docket.

**1.23** **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

**1.24** **Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.25**     ***Creditor*** shall mean any person having a claim against the Debtors that arose

on or before the filing date or a claim against the Debtor's estate of a kind specified in

§502(g), (h), or (I) of the Bankruptcy Code.

**1.26**     ***Debtor*** means Majestic Hills, LLC.

**1.27**     ***Derivative Liability Claim*** means any Claim against a Protected Party or any

current or former Member, Representative or Agent of the Debtor based upon a legal or

equitable theory of liability in the nature of veil piercing, alter ego, successor liability,

fraudulent transfer, or conspiracy, upon which a Protected Party or any current or former

Representative or member of the Debtor is liable, or is allegedly liable, arising out of,

resulting from, or attributable to, directly or indirectly, injury, property damage, sickness,

other personal injury, physical, emotional, or otherwise, or other basis of liability, to Persons,

caused, or allegedly caused, directly or indirectly, by any failure of the ground, failure to

support the structure(s), landslide or soil condition to the extent arising, directly or indirectly,

or from acts, omissions, business, or operations of the Debtor, including all related claims,

debts, obligations, or liabilities for compensatory damages, proximate, consequential,

general, and or special damages. For purposes of this definition, "veil piercing, alter ego,

successor liability, fraudulent transfer, or conspiracy" claims shall include, without limitation,

fraudulent transfer or fraudulent conveyance claims under applicable state or federal law,

denuding the corporation claims, single business enterprise claims, claims that the Debtor

was the predecessor, mere instrumentality, agent, or alter ego of such a Protected Party or

any current or former Representative or Shareholder of the Debtor, trust fund claims, claims

that such a Protected Party or any current or former Member, Representative or Agent of

the Debtor conspired with the Debtor, and any causes of action against a Protected Party or

any current or former Member, Representative or Agent of the Debtor that belong to the Debtor or the Estate, whether or not included in the foregoing list.

**1.28** **_Direct Action Claim_** means any Claim by any Person other than the Debtor directly against any Settling Insurance Entities under any insurance policy that arises from the activities or products of the Debtor, or any insurance policy that is, or may in the future be, asserted to provide coverage for any of the aforementioned Claims, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

**1.29** **_Disallowed_** means, with respect to any Claim or Interest, or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

**1.30** **_Disclosure Statement_** shall mean the Disclosure Statement of the Debtor, to be filed with and which will be approved by the Court pursuant to 11 U.S.C. § 1125 of the Bankruptcy Code, including, without limitation, all exhibits and schedules thereto, as amended, modified, or supplemented from time to time.

**1.31** **_Disputed Claims_** shall mean alleged claims against the Debtors listed as disputed, contingent or unliquidated on the Debtors' schedules or amended schedules; or

which a timely proof of claim is filed, and to which an objection has been timely filed within sixty (60) days after the confirmation date by a party in interest and which objection is not the subject of a Final Order or has not been withdrawn.

**1.32** **_Distribution Date_** shall mean either (a) the 14th business day after the Effective Date, *provided that*, the Debtor's right reserved pursuant to Article 5 of this Plan have not been exercised. On this date, the first distribution will occur to undisputed, allowed secured and priority claims. (b) If a claim is not allowed by the prior date, the 30th business day after the date on which a disputed claim is finally adjudicated and no further appeal can be taken.

**1.33** **_Effective Date of the Plan_** shall mean the date of the entry of the Confirmation Order, *provided that* the Confirmation Order is a Final Order and the Debtor's right reserved pursuant to Article 5 of this Plan have not been exercised.

**1.34** **_Entity_** means any Person or organization created by law, including, without limitation, any individual, company, corporation, Limited Liability Company, partnership, association, Joint Stock Company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.35** **_Estate_** means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.36** **_Executory Contract or Unexpired Lease_** means any executory contract or unexpired lease of the Debtor that is subject to treatment under section 365 of the Bankruptcy Code.

**1.37** **_Exculpated Parties_** means, collectively, (a) the Debtor, (b) any current or former Members of the Debtor, members of the Committee, (c) each Settling Insurance

Entity, (e) each Protected Party and (f) any Representative of the foregoing.

*1.38    Filing Date* shall mean May 21, 2020, the date on **Majestic Hills, LLC** filed its

voluntary petition for relief under chapter 11 of title 11 with the United States Bankruptcy

Court for the Western District of Pennsylvania.

*1.39    Final Decree* means the decree contemplated under Bankruptcy Rule 3022

that closes this Chapter 11 Case.

*1.40    Final Order* means a judgment or an order, as the case may be, as to which

the time to appeal, petition for certiorari, or move for reargument or rehearing has expired

and as to which no appeal, petition for certiorari, or other proceedings for reargument or

rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari,

reargument, or rehearing thereof has been filed or sought: (a)(i) such judgment or order

shall have been affirmed by the highest court to which such judgment or order was

appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have

been denied or resulted in no modification of such order, and the time to take any further

appeal, petition for certiorari, or move for reargument or rehearing shall have expired; or (b)

such appeal, writ of certiorari, or request for reargument or rehearing shall have been

dismissed with prejudice by the filing or seeking party.

*1.41    Fiscal Quarter* shall mean a three-month period ending on the last day of

March, June, September, or December as the appropriate case may be.

*1.42    Gender and Number* when used herein, words importing any gender may be

applied to and include all persons; words importing the plural number may be applied to

mean a single person or thing, and words importing the singular number may be applied to

and mean more than a single person or thing.

**1.43    General Rules of Interpretation** unless otherwise defined here, all terms used in this Plan shall have the meanings set forth in the Bankruptcy Code.

**1.44    General Unsecured Claim** means a Claim against the Debtor that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim.

**1.45    General Unsecured Recovery Pool** means Cash in the amount estimated to be a minimum of $1,500,000.00. This amount may be increased by the joinder of additional "Settling Parties" who seek the protections of this plan.

**1.46    Impaired** means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable or contractual rights to which such Claim entitles its holder.

**1.47    Indirect Claim** means those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims, and other similar derivative Claims, or allegations against the Debtor, a Protected Party, or any current or former Member, Representative or Shareholder of the Debtor, whether or not any such Claim, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefore are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to the any failure of the ground, failure to support the structure(s), landslide or soil condition to the extent arising, directly or indirectly, or from acts, omissions, business, or operations of the Debtor, including all related claims, debts, obligations, or liabilities for compensatory damages, proximate, consequential, general, and or special damages against the Debtor or any Entity for whose

completed structure or operations the Debtor has liability or is alleged to have liability, but only to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtor (including the acts, omissions, business, or operations of any other Entity for whose products or operations the Debtor has liability, but only to the extent of the Debtor's liability for such acts, omissions, business, or operations), including claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages). Notwithstanding the foregoing, any such Claim, allegation, debt, liability, or obligation shall be an Indirect Claim only to the extent of the Debtor's liability for that Claim, allegation, debt, liability, or obligation.

*1.48   Insider* shall have the same meaning as more fully defined in 11 U.S.C. § 101(31).

*1.49   Insurance Action* means, solely as related to a Claim, any claim, cause of action, or right of the Debtor against any Insurance Entity related to any Insurance Policy, including any claim, cause of action, or right arising from, under or related to: (a) any such Insurance Entity's failure to provide coverage or pay amounts billed to it for Claims, whether prior to or after the Petition Date; (b) the refusal of any Insurance Entity to pay any obligations on, or compromise and settle, any Claim under or pursuant to any Insurance Policy; (c) the interpretation or enforcement of the terms of any Insurance Policy issued by an Insurance Entity; or (d) any conduct of an Insurance Entity constituting "bad faith" or other wrongful conduct under applicable law with respect to any Insurance Policy.

*1.50   Insurance Entity* means any Entity, including any underwriter, insurer, insurance company, broker, protection and indemnity club, or guaranty association, that has

issued, or that has any actual or potential liabilities, duties, or obligations under or with respect to any Insurance Policy.

*1.51 Insurance Policy* means any Insurance Policy or portion thereof that provides or may provide coverage to the Debtor for any and all Claims including any comprehensive general liability policy, general liability policy, excess liability policy, umbrella liability policy, automobile policy, first-party property policy, wrap-up policy, site-specific policy, or project-specific policy, whether such policy is primary, umbrella, excess, or otherwise, whether known or unknown, whether domestic or foreign, and regardless of the policy territory covered, whether issued to the Debtor or otherwise) that was issued or allegedly issued to any Person prior to the Petition Date under which the Debtor is or allegedly may be insured or entitled to any rights or benefits. With respect to an Insurance Policy issued to Persons other than the Debtor under which the Debtor has, or claims to have, the right to insurance coverage, the term "Insurance Policy" means only that insurance coverage afforded by such Insurance Policy to the Debtor.

*1.52 Insurance Policy Injunction* means the injunction pursuant to sections 105(a) and 363 of the Bankruptcy Code described more fully in Section 9.2.

*1.53 Insurance Settlement Agreements* means (i) the Settlement Agreement and Release, dated May 15, 2020, between the Debtor and Mutual Benefit Insurance Company and (ii) the Settlement Agreement and Release, dated May 15, 2020, between the Debtor and Westfield Insurance Company.

*1.54 Insurance Rights* means, solely with respect to a Claim, any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtor to any insurance coverage, defense, indemnity, proceeds, payments, escrowed funds, initial or supplemental

dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action with respect to any Insurance Policy, including all Insurance Actions, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

       (a)    any and all rights of the Debtor to pursue or receive payment, reimbursement, or proceeds under any Insurance Policy, whether for indemnity, liability, defense costs, or otherwise;

       (b)    any and all rights of the Debtor to pursue or receive payment or proceeds under any Approved Insurance Settlement Agreement;

       (c)    any other rights arising under any Insurance Policy and/or applicable law that may be necessary or useful for recovery of insurance proceeds for any Claim.

    ***1.55***   ***Interest*** means any right, title, and ownership interest in the Debtor, including, without limitation, any ownership rights the Debtor possesses.

    ***1.56***   ***Internal Revenue Code*** means title 26 of the United States Code, 26 U.S.C. § 1 *et seq.*

    ***1.57***   ***Interim Financing*** shall mean any loan, which is approved by the Bankruptcy Court under 11 U.S.C. § 364 and funded prior to the Effective Date.

    ***1.58***   ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

    ***1.59***   ***Liquidating Trust*** means the liquidating trust that is to be established in accordance with the Plan, the Liquidating Trust Agreement, and the Confirmation Order, for the purpose of reviewing, resolving, and, if appropriate, paying Claims, which trust shall be treated as a "qualified settlement fund" under section 468B of the Internal Revenue Code.

*1.60    Liquidating Trust Agreement* means the agreement, to be dated as of the Effective Date, by and among the Debtor and the Liquidating Trustee, in substantially the form attached hereto as Exhibit A, as it may be modified from time to time.

*1.61    Liquidating Trust Assets* means, collectively, (a) the settlement proceeds from any Insurance Rights, and (b) any contributions by the joinder of additional "settling Parties" who seek the protections of this plan and who voluntarily contribute a substantial contribution after that has been approved by the Bankruptcy Court, after notice and a hearing on a Motion filed under Rule 9019 by the Debtor. .

*1.62    Liquidating Trust Documents* means, collectively: (a) the Liquidating Trust Agreement; (b); any other agreements, instruments, and documents governing the establishment and administration of the Liquidating Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

*1.63    Liquidating Trust Expense* means any of the liabilities, costs, or expenses incurred by the Liquidating Trust, other than liabilities to holders of Claims, in carrying out the terms of the Liquidating Trust Agreement.

*1.64    Liquidating Trustee* means the Person appointed in accordance with Section 4.2.6 to serve as the trustee for the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement

*1.65    Litigation* shall mean the existing litigation pending, without limitation,  the U.S District Court, the actions currently pending in the Washington County Court of Common Pleas, and the United States District Court for the Western District of Pennsylvania, against some or all of Majestic, JND, Parkridge, Joseph N. DeNardo, or Shari DeNardo, or any other claims asserted against these Parties by any current or former owner

of a home in the Majestic Hills Development, or any governmental entity, whether such Claims fall within or outside the scope of the definitions of "products liability," "products hazard," and/or "completed operations hazard," or their equivalents, contained in the Policies. "Lawsuits" specifically includes any future claim or litigation which may be brought against the "Protected Parties" for any claim relating to the Majestic Hills development in North Strabane Township, Pennsylvania, for any relief, in any manner or fashion, under any legal theory.

*1.66   Majestic Hills, LLC Claim* means any Claim including all Derivative Liability Claims or an Indirect Claims or allegation or portion thereof against, or any debt, liability, or obligation of, the Debtor, a Protected Party, or any current or former Member Representative or Agent of the Debtor, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, for any failure of the ground, failure to support the structure(s), landslide or soil condition to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtor, including all related claims, debts, obligations, or liabilities for compensatory damages, proximate, consequential, general, and or special damages against the Debtor or any other Entity for whose products or operations the Debtor has liability or is alleged to have liability including the acts, omissions, business, or operations of any other Entity for whose products or operations the Debtor has liability, but only to the extent of the Debtor's liability for such acts, omissions, business, or operations), including all related claims, debts, obligations, or liabilities for compensatory damages proximate, consequential, general, and

special damages). Notwithstanding the foregoing, any such Claim, allegation, debt, liability, or obligation shall be a Majestic Hills, LLC Claim only to the extent of the Debtor's liability for that Claim, allegation, debt, liability, or obligation.

**1.67** **_Non-Settling Entity_** means any Entity that has not entered into a Settlement Agreement with the Debtor requesting that they join into the plan and become an additional "Protected Party" who seek the protections of this plan <u>and</u> who have agreed to make a substantial contribution to the Liquidating Trust Assets.

**1.68** **_Non-Tax Claim_** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

**1.69** **_Plan_** shall mean this Plan of Reorganization, dated **May 21, 2020**, as the same may be amended or modified from time to time in accordance with the provisions of this Plan and 11 U.S.C. § 1127 of the Bankruptcy Code, all addenda, exhibits, schedules, releases and other attachments hereto, all of which are incorporated herein by reference as though fully set forth herein.

**1.70** **_Plan Documents_** means, collectively, (a) the Plan, (b) the Disclosure Statement, (c) the Liquidating Trust Documents, (d) the Plan Supplement, (e) all of the exhibits and schedules attached to any of the foregoing, and (g) any other document necessary to implement the Plan, as the same may be amended, modified, or supplemented.

**1.71** **_Plan Supplement_** means the compilation of documents (or forms or summary of material terms thereof), schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the

terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules), if any, to be filed no later than five (5) calendar days before the Voting Deadline or such later date as the Bankruptcy Court may approve.

*1.72    Post-Confirmation Expense* means any fees, costs, and expenses, including, without limitation, United States Trustee fees, the Liquidating Trustee fees, attorneys' fees, other Professionals' fees, and any taxes imposed upon the Liquidating Trust or in respect of the Trust Assets necessary to complete the liquidation and winding up of the Debtor or its Estate or for the formation of the Liquidating Trust after the Confirmation Date.

*1.73    Priority Non-Tax Claim* means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

*1.74    Priority Tax Claim* shall mean any claim entitled to priority pursuant to 11 U.S.C. § 507(a)(7) to the extent it is an allowed claim.

*1.75    Professional* shall mean any person or entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

*1.76    Proof of Claim* shall mean any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

*1.77    Proponent of the Plan* or *Plan Proponent* shall mean the **Majestic Hills, LLC** and its sole Member, JND Properties, LLC

*1.78    Pro Rata* means the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed

Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

      *1.79*   **Protected Party** means each of the Entities identified on Schedule 1 and each other Entity that, by virtue of its relationship to a Protected Party identified on Schedule 1, is required by the terms of an Approved Insurance Settlement Agreement to receive the benefit of the Insurance Policy Injunction. This list may be amended prior to the approval of the Disclosure Statement and solicitation of the voting upon this plan

      *1.80*   **Representative** means, with respect to any specified Person, any current or former member, officer, director, employee, agent, Professional, attorney, accountant, financial advisor, expert, consultant, or other representative.

      *1.81*   **Schedules** shall mean the schedules of assets and liabilities filed by **Majestic Hills, LLC** with the Bankruptcy Court as required by 11 U.S.C. § 521 of the Bankruptcy Code, and any amendments thereto as allowed by the Bankruptcy Court.

      *1.82*   **Secured Claim** shall mean an allowed claim in respect to which a security interest is held in or against any property of the Debtors' estate, to the extent of the value of such creditor's interest in the estate's interest in such property; and to the extent the claim is perfected against a trustee under 11 U.S.C. § 544.  If the value of such creditor's interest is less than the amount of the allowed claim held by it, then such creditor shall hold an unsecured claim for the deficiency amount; if the creditor's claimed security is not perfected, it will have an unsecured claim; but only to the extent the creditor has filed a claim.

      *1.83*   **Tax Attributes** shall mean any right or claim for creditors that the Debtor has as of the date of confirmation of the Plan.

      *1.84*   **United States Trustee** shall mean the United States Trustee appointed under

28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.85**   ***Unsecured Claim*** shall mean any claim other than an administrative claim; secured claim or a priority claim, to the extent it is an allowed claim; and to the extent a disputed claim has filed a timely Proof of Claim.

**B.**   **Rules of Interpretation**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## ARTICLE 2 – UNCLASSIFIED CLAIMS

**2.1**   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions. Rather, all such Claims are treated separately as unclassified Claims as set

forth in this Article 2, and the holders thereof are not entitled to vote on the Plan.

(a)    <u>Filing Administrative Claims</u>. The holder of an Administrative Claim, other than (i) a liability incurred and payable in the ordinary course of business by the Debtor after the Petition Date, or (ii) an Administrative Claim that has been Allowed and/or paid in full on or before the Effective Date, must file and serve on the Debtor a request for payment of such Administrative Claim pursuant to section 503(a) of the Bankruptcy Code so that it is received no later than the Administrative Claim Bar Date. Holders required to file and serve, who fail or file and serve, a request for payment of Administrative Expense Claims by the Administrative Claim Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor and its property, and such Administrative Claims shall be deemed waived and released as of the Effective Date. Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no governmental unit shall be required to file a request for payment of any Administrative Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

(b)    <u>Allowance of Administrative Claims</u>. An Administrative Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.2(a), shall become an Allowed Administrative Claim if no objection to such request is filed with the Bankruptcy Court and served on the Debtor and the requesting party on or before the thirtieth (30th) calendar day after the Effective Date, as the same may be modified or extended from time to time by order of the Bankruptcy Court. If an objection is timely filed, the Administrative Claim shall become an Allowed Administrative

Claim only to the extent Allowed by a Final Order or as such Claim is settled, compromised, or otherwise resolved.

(c)       Payment of Allowed Administrative Claims. Except to the extent that an Administrative Claim already has been paid during the Chapter 11 Case or the holder of an Allowed Administrative Claim agrees to a less favorable treatment, and except as provided in herein, each holder of an Allowed Administrative Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Administrative Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) the first Business Day that is at least thirty (30) calendar days after the date on which such Administrative Claim becomes Allowed; (iii) the date on which such Administrative Expense Claim becomes due and payable in the ordinary course of the Debtor's business in accordance with the terms and conditions of any agreements or understandings governing, or other documents relating to, such Allowed Administrative Expense Claim; and (iv) such other date as may be agreed to by such holder and the Debtor; provided, however, that Allowed Administrative Expense Claims (other than a Claim covered by Section 2.1(b)) representing liabilities incurred in the ordinary course of business by the Debtor, as debtor-in-possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtor, as debtor-in-possession, whether or not incurred in the ordinary course of business, may be paid by the Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

(d)        Professional Fees.

(1) Final Fee Applications. Each Professional requesting compensation pursuant to section 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (a) file with the Bankruptcy Court, and serve on the Debtor, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the date that is forty-five (45) calendar days after the Effective Date, and (b) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid by the Debtor, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) no later than thirty (30) calendar days after the date upon which the order relating to any such Allowed Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Claim and the Debtor, or, on or after the Effective Date, the Debtor.

(2) Post-Effective Date Fees and Expenses. From and after the Effective Date, the Debtor may, upon submission of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Debtor for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Bankruptcy Court. On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional for fees and

charges incurred from and after the Effective Date in the ordinary course of business without any notice to or approval from the Bankruptcy Court.

## ARTICLE 3 - DESIGNATION OF CLASSES

This Article designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

3.1    Class 1 – Commonwealth of Pennsylvania, Department of Environmental Protection (PA DEP) and Remediation Claims.

3.1.1    *Classification.*    This class shall include an allowed claim of the PA DEP that arose from the Compliance Order against the Debtor. The Compliance Order was served upon the Debtor on October 11, 2018 as a result of an inspection that took place on September 14, 2018. This class also includes the cost of all future remediation and engineering costs and repairs to close and validate the storm water permits of the National Pollution Discharge Elimination System(s) (NPDES). This class shall be limited to the principal as of **May 21, 2020. It does not include any fees, costs or potential fines which may be assessed by any governmental agency. Any fines or other items not included in Class 1 shall be treated and will receive any distribution of allowed claims in Class 3**

3.1.2    *Treatment.*    On the Effective Date, all liability to the PA DEP and the

costs of all future remediation and engineering costs and repairs to close and validate the national pollution discharge elimination system(s) shall automatically, and without further act, deed, or court order, be assumed by and transferred to the Liquidating Trust in accordance with, and to the extent set forth in Article 4, the Trust Documents, and the Confirmation Order. The Class 1 Claims shall be resolved in accordance with the terms, provisions, and procedures set forth in the Liquidating Trust. The Liquidating Trust shall be funded in accordance with Article 4 of the Plan and Article III of the Trust. **The sole recourse for this Class shall be the Liquidating Trust**. The Debtor's plan is to dedicate not less than ten percent (10%) of the sums available for distribution from the trust to the costs of remediation of the water basin. The Trust may, but is not required to, maintain a separate account for funds reserved for payment of Class 1 Claims provided, however, that Class 1 claims shall not receive a greater distribution on account of its Trust Claims than its actual allowed claims. If the funds maintained for the Class 1 Claims is in excess of the amounts needed to remediate the water basin issue, the excess funds for the payment shall be combined and made available to the holders of the Class 3, Other General Unsecured Claims.

       3.1.3 *Impairment and Voting.*   Class 1 is Impaired. The Class 1 Claimants shall be entitled to vote to accept or reject the Plan. Whether the requisite votes in favor of the Plan from holders have been attained shall be determined in accordance with section 1126 of the Bankruptcy Code.

       **3.2**   Class 2- Actual Property Claims These are actual claims which have occurred as a direct and proximate result to the failure of the hillside in phase I, and to some extent in phases II and III of the Majestic Hills development in North Strabane Township.

**3.2.1** *Classification.* This class shall include any and all past, present, or future, known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, matured or unmatured, liquidated or unliquidated, claims (including "claim" as defined in broadest reading of Section 101(5) of the Bankruptcy Code), proofs of claim, causes of actions, cross-claims, liabilities, rights, demands (including letter demands, notices, or inquiries from any person or government agency), penalties, assessments, damages, requests, suits, lawsuits, costs (including attorneys' fees and expenses), interest of any kind, actions, administrative proceedings, criminal proceedings, or orders, of whatever nature, character, type, or description, whenever and however occurring, whether at law or in equity, and whether sounding in tort or contract, or any statutory, regulatory or common law claim or remedy of any type including, without limitation:  (a) any claim for actual property damage that occurred as a direct or proximate result of the failure of the hillside (b) any claim seeking any type of relief, including compensatory, consequential, exemplary or punitive damages, rescission, or declaratory or injunctive relief which arose out of an insured event; or (c) any claim for breach of contract of a specific lot or failure to perform any contract term; (d) any claim for failure to design or failure to properly test any soil or ground condition, including claims based on compaction; (e) any claim on account of alleged bad faith, failure to act in good faith, violation of any duty of good faith and fair dealing, violation of any unfair claims practices act or similar statute, regulation or code, any unfair claims against "Majestic" by a consumer, (f) Any claim for fraud, conspiracy, concerted action, or other type of alleged misconduct; or (e) any claim for any other act against Mutual Benefit or of any type for which a claimant might seek relief, including lack of egress and/or utilities. Class 2 shall also include any "Direct Action Claim" by any Person

other than Majestic directly against Mutual Benefit Insurance Company and Westfield

Insurance Company under any Policy that arises from the activities or products of Majestic,

or any insurance contract or Policy that is, or may in the future be, asserted to provide

coverage for any of the aforementioned Claims, whether arising by contract, in breach of

contract or tort or under the laws of any jurisdiction, including any statute that gives a third

party a direct cause of action against Mutual Benefit Insurance Company and Westfield

Insurance Company.   These **Actual Property Claims** had allowed claims against the

Debtor as of May 21, 2020.

**Participation in this class is limited to actual and sustained damages proximately caused by the Debtor or any "Protected Party". This class does not include any diminution of value to the future resale value of any affected property. Any diminution of value to the future resale value of any affected property is included in Class 3.**

**3.2.2** *Treatment.*   On the Effective Date, all liability for Actual Property

Claims shall automatically, and without further act, deed, or court order, be assumed by and

transferred to the Liquidating Trust in accordance with, and to the extent set forth in the

Trust Documents, and the Confirmation Order. Each Class 2 Claim shall be resolved in

accordance with the terms, provisions, and procedures set forth in the Liquidating Trust.

The Liquidating Trust shall be funded in accordance with Article 4 of the Plan and Article III

of the Trust. **The sole recourse for this Class shall be the Liquidating Trust**. The Trust

shall ensure that eighty percent (80%) of the sums available for distributing from the trust

are maintained for the benefit of holders of Class 2 Claims. These claimants have existing

physical damage to their structures caused by the hillside slide. This class includes physical

damages proximately caused by the hillside slide. This class DOES NOT include any diminution in present or future market value.  The Trust shall calculate the pro rata percentage for distribution Insurance Claims; based solely on the amounts reserved for Insurance Claims; provided, however, that holders of Class 2 Claims shall not receive a greater distribution on account of their Trust Claims than their allowed claims. If the funds maintained for payment of insurance is in excess of that available to insurance Claims, the excess funds for the payment shall be combined and made available the Holders of the Class 3 General Unsecured Claims.

   **3.2.3**  ***Impairment and Voting.***   Class 2 is Impaired. Each Class 2 Claimant shall be entitled to vote to accept or reject the Plan. Whether the requisite votes in favor of the Plan from holders of Class 2 Claims have been attained shall be determined in accordance with section 1126 of the Bankruptcy Code.

  3.3  <u>Class 3 – Other Unsecured Claims</u> Class *3 shall include any and all other claims against the Debtor which are not in Class 2.*

   **3.3.1**  ***Classification.***    This class shall include any and all past, present, or future, known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, matured or unmatured, liquidated or unliquidated, claims (including "claim" as defined in broadest reading of Section 101(5) of the Bankruptcy Code), proofs of claim, causes of actions, cross-claims, liabilities, rights, demands (including letter demands, notices, or inquiries from any person or government agency), penalties, assessments, damages, requests, suits, lawsuits, costs (including attorneys' fees and expenses), interest of any kind, actions, administrative proceedings, criminal proceedings, or orders, of whatever nature, character, type, or description, whenever and however occurring, whether at law or

in equity, and whether sounding in tort or contract, or any statutory, regulatory or common law claim or remedy of any type including, without limitation:  (a) any claim seeking any type of relief, including compensatory, consequential, exemplary or punitive damages, rescission, or declaratory or injunctive relief; (b) **any claim for diminution of value to the future resale value of any affected property**; (c) any claim for breach of contract or failure to perform any contract term; (d) any claim for failure to design or failure to properly test any soil or ground condition; (e) any claim on account of any claim for indemnification or subrogation by any contractor, sub-contractor, developer or governmental body against "Majestic", (f) Any claim for fraud, conspiracy, concerted action, or other type of alleged misconduct;  (g) any claim for any other act or omission of a Mutual of any type for which a claimant might seek relief; and (h) any claim against any "Protected Party" asserting fraudulent conveyances or any claim against any principal of the Debtor arising from any alleged right to pierce the corporate veil of Majestic Hills, LLC. These **Other Unsecured Creditors** had allowed claims against the Debtor as of **May 21, 2020.**

        **3.3.2** *Treatment.*   On the Effective Date, all liability for Other Unsecured Claims shall automatically, and without further act, deed, or court order, be assumed by and transferred to the Liquidating Trust in accordance with, and to the extent set forth in the Trust Documents, and the Confirmation Order. Each Class 3 Claim shall be resolved in accordance with the terms, provisions, and procedures set forth in the Liquidating Trust. The Liquidating Trust shall be funded in accordance with Article 4 of the Plan and Article III of the Trust. **<u>The sole recourse for this Class shall be the Liquidating Trust</u>**. The Trust shall ensure that ten (10%) percent of the funds available to pay Trust Claims are maintained for the benefit of holders of all remaining Trust Claims. These claimants have

claims against each other for their respective alleged liabilities whether they be direct claims, claims for contribution, subrogation or as a joint tortfeasor or any other claim, including any claim for present or future diminution in market value or claims for penalties proximately caused by the hillside slide who has an allowable claim.   The Trust shall calculate the pro rata percentage for distribution Class 3 Claims; based solely on the amounts reserved for these Claims; provided, however, that holders of the Class 3 Claims shall not receive a greater distribution on account of their Trust Claims than their allowed claims. If the funds maintained for payment of the previous Class 3 Claims is in excess of that available to the respective classes, the excess funds for the payment shall be combined and made available the Holders of the Class 3 General Unsecured Claims.

 **3.3.3 *Impairment and Voting*.** Class 3 is Impaired. Each Class 3Claimant shall be entitled to vote to accept or reject the Plan. Whether the requisite votes in favor of the Plan from holders of these Claims have been attained shall be determined in accordance with section 1126 of the Bankruptcy Code.

 **3.4** Class 4 shall consist of the **Equity Ownership** of the Debtor as of the Petition Date. This class consists of all rights, claims legal or equitable of the owners, the members of the Debtor that arise under or, in relation to, their rights as equitable owners and Members. Participation in this class shall be identical to the percentage of stock each claimant had as of the date of filing:

 a)   JND Properties LLC – 100% Member

This includes all the rights of the holders of any interest in the Debtor and any voting rights to control or manage the Debtor.

 **3.4.1 *Treatment.*** All Interests will remain outstanding and will be

cancelled when the existence of the Debtor is cancelled in accordance with transfer of

all assets to the Liquidating Trust as provided for in Article 4.2.3 of the Plan. Upon such

cancellation, no property will be distributed to, or retained by, holders of such Interests.

After the transfer of all interests to the Liquidating Trust, Majestic Hills, LLC will file all

final tax returns and cease to exist and will dissolve in accordance with Pennsylvania

State Law.

3.3.2   *Impairment and Voting.*   Class 4 is Impaired. Holders of Interests

are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE 4 - MEANS FOR IMPLEMENTATION OF THE PLAN

**4.1**   Preliminary Motions. On **May 21, 2020**, the Debtor filed two Motions.

("Preliminary 9019 Motions"). Doc. Nos. 10-13. The Preliminary Motions seek to resolve the

respective rights and obligations under certain insurance policies issued by Mutual Benefit

and Westfield. When approved, Mutual Benefit and Westfield will contribute settlement

proceeds to the Debtor which will be used as assets for the liquidating trust proposed

herein. The approval of the Preliminary Motions is integral to the successful conclusion of

this Chapter 11 case.

**4.2**   The Liquidating Trust.

**4.2.1**   *Creation of the Liquidating Trust.* On the Effective Date, the

Liquidating Trust shall be created in accordance with the Plan. The Liquidating Trust is

intended to constitute a "qualified settlement fund" within the meaning of section 468B of the

Internal Revenue Code and the regulations issued thereunder. The purpose of the

Liquidating Trust shall be to assume, liquidate, and resolve all Claims and to use the Liquidating Trust Assets to pay holders of Allowed Claims in accordance with the terms of the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

> **4.2.2   *Trust Goals*.** The goal of the Trust is to provide equitable treatment among Claimants with Allowable Claims. The Trust furthers that goal by setting forth procedures for processing and paying Claims generally on an impartial basis. To this end, the Trust establishes a schedule of three related claims, each of which have different rights and potential injuries caused by the soil condition, commonly referred as the hillside failure.

> **4.2.3   *Transfer of Liquidating Trust Assets*.** Effective on the Effective Date, by virtue of confirmation of the Plan, any and all Liquidating Trust Assets shall be transferred to and be vested in the Liquidating Trust, without further notice, deed, or order; provided, however, that any Excess Cash shall not be transferred to the Liquidating Trust until after satisfaction of all liabilities for which the Excess Cash was intended to satisfy; and, provided, further, that to the extent that certain Liquidating Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be transferred to and vested in the Liquidating Trust on the Effective Date, such Liquidating Trust Assets shall be transferred to and be vested in the Liquidating Trust as soon as practicable after the Effective Date.

> **4.2.3   *Vesting of Liquidating Trust Assets*.** Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, all right, title, and interest in and to such Liquidating Trust Assets, and any proceeds thereof, shall be indefeasibly and irrevocably vested in the Liquidating Trust, free and clear of all Claims, Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity,

subject to other provisions of this Plan.

      **4.2.4**  *Transfer of Claims to the Liquidating Trust.* On the Effective Date, all Claims shall be assumed by and transferred to the Liquidating Trust and shall be satisfied solely by the Liquidating Trust Assets. The Liquidating Trust shall have no liability for any Claims other than the claims as defined in the Plan and no Claims other than the Claims described herein shall be transferred to the Liquidating Trust.

      **4.2.5**  *Liquidating Trust Expenses*. The Liquidating Trust shall pay all Liquidating Trust Expenses, other than Post-Confirmation Expenses, from the Liquidating Trust Assets.

      **4.2.6**  *Appointment of Liquidating Trustee*. The individual who will serve as the initial Liquidating Trustee shall be selected by the Committee, identified in the Plan Supplement, and appointed pursuant to the Confirmation Order. All subsequent Liquidating Trustees shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

      **4.2.7**  *Indemnification*. The Liquidating Trust shall, pursuant to the terms of the Liquidating Trust Agreement, indemnify the Protected Parties for any liability or alleged liability arising out of, or resulting from, or attributable to, an Allowed Claim, including fines and penalties resulting from the Liquidating Trust's failure to comply with Article 9 of the Plan.

      **4.2.8**  *Liquidating Trust Compliance with Documentation Requirements*. The Liquidating Trust shall specifically provide for a form of release ("Clamant Release", attached as Exhibit 1 to the Liquidating Trust, to be executed in favor of Settling Litigation Insurance Entities and any Protected Parties, by each holder of a Litigation Claim as a

condition of, and prior to, payment to such holder. As a condition to making any payment to a holder of a Litigation Claim, the Liquidating Trust shall obtain a release of such holder's Claims against (i) the Debtor, (ii) the Liquidating Trust, and (iii) each Protected Party, that relate in any way to the Debtor or the Litigation Insurance Policies addressed under the Approved Insurance Settlement Agreements.

**4.3** <u>Sources of Consideration for Distributions</u>. The Liquidating Trust shall fund Distributions with Cash on hand.

**4.3.1** ***Initial Funding the Trust***. The Liquidating Trust will be funded from the settlement and sale of the Insurance Policies pursuant to Approved Insurance Settlements.

**4.3.2** ***Subsequent Funding.*** The Trust will be further funded by the contributions and settlements of other Parties who may have claims as Class 2 or Class 3 Claimants. Such contribution and settlements will be made in exchange for a Release of the Debtor's claims against the respective party. Any contribution will be made to the Trust upon the entry of a Final Order on a Motion to Approve Settlement Pursuant to Bankruptcy Rule 9019.

**4.4** <u>Amended Certificate of Organization and an Amended Docketing Statement</u>. The Certificate of Organization and Docketing Statement of the Debtor shall be amended and restated as of the Effective Date to otherwise effectuate the provisions of the Plan, subject to further amendment of such amended and restated articles of incorporation after the Effective Date as permitted by applicable law.

**4.5** <u>Corporate Action</u>. On the Effective Date, all actions contemplated by the Plan or that are necessary to implement the provisions of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without

the need for any further corporate action, including, to the extent applicable, (a) the creation

of the Liquidating Trust, the rejection of Executory Contracts and Unexpired Leases, (c) the

cancellation of the Debtor's existence, and (d) all other acts or actions contemplated or

reasonably necessary or appropriate to consummate the Plan (whether to occur before, on,

or after the Effective Date).

**4.6** <u>Dissolution of Debtor</u>. As soon as reasonably practicable following the

Effective Date, the satisfaction of all Allowed Claims, and the transfer of all Liquidating

Trust Assets to the Liquidating Trust, in each case pursuant to the terms of the Plan, the

Debtor shall dissolve and file any and all documents and take any and all other actions

that may be necessary and appropriate to cancel the Debtor's existence as a limited

liability company.

**4.7** <u>Authority of Liquidating Trust to Petition for Final Decree</u>. If the Debtor's

corporate existence is cancelled prior to filing a motion for the Final Decree, the Liquidating

Trust shall have authority to petition for the Final Decree and to take all actions that are

necessary and appropriate to secure entry of the Final Decree and close this Chapter 11

Case.

## ARTICLE 5 – DISTRIBUTION PROCEDURES UNDER THE LIQUIDATING TRUST

**5.1** <u>Claims Liquidation Procedures</u>. The Trust shall take all reasonable steps to

resolve Claims submitted to the Trust on or prior to a bar date to be established by the

Trustee as efficiently and expeditiously as possible at each stage of claims processing.

**5.1.1** ***Bar Date for Claim Submission to Liquidating Trust***. The Trustee

shall have the authority to set a bar date for all Trust Claims. The Trustee shall send notice

to all Trust Beneficiaries in writing of the bar date upon the selection of such date. The bar

date shall be no less than ninety (90) calendar days after the Effective Date of this Plan. Any such claim that is submitted after the bar date has passed shall be deemed disallowed and lapsed.

5.1.2  *Effect of Bar Date*. All Trust Claims must meet either (i) have filed an allowed proof of claim with all required documentation showing the factual and or scientific basis for the claim with the amount of the claim as of the Petition Date prior to the Trust Bar Date or (ii) obtained an order extending the time for that creditor to comply with the filing of a Proof of Claim. In determining whether an extension of time is appropriate, the Court should require a demonstration of "good cause" with an understanding that any extension may delay distribution to other creditors. **If any Claimant fails to file an appropriate Proof of Claim prior to the Bar Date, that creditor will not be entitled to any distribution from the Trust and will be disallowed.**

5.1.3  *Claims Materials*. The Trust shall prepare suitable and efficient claims materials for all Trust Claims, and shall provide such Claims Materials upon a written request for such materials to the Trust. The proof of claim form to be submitted to the Trust shall require the Claimant to assert the Class for which the Trust Claim qualifies at the time of filing. The proof of claim form shall also include a certification by the Claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure, as if the completed proof of claim form were a filing subject to that rule.

All submissions to the Trust by a Claimant, including the proof of claim form and materials related thereto, shall be treated as made in the course of settlement discussions between the Claimant and the Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but

not limited to those directly applicable to settlement discussions. The Trust will preserve the confidentiality of such Claimant submissions, and shall disclose the contents thereof, only with the permission of the Claimant and is entitled to non-disclosure under the Bankruptcy Code or other applicable law, to such other persons as authorized by the Claimant, or in response to a valid subpoena of such materials issued by the Bankruptcy Court. Furthermore, the Trust shall provide counsel for the Claimant of the applicable Trust Claim a copy of any such subpoena upon being served. The Trust shall, on its own initiative, or upon request of the Claimant in question, take all necessary and appropriate steps to preserve said privileges before the Bankruptcy Court and before those courts having appellate jurisdiction related thereto. Notwithstanding anything in the foregoing to the contrary, the Trust may, in specific limited circumstances, disclose information, documents, or other materials reasonably necessary in the Trust's judgment to preserve, litigate, resolve, or settle claims, or to comply with an applicable obligation under an Insurance Policy; provided, however, that the Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents, and materials, and prior to the disclosure of such information, documents, or materials to a third party, the Trust shall receive from such third party a written agreement of confidentiality that (a) ensures that the information, documents, and materials provided by the Trust shall be used solely by the receiving party for the purpose stated in the agreement, (b) requires that the materials provided will be returned to the Trust upon request, and (c) prohibits any other use or further dissemination of the information, documents, and materials by the third party. Nothing in this Plan or Trust expands, limits, or impairs the obligation under applicable law of a Claimant to respond fully to lawful discovery in an underlying civil action regarding his

or her submission of factual information to the Trust for the purpose of obtaining compensation for actual injuries from the Trust.

   **5.2**   Resolution Process. Within three (3) months after the establishment of the Trust, the Trustee shall adopt procedures for reviewing and liquidating Trust Claims. Such procedures shall also require that Claimants seeking resolution of Trust Claims must file a proof of claim on or before the Majestic Hills, LLC Claims Bar Date, utilizing the claim form approved by the Trustee, together with the required supporting documentation, in accordance with the provisions of the Plan and Trust. It is anticipated that the Trust shall provide an initial response to the Claimant within thirty days of receiving the proof of claim form.

   The proof of claim form shall require the Claimant to assert his or her Trust Claim for actual damages for which the Trust Claim qualifies at the time of filing. Without regard to the alleged on the proof of claim form, each Trust Claim shall be deemed to be a Trust Claim for the highest Claim Level for which the Trust Claim qualifies at the time of filing. If the claimant files a Proof of claim in the incorrect Class, that claimant shall qualify for the proper class of which that claimant should participate.

   The Trustee shall determine when a reasonable time has been provided for resolution of all Trust Claims and at such time may ask the Bankruptcy Court to authorize a final distribution of Trust Assets and to disallow any unliquidated Trust Claims.

   **5.3**   Claims Review Process. The Trust's review process is designed to provide an expeditious, efficient, and inexpensive method for liquidating all Trust Claims. All Claimants seeking liquidation of their Claims shall file the Trust's proof of claim form on or before the Trust Bar Date. On the claim form, the Claimant shall asset a liquidated Trust Claim.

(a)      All Claimants must attach to their proof of claim a calculation of damages and attach all evidence, including scientific and expert evidence and reports, and invoices and/or estimates which support their actual and proximately caused claims. It is the burden of the claimant to show any damage was proximately caused by actions of the Debtor or other protected parties.

(b)      The Claimants must demonstrate meaningful and credible evidence that establishes that Majestic Hills, LLC caused their damage for which Majestic Hills, LLC otherwise has legal responsibility, (providing the Trust finds such evidence reasonably reliable), by invoices, employment, construction, or similar records, or by other credible evidence. The specific information required by the Trust to process a Trust Claim shall be set forth on the proof of claim form to be used by the Trust. The Trust can also require submission of other or additional evidence when it deems such to be necessary. All claims for Damages shall be accompanied by either a statement by the expert providing the scientific basis that the damages was caused by the hillside landslide and any qualified estimates of the costs of remediation.

(c)      The Trust may, and reserves the right to, rebut such claims by similar statements by an expert providing the scientific basis that disputes the amount or the causation of damages that was caused by hillside slide and any rebuttable estimates of costs of remediation.

(d)      Evidence submitted by a Claimant in support of its claim is for the sole benefit of the Trust, not third parties or defendants in the Court system.

**5.4**    General Guidelines for Liquidating and Paying Claims.

**5.4.1**    ***Showing Required.*** To establish a valid Trust Claim, a Claimant must

meet the requirements set forth in this Plan and Trust. The Trust may require the submission of invoices, scientific tests, appraisals or reviews, other competent evidence to support or verify the Trust Claim, and may further require that evidence be submitted comply with recognized scientific standards regarding property damage, testing methods, and procedures to assure that such evidence is reliable.

5.4.2  *Costs Considered.*  Notwithstanding any provisions of the Plan and or Trust to the contrary, the Trustee shall always give appropriate consideration to the cost of investigating and uncovering invalid Trust Claims so that the payment of valid Trust Claims is not further impaired by such processes with respect to issues related to the validity of the evidence supporting a Trust Claim. The Trustee shall also have the discretion to make judgments regarding the amount of transaction costs to be expended by the Trust so that valid Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustee, in appropriate circumstances, from contesting the validity of any Trust Claim against the Trust whatever the costs, or declining to accept evidence from sources that the Trustee has determined to be unreliable.

5.4.3  *Payment in Event of Limited Liquidity*. In the event that the Trust faces temporary periods of limited liquidity, the Trustee may limit or suspend payments.

5.4.4  *Releases*. The Trustee shall have the discretion to determine the form and substance of the releases to be provided to the Trust in order to maximize recovery for Claimants against other non-Protected Parties without increasing the risk or amount of claims for indemnification or contribution from the Trust. However, to the extent that provisions of such release are dictated by an order of the United States Bankruptcy Court confirming a chapter 11 plan of Majestic Hills, LLC, the Trustee shall incorporate such

provisions in the releases as required. As a condition to making any payment to a Claimant, the Trust shall obtain a general, partial, or limited release, as appropriate, in accordance with the applicable state or other law. Such release shall include a full release of all of such Claimant's Claims against (i) Majestic Hills, LLC, (ii) the Trust, and (iii) Each Settling Insurance Entity and each Protected Party, which Claims relate in any way to Majestic Hills, LLC or the Insurance Policies addressed under the Approved Insurance Settlement Agreements. This requirement may not be amended, modified, deleted, or added to in any way whatsoever with respect to a particular Settling Insurance Entity or Protected Party without the written consent of that particular Settling Insurance Entity or Protected Party. The form of release is attached hereto as Schedule 1 of to the Trust.

5.5    Distributions. Other than distributions to be made to holders of Claims from the Liquidating Trust, the Liquidating Trustee shall make all Distributions required to be made under the Plan. All distribution shall be made in accordance with the terms of the Liquidating Trust Documents.

5.5.1  *Initial Distribution*. The Trustee may elect either to make an initial distribution on account of resolved Trust Claims, or to make a single distribution upon the liquidation of all Trust Claims. Furthermore, at any time, the Trustee may elect to make a distribution solely to holders of qualifying Trust Claims If the Trustee elects to make an initial distribution, the Trustee shall determine when enough Trust Claims have been resolved such that the Trust should make an initial distribution with respect to Trust Claims. Prior to any initial distribution, the Trustee shall set the amount of the reserves to be held by the Trust for Trust Claims that have not been resolved and for the projected expenses of the Trust. The Trust shall distribute the assets of the Trust (net of the reserves) to the Claimants

that the Trust has determined satisfy the allowable claim determination and with respect to which the Trust has received properly executed releases.

5.5.2 *Further Distributions*. If the Trustee elects to make multiple distributions to Claimants, the Trustee shall from time to time determine when sufficient Trust Claims that were unresolved at the time of the last distribution have been resolved such that the Trust should make a further distribution with respect to Trust Claims or if further distribution is appropriate for other reasons. Prior to each distribution, the Trustee shall set the amount of the reserves to be held by the Trust for Trust Claims that have not been resolved and for the projected expenses of the Trust. The Trust shall distribute the assets of the Trust (net of the reserves) to the holders of Trust Claims that the Trust has determined satisfy the allowable claim determination and with respect to which the Trust has received properly executed releases.

5.6   Pro Rata Payment of Trust Claims. After the liquidated value of a Trust Claim is determined pursuant to the procedures set forth herein, the Claimants shall ultimately receive a pro-rata share of that value based on the Trust Assets available for the payment of the Claimant's class in the Trust Claim.

5.6.1 *Commonwealth of Pennsylvania, Department of Environmental Protection and Remediation Claims.* In order to ensure that an appropriate portion of such Trust Assets are used to pay Trust Claims relating to the remediation of the water basin, the Trust shall reserve not less than ten percent (10%) of all funds made available to pay Trust Claims for the exclusive purpose of making and carrying out the appropriate remediation plan and to cover all future remediation and engineering costs and repair to close and validate the national pollution discharge elimination system(s). The Trust may, but

is not required to, maintain a separate account for funds reserved for payment of PA DEP & Remediation Claims provided, however, that PA DEP & Remediation Claims shall not receive a greater distribution on account of their Trust Claims than its actual allowed claims. If the funds maintained for payment of PA DEP & Remediation Claims is in excess of the amounts needed to remediate the hillside slide and all related issues, the excess funds for the payment shall be combined and made available the Holders of the Class 3, Other General Unsecured Claims;

      **5.6.2** *Actual Property Claims*. The Trust shall ensure that eighty percent (80%) of the funds available to pay Trust Claims are maintained for the benefit of holders of Trust Claims arising out of any event caused by an actual loss event. These claimants have existing physical damage to their structures caused by the hillside slide. This class includes physical damages proximately caused by the hillside slide. This class DOES NOT include any diminution in present or future market value.  The Trust shall calculate the pro rata percentage for distribution of Actual Property Claims; based solely on the amounts reserved for such Claims; provided, however, that holders of Actual Property Claims shall not receive a greater distribution on account of their Trust Claims than their allowed claims. If the funds maintained for payment of this class are in excess of that available to Actual Property Claims, the excess funds for the payment shall be combined and made available the Holders of the Class 3 General Unsecured Claims.

      **5.6.3** *Other Unsecured Claims*. The Trust shall ensure that ten (10%) percent of the funds available to pay Trust Claims are maintained for the benefit of holders of all remaining Trust Claims. These claimants have claims against each other for their respective alleged liabilities whether they be direct claims, claims for contribution,

subrogation or as a joint tortfeasor or any other claim, including any claim for present or future diminution in market value or claims for penalties proximately caused by the hillside slide who has an allowable claim.  The Trust shall calculate the pro rata percentage for distribution to Other Unsecured  Claims; based solely on the amounts reserved for such Claims; provided, however, that holders of Other Unsecured  Claims shall not receive a greater distribution on account of their Trust Claims than their allowed claims. If the funds maintained for payment of insurance is in excess of that available to Actual Property Claims, the excess funds for the payment shall be combined and made available the Holders of the Class 3 General Unsecured Claims.

5.7     Amendment to Liquidation, Review, and Distribution Procedures; Adoption of Separate Procedures. The Liquidating Trustee reserves the right to amend any of the procedures regarding the liquidation and review of claims and distributions made to Allowed Claims, as necessary. If any of the procedures are amended, the Liquidating Trustee may adopt the amended procedures as a separate document. Prior to any amendment or adoption, the Liquidating Trustee shall notify all beneficiaries of the proposed amendment. Any amended and or adopted procedures shall be considered incorporated into the Liquidating Trust as modified.

5.8     Distribution Record Date. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Any Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date. The Debtor shall have no obligation to recognize any transfer of any Trust Claim occurring on or after

the Distribution Record Date.

**5.9**   <u>Date of Distributions.</u> Except as otherwise provided herein, any and all Distributions and deliveries to be made hereunder on account of Allowed Claims or Interests shall be made on the Effective Date, as soon thereafter as is practicable, or as otherwise determined in accordance with the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**5.10**   <u>Delivery of Distributions.</u> Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claims shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, unless the Debtor has been notified in writing of a change of address. In the event that any Distribution to any holder is returned as undeliverable, then no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest; <u>provided, however</u>, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six (6) months after the Effective Date. After such date, all unclaimed property or interest in property shall be transferred and delivered to the Liquidating Trust, and the Claim of any other holder to such property or interest in property shall be forever barred notwithstanding any applicable federal or state escheat or abandoned or unclaimed property laws to the contrary. Nothing in the Plan shall require the Debtor to attempt to locate any holder of an

Allowed Trust Claim.

**5.11**   Manner of Payment Under Plan. At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

**5.12**   Withholding of Taxes. In connection with this Plan, the Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities, and all Distributions hereunder shall be subject to those withholding and reporting requirements. Holders of Allowed Trust Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to this Plan. Notwithstanding any other provision of this Plan, each Person receiving a Distribution will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any domestic, foreign, provincial, federal, state, or municipal government, government agency, commission, department, bureau, or other governmental entity, including income and other tax obligations, on account of that Distribution.

**5.13**   Time Bar to Cash Payments. Checks issued by the Debtor in respect of Distributions on Allowed Trust Claims shall be null and void if not presented for payment within sixty (60) calendar days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing to the Debtor by the holder of the Allowed Trust Claim to whom such check originally was issued on or before thirty (30) calendar days after the expiration of the sixty (60) calendar day period following the date of issuance of such check. After expiration of the thirty (30) calendar day period, all funds held on account of such void check shall, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan or become property of and shall be transferred and delivered

to the Liquidating Trust, and the Trust Claim of any holder to such Distributions shall be forever barred.

5.14    <u>Fractional Cents.</u> Notwithstanding any other provision in the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half a penny or less being rounded down.

5.15    <u>No Postpetition Interest on Claims.</u> Unless expressly provided for in the Plan, the Plan Documents, and the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law (including the fair and equitable rule), interest and late fees shall not accrue on or after the Petition Date on account of any Trust Claim.

5.16    <u>Setoffs.</u> The Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Trust Claim, may, but shall not be required to, set off against any Trust Claim (for purposes of determining the Allowed amount of such Trust Claim on which Distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Trust Claim to the extent not otherwise compromised or settled on or prior to the Effective Date; <u>provided</u>, <u>however</u>, that neither the failure to do so nor the allowance of any Trust Claim hereunder shall constitute a waiver or release by the Debtor of any such Trust Claim the Debtor may have against the holder of such Trust Claim.

## <u>ARTICLE 6 – EFFECT OF CONFIRMATION</u>

**6.1**    <u>Vesting of Assets</u>. On the Effective Date, pursuant to sections 1141(b) of

the Bankruptcy Code, all property of the Estate (except the Liquidating Trust Assets,

which are being transferred to the Liquidating Trust and shall vest therein) shall vest in

the Debtor, except as provided in the Plan, the Plan Documents, or the Confirmation

Order.

**6.2**    <u>Binding Effect</u>. Subject to the occurrence of the Effective Date, on and

after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim

against, or Interest in, the Debtor, and such holder's respective successors and assigns,

whether or not the Claim or Interest of such holder is Impaired under the Plan and

whether or not such holder has accepted the Plan.

**6.3**    <u>Retention of Causes of Action/Reservation of Rights</u>. Except as otherwise

provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the

Liquidating Trust shall retain and may enforce, sue on, settle, compromise, otherwise

resolve, discontinue, abandon, or dismiss, or decline to do any of the foregoing with

regard to, any and all Claims, rights, Causes of Action, suits, and proceedings, whether

in law or in equity, whether known or unknown, accruing to or that are property of the

Debtor or its Estate against any Entity without the approval of the Bankruptcy Court,

including (i) any and all Claims against any Entity, to the extent such Entity asserts a

cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against

the Debtor or its Representatives; (ii) all defenses and counterclaims to all Claims

asserted against the Debtor or the Estate, including, without limitation, setoff,

recoupment, and any rights under section 502(d) of the Bankruptcy Code; and (iii)

turnover of any property of the Estate. The Liquidating Trust as successor to the rights of

the Debtor or its successor(s) may pursue such retained Claims, rights, Causes of

Action, suits, and proceedings, as appropriate, in accordance with the best interests of

the Debtor or its successor(s) that hold such rights.

## ARTICLE 7 – PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**7.1**    Actual Property Claims.    All Actual Property Claims shall be submitted to

and resolved by the Liquidating Trust pursuant to the Liquidating Trust Documents. Only the

Liquidating Trust shall have the right to object to and/or resolve disputed Actual Property

Claims.

**7.2**    Objections to Other Unsecured Claims. The Debtor shall be entitled to object

to Other Unsecured Claims, unless the claim has been transferred to the Liquidating Trust.

In the event the claim has been transferred to the Liquidating Trust, the Liquidating Trust

shall have sole authority to object to and/or resolve disputed Other Unsecured Claims. Any

objections to Other Unsecured Claims shall be filed and served on or before (a) the sixtieth

(60th) calendar day following the later of (i) the Effective Date and (ii) the date that a Proof

of Claim is filed or amended or an Other Unsecured Claim is otherwise asserted or

amended in writing by or on behalf of a holder of such Other Unsecured Claim, or (b) such

later date as may be fixed by the Bankruptcy Court.

**7.3**    Estimation of Claims. The Debtor may at any time request that the

Bankruptcy Court estimate any contingent, unliquidated, or Disputed Other Unsecured

Claim pursuant to section 502(c) of the Bankruptcy Code (so long as the Bankruptcy

Court has not already overruled an objection to such Disputed Other Unsecured Claim

filed by the Debtor), and the Bankruptcy Court will retain jurisdiction to estimate any Other

Unsecured Claim at any time, including, without limitation, during the pendency of

litigation concerning any objection to any Claim or of any appeal relating thereto. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Other Unsecured Claim, the amount so estimated shall constitute either the Allowed amount of such Other Unsecured Claim or a maximum limitation on the amount of such Trust Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Other Unsecured Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Other Unsecured Claim. Other Unsecured Claims may be estimated and subsequently compromised, settled, withdrawn, or otherwise resolved by any mechanism approved by the Bankruptcy Court. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.

**7.4**   No Distributions Pending Allowance. Notwithstanding any other provision hereof, if an Other Unsecured Claim or any portion of an Other Unsecured Claim is Disputed, no payment or Distribution shall be made on account of the Disputed portion of such Other Unsecured Claim unless and until such Claim becomes an Allowed Claim.

**7.5**   Distributions After Allowance. To the extent that a Disputed Other Unsecured Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Other Unsecured Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Other Unsecured Claim becomes a Final Order, the Debtor shall provide to the holder of such Other Unsecured Claim the Distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Other Unsecured Claim unless required under applicable

bankruptcy law.

**7.6** <u>Settlement of Disputed Trust Claims.</u> Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtor shall have the exclusive authority to settle or compromise any Disputed Other Unsecured Claim by written agreement with the holder of such Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and the Claims Agent, upon direction of the Debtor, shall administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

**7.7** <u>Adjustment to Claims Register Without Objection.</u> Any duplicate Claim or Interest, any Claim or Interest that has been paid or satisfied, or any Claim that has been amended and superseded, may be adjusted or expunged on the Claims Register by the Claims Agent, upon the direction of the Debtor, without a Claim objection having to be filed and without any further notice to or action, order, or approval from the Bankruptcy Court. In addition, on and after the Effective Date, any Claim for which a Proof of Claim was filed with the Bankruptcy Court or the Claims Agent may be removed from the Claims Register by the Claims Agent, upon the direction of the Debtor, on the basis that it has been assumed by the Liquidating Trust in accordance with this Plan and the Confirmation Order, without any further notice to parties in interest or further action, order, or approval by or from the Bankruptcy Court.

## <u>ARTICLE 8 - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

**8.1** <u>General Treatment</u>. Effective as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party are hereby rejected,

except for any Executory Contract or Unexpired Lease that (a) has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, or (b) is subject of a separate assumption or rejection motion filed by the Debtor under section 365 of the Bankruptcy Code before the Confirmation Date. The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of contracts and leases rejected hereby.

**8.2**   <u>Rejection Claims</u>. In the event that the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such Executory Contract or Unexpired Lease, a Claim for damages, if not heretofore evidenced by a timely Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or its properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor no later than thirty (30) calendar days after the date of entry of an order by the Bankruptcy Court approving such rejection.

**8.3**   <u>Reservation of Rights</u>. Neither the exclusion or inclusion of any contract or lease by the Debtor on any exhibit, schedule, or other annex to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtor that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtor have any liability thereunder. Nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease. Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any executory or non-executory contract or any unexpired or expired lease.

## ARTICLE 9 - EXCULPATIONS, INJUNCTIONS, AND RELEASES

**9.1** Exculpation. *None of the Exculpated Parties shall have or incur any liability to any holder of a Claim against the Debtor (including any ==Actual Property Claim==), or to any current or former holder of an Interest, for any act or omission occurring on or after the Petition Date that is based on, arises from, or is attributable to (a) the Chapter 11 Case, (b) the Plan, (c) the negotiation, formulation, or preparation of the Plan, (d) any of the terms of or the settlements or compromises reflected in the Plan Documents or approved as part of this Chapter 11 Case, including, but not limited to, the Approved Insurance Settlement Agreements, (e) the pursuit of confirmation of the Plan, or (f) consummation of the Plan or administration of the Plan or the property to be distributed under the Plan or the Liquidating Trust , so long as, in each case, such act or omission did not constitute willful misconduct or gross negligence as determined by a Final Order. In all respects, the Exculpated Parties shall be entitled to rely on the advice of counsel and financial and other experts or professionals employed by them with respect to their duties and responsibilities in the Chapter 11 Case, and such reliance shall conclusively establish the absence of willful misconduct and gross negligence. In addition, any act or omission taken with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute willful misconduct or gross negligence.*

**9.2** Insurance Policy Injunction. *In accordance with sections 105(a) and 363(f) of the Bankruptcy Code, and to give further effect to the Approved Insurance Settlement Agreements, the Confirmation Order shall provide the following Insurance*

*Policy Injunction to take effect on the occurrence of the Effective Date: all Persons who hold or assert, or may in the future hold or assert, any Claim against the Debtor arising out of or in connection with the activities covered by the Settled Insurance Policies, or in connection with the Debtor's activities giving rise to Claims made or to be made under the Settled Insurance Policies, or any other Person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Settled Insurance Policies, shall be and hereby are permanently stayed, restrained, and enjoined from asserting any claim or right to entitlement, or taking any other action against the Protected Parties, for the purpose of obtaining any recovery or other relief from the Protected Parties or under or in connection with the Settled Insurance Policies.*

**9.3**    <u>Release of Directors, Officers, and Members.</u> The acceptance of any Distribution by a holder of a Claim, and, with respect to Insurance or Other Unsecured Claims, the acceptance of payment from the Liquidating Trust by the Pennsylvania Department of Environmental Protection, any future Remediation Claims, the holder of an Actual Property or Other Unsecured Claim, shall constitute a waiver and release of any and all causes of action that such holder did commence or could have commenced against any current or former officer, director, or Member of the Debtor, that is based upon, is attributable to, or arises from any acts or omissions of such officer, director, or Member (while serving in such capacity) that occurred prior to the Effective Date, to the fullest extent permitted under applicable law (as now in effect or subsequently extended), except for willful misconduct or gross negligence as determined by a Final Order.

**9.4**    <u>Release of Avoidance Actions.</u> Effective on the occurrence of the Effective

Date, the Debtor hereby fully, finally, and forever releases, relinquishes, and discharges each and every Avoidance Action and other Claim and Cause of action that it holds against any other Entity solely as a result of its status as a debtor-in-possession; provided, however, that nothing herein shall be deemed to release rights against an Insurance Company, the Litigation Insurance Rights, or rights against third parties that have arisen in the ordinary course of business.

**9.5**    <u>Terms of Injunction and Automatic Stay.</u> All of the injunctions and/or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Insurance Policy Injunction set forth in Section 9.2 becomes effective, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms. The Insurance Policy Injunction shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order. All actions of the type or nature of those to be enjoined by the Insurance Policy Injunction shall be enjoined during the period between the Confirmation Date and the Effective Date. Additionally, on and after the Confirmation Date, the Debtor may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

**9.6**    <u>No Discharge.</u> For the avoidance of doubt, the Plan does not result in the Debtor receiving a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

## ARTICLE 10 - CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**10.1**   Conditions to the Confirmation Date. The Confirmation Date shall not occur unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 10.4:

(a)   the Confirmation Order has been entered by the Bankruptcy Court and shall be acceptable in form and substance to the Debtor;

(b)   the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

1.   the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

2.   the Liquidating Trust to be established pursuant to the Plan is a valid legal Entity separate and distinct from the Debtor, and each of the Debtor and the Liquidating Trust are not and may not in the future be held liable for any liability of the other entities based upon any legal or equitable theory, including those consisting of or relating to veil piercing, alter ego, successor liability, fraudulent transfer, or conspiracy, including but not limited to fraudulent transfer or fraudulent conveyance claims under applicable state or federal law;

3.   the Liquidating Trust is to be funded by the Liquidating Trust Assets;

4.     the assignment by the Debtor to the Liquidating Trust of the Insurance Rights is valid and binding in accordance with the provisions of section 1123(a)(5) of the Bankruptcy Code;

5.     the Liquidating Trust will have the sole and exclusive authority as of the Effective Date to resolve all Litigation Claims;

6.     the Liquidating Trust is to use its assets and income to pay Litigation Claims that are eligible for payment under the Liquidating Trust Distribution Procedures and Liquidating Trust Expenses;

7.     the terms of the Insurance Policy Injunction, including any provisions barring actions against third parties, are set forth in the Plan and the Disclosure Statement;

8.     the Insurance Policy Injunction is essential to the Plan;

9.     the Insurance Policy Injunction is to be implemented in accordance with the Plan;

10.     in light of the benefits provided, or to be provided, to the Liquidating Trust by or on behalf of each Protected Party, the Insurance Policy Injunction is fair and equitable to all creditors and holders of Litigation Claims;

11.     the rights, duties, obligations, and liabilities of any Non-Settling Insurance Company under the Insurance Policy are not enlarged, diminished, reduced, or eliminated by any aspect of this Chapter 11 Case, except as may be limited by the Insurance Policy Injunction, the Confirmation Order, and any Final Order approving an Insurance Settlement Agreement;

12.     each Protected Party is entitled to the protection of the Insurance Policy Injunction;

13.     the exculpation provided in Section 10.1, and the release provided in Section 10.3, are in each case essential to the settlement of Litigation Claims as reflected in the Plan; and

14.     the Plan and its acceptance otherwise comply with section 1126 of the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors.

(c)     The Confirmation Order shall, among other things:

1.     provide for the Insurance Policy Injunction;

2.     provide that the Liquidating Trust Assets shall be contributed or transferred to the Liquidating Trust;

3.     provide that all transfers of assets of the Debtor contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

4.     authorize the implementation of the Plan in accordance with its terms and provide that, on the Effective Date, all of the transactions listed in Section 8.1 shall occur as set forth therein;

5.     provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar tax;

6.      approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan, including, without limitation, the Liquidating Trust Agreement, the Liquidating Trust Distribution Procedures, and the other Liquidating Trust Documents;

7.      provide that all Executory Contracts and Unexpired Leases not previously assumed or subject to a pending motion to assume have been rejected pursuant to section 365 of the Bankruptcy Code;

8.      ratify all releases provided in each Approved Insurance Settlement Agreement and all releases each approved settlement agreement with a Protected Party;

9.      incorporate by reference all previously issued orders approving an Insurance Settlement Agreement and provide that nothing in the Plan or the Confirmation Order is intended to modify or limit such orders;

10.     provide that the Debtor is authorized and directed to file any and all documents, and to take any other actions that may be necessary and appropriate to cancel its corporate existence within thirty (30) days after it has paid or otherwise satisfied all Trust Claims and completed its transfer of all Liquidating Trust Assets to the Litigating Trust, each in accordance with the Plan; and

11.     provide that, if the Debtor's corporate existence has been cancelled prior to filing a motion for Final Decree, the Liquidating Trust is authorized to move for the Final Decree and to take all actions that are

necessary and appropriate to secure entry of the Final Decree and close this Chapter 11 Case.

**10.2** <u>Litigation Necessary or Possible to Consummate Plan</u>. The following is litigation necessary or contemplated, with all rights reserved, to consummate the Plan:

(a)    The approval of the Debtor's Preliminary Motion, or otherwise any other and additional Motions to Approve Settlement Pursuant to Bankruptcy Rule 9019, Motion to Sell Assets, and or Motion to Assume Contracts;

(b)    Any action under section 105 of the Bankruptcy Code to obtain and or enforce the negotiated channeling injunctions;

(c)    Any other Chapter 5 action necessary to effectuate the Plan;

(d)    Any objection to any claim(s); and

(e)    Any actions to enforce the Plan.

**10.3** <u>Conditions to the Effective Date.</u> The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 10.4:

(a)    the Confirmation Order, containing the Insurance Policy Injunction, shall have been entered by the Bankruptcy Court and become a Final Order;

(b)    the Debtor shall have obtained a legal opinion satisfactory in form and substance to the Debtor that the Internal Revenue Service will recognize the Liquidating Trust as a "designated settlement fund" or a "qualified settlement fund" under section 468B of the Internal Revenue Code and any related regulations;

(c)    the Liquidating Trust Agreement shall have been executed, and the Liquidating Trust shall have been established; and

(d)     the Liquidating Trust shall have been funded in accordance with Section 8.1(b).

**10.4** <u>Waiver of Conditions Precedent.</u> To the fullest extent permitted by law, but subject to any Approved Insurance Settlement Agreement, the conditions to the Confirmation Date set forth in Section 11.1 and the conditions to the Effective Date set forth in Section 11.2 may be waived or modified in whole or in part at any time in writing by the Debtor, without leave from or an order of the Bankruptcy Court.

**10.5** <u>Effect of Non-Occurrence of Effective Date.</u> If each of the conditions to the Effective Date is not satisfied in accordance with Section 10.1 or duly waived in accordance with Section 10.4, then upon notification to the Bankruptcy Court by the Debtor, after consultation with the Committee, and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court. If the Confirmation Order is vacated pursuant to this Section 10.4, (a) the Plan shall be null and void in all respects; (b) the Debtor and all parties in interest shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (ii) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

## **ARTICLE 11 – RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Case including, among other things, jurisdiction

to:

(a)     allow, disallow, determine, liquidate, classify, reclassify, estimate, or establish the priority, secured, or unsecured status (or proper Plan classification) of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance, priority, or classification of Claims or Interests;

(b)     hear and determine any motion, adversary proceeding, application, contested matter, and other litigation matter pending on or commenced after the Confirmation Date or that, pursuant to the Plan, may be instituted by the Liquidating Trust after the Confirmation Date, including any proceedings with respect to any Avoidance Actions (except to the extent that any such Avoidance Actions have been waived or released under the Plan or the Confirmation Order) or otherwise to recover all assets of the Debtor and property of the Estate, wherever located;

(c)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents, including the Liquidating Trust Agreement, entered into or delivered in connection with the Plan or the Confirmation Order, including compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(d)     resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is entered into or

delivered pursuant to the Plan, including the Liquidating Trust Agreement, or any Entity's

rights arising from or obligations incurred in connection with the Plan or such documents;

(e)      resolve any matters related to the assumption, assumption and

assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor

is a party or with respect to which the Debtor may be liable and to hear, determine, and, if

necessary, liquidate any Claims arising therefrom;

(f)      hear and determine all applications under sections 330, 331, and

503(b) of the Bankruptcy Code for awards of compensation for services rendered and

reimbursement of expenses incurred before the Effective Date;

(g)      hear and determine any proposed compromise and settlement of any

Claim against or cause of action by or against the Debtor that has been or properly should

have been brought in the Bankruptcy Court;

(h)      hear and determine matters concerning state, local, and federal taxes

in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any

requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(i)      hear and determine any proceeding that involves the validity,

application, construction, enforceability, or modification of the Insurance Policy Injunction;

(j)      enter such orders as are necessary to implement and enforce the

Insurance Policy Injunction;

(k)      hear and determine any conflict or other issues that may arise in the

administration of the Liquidating Trust and all objections to the termination of the

Liquidating Trust;

(l)    hear and determine such other matters as may be set forth in or arise in connection with or relate to the Plan, the Confirmation Order, other orders of the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(m)    hear and determine motions to approve an Insurance Settlement Agreement;

(n)    hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(o)    issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(p)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or Distributions pursuant to the Plan are enjoined or stayed;

(q)    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(r)      adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(s)      enforce remedies upon any default under the Plan;

(t)      hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(u)      enter a Final Decree closing the Chapter 11 Case.

## ARTICLE 12 – MISCELLANEOUS PROVISIONS

**12.1**   <u>Modification of Plan.</u> The Debtor may alter, amend, or modify this Plan, or any other Plan Document, under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code or the Court has approved such modification. After the Confirmation Date, the Debtor may alter, amend, or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code but only before its substantial consummation.

On and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents, other than the Plan, will be as provided in such Plan Documents.

**12.2**   <u>Revocation or Withdrawal of the Plan.</u> The Debtor reserves the right to revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void in all respects; any settlement or compromise embodied in the Plan, including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, any assumption or rejection of an Executory Contract or Unexpired Lease effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan, and no acts taken in preparation

for consummation of the Plan, shall: (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor; or (c) constitute an admission of any sort by the Debtor or any other Entity.

**12.3**   <u>Compromise of Controversies.</u>   From and after the Effective Date, the Debtor shall be authorized to compromise controversies not involving the Liquidating Trust or Trust Claims in its sole discretion on such terms as the Debtor may determine to be appropriate.

**12.4**   <u>Payment of Statutory Fees.</u> All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor. Following the Effective Date, the Liquidating Trust shall be responsible for quarterly fees owed to the U.S. Trustee in connection with this Chapter 11 Case. Quarterly fees owed to the Office of the U.S. Trustee following the Effective Date shall be paid by the Liquidating Trust when due in accordance with applicable law, and the Liquidating Trust shall continue to file reports to show the calculation of such fees for the Estate until the Chapter 11 Case is closed under section 350 of the Bankruptcy Code.

**12.5**   <u>Prepayment.</u> Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; <u>provided</u>, <u>however</u>, that any such prepayment shall not violate or otherwise prejudice the relative priorities and parities among the Classes of Claims.

**12.6** <u>Exemption from Transfer Taxes.</u> Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a) of the Bankruptcy Code.

**12.7** <u>Effective Date Actions Simultaneous.</u> Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

**12.8** <u>Substantial Consummation.</u> On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.9** <u>Request for Expedited Determination of Taxes.</u> The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**12.10** <u>Reservation of Rights.</u> If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full. Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced

by any such concession or settlement. Moreover, if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or prejudiced by any representation, written or oral, made by any party in connection with the Plan or the negotiation or prosecution of the Plan, including, without limitation, the representations made in the Plan, the Disclosure Statement, or the Confirmation Order.

**12.11** Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws thereof.

**12.12** Computation of Time. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**12.13** Successors and Assigns. The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, estate, successor, or permitted assign, if any, of each Entity.

**12.14** Exhibits/Schedule. All exhibits and schedules to the Plan, the Plan Supplement, and the exhibits and schedules to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

**12.15** Entire Agreement. On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.16** <u>Severability.</u> If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

**12.17** <u>Inconsistencies.</u> To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern. To the extent of any inconsistencies between the terms and provisions of the Plan and the factual findings and conclusions of law in the Confirmation Order, the factual findings and conclusions of law contained in the Confirmation Order shall govern.

**12.18** <u>Notices.</u> All notices, requests, and demands to or upon the Debtor or the Committee, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, and addressed as follows:

        (a)      if to the Debtor:

                3625 Washington Pike
                Bridgeville, PA 15017

                with a copy to:

                Donald R. Calaiaro, Esquire

CALAIARO VALENCIK
938 Penn Avenue, Suite 501
Pittsburgh, PA  15222-3708

**12.19**  <u>Further Assurances.</u> The Debtor, the Protected Parties, the Liquidating Trust, all Entities receiving Distributions under this Plan, and all other parties in interest shall, and shall be authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred after the Effective Date in connection therewith.

**12.20**  <u>Further Authorizations.</u> Prior to the Effective Date, the Debtor may seek such orders, judgments, injunctions, and rulings that it deems necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, and any costs incurred in connection therewith shall be borne by the Estate. On and after the Effective Date, the Debtor and the Liquidating Trust may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, with each such Entity to bear its own costs in connection therewith.

**Respectfully Submitted,**

**DATE:**  May 21, 2020

**BY:** /s/ Donald R. Calaiaro
**Donald R. Calaiaro, Esquire,   PA ID #27538**
**dcalaiaro@c-vlaw.com**
**CALAIARO VALENCIK**
**938 Penn Avenue, Suite 501**
**Pittsburgh, PA  15222-3708**
**(412) 232-0930**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE:** | **)** **Bankruptcy No.**  20-21595-GLT |
| Majestic Hills, LLC, | **)** **Chapter** 11 |
| **Debtor.** | **)** **Document No.** |

**CERTIFICATE OF SERVICE OF**
**CHAPTER 11 LIQUIDATING PLAN DATED MAY 21, 2020**

       I certify under penalty of perjury that I served the above captioned pleading on the parties at the addresses specified below or on the attached list on May 21, 2020.

**SERVICE BY E-MAIL:**
Majestic Hills, LLC
**SERVICE BY NEF**:
Larry E. Wahlquist, on Behalf of the United States Trustee by on behalf of U.S. Trustee Office of the United States Trustee; larry.e.wahlquist@usdoj.gov

The type(s) of service made on the parties (first-class mail, electronic notification, hand delivery, or another type of service) was: Electronic Notification.

       If more than one method of service was employed, this certificate of service groups the parties by the type of service. For example, the names and addresses of parties served by electronic notice will be listed under the heading "Service by Electronic Notification," and those served by mail will be listed under the heading "Service by First-Class Mail."

**EXECUTED ON:** May 21, 2020      /s/ Donald R. Calaiaro
                        **Donald R. Calaiaro, Esquire, PA I.D. #27538**
                        **dcalaiaro@c-vlaw.com**

                        **CALAIARO VALENCIK**
                        **938 Penn Avenue, Suite 501**
                        **Pittsburgh, PA  15222-3708**
                        **(412) 232-0930**