## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| MAJESTIC HILLS, LLC, | : | Case No.: 20-21595-GLT |
| Debtor. | : | Related Document No. 10 |
| _____ | : | |
| MAJESTIC HILLS, LLC, | : | |
| Movant, | : | |
| | : | |
| vs. | : | |
| NVR, INC. AND NORTH STRABANE TOWNSHIP, | : | |
| Respondents. | : | |

**JOINT OBJECTION OF NVR, INC. AND NORTH STRABANE TOWNSHIP
TO DEBTOR'S MOTION FOR AN ORDER (I) APPROVING THE ASSUMPTION
OF THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTOR
AND MUTUAL BENEFIT INSURANCE COMPANY, (II) APPROVING THE SALE OF
CERTAIN INSURANCE POLICIES, AND (III) ISSUING AN INJUNCTION PURSUANT
TO THE SALE OF CERTAIN INSURANCE POLICIES, ECF No. 10**

## INTRODUCTION

1.     In the Motion of the Debtor Majestic Hills, LLC ("Debtor" or "Majestic"), ECF No. 10, Debtor seeks the assumption of its pre-petition settlement agreement (the "Settlement Agreement" or "Proposed Settlement") that it reached with Mutual Benefit Insurance Company ("Mutual Benefit" or "Insurance Company") without the involvement or participation of NVR, Inc. d/b/a Ryan Homes ("NVR") or North Strabane Township (the "Township," and together with NVR, collectively the "Creditors").

2.     This Settlement Agreement cannot be approved by this Court since it eliminates and extinguishes Creditors' rights to pursue claims against non-debtors and seek recovery on those

claims from Mutual Benefit's insurance policies at issue in this matter (collectively, the "Policies"). Additionally, this Court should not approve the Settlement Agreement because it was contrived pre-petition by a non-operating Debtor, the Insurance Company, and its principals for the sole purpose of limiting the liability and exposure of the Insurance Company and other non-Debtors to the utter detriment of Creditors.

## BACKGROUND

**A.    THE MAJESTIC HILLS LANDSLIDES**.

3.    Pursuant to that certain Lot Purchase Agreement  ("LPA") entered into by and between NVR and Debtor on December 23, 2004, NVR contracted with Debtor to develop and sell to NVR certain residential building lots (the "Property") located in the Township.  The LPA required, inter alia, that the Lots meet certain specifications, including but not limited to precise specifications to make the lots within the Property buildable. The LPA further required that Debtor comply with all development requirements of the Township.

4.    In connection with Debtor's application for a grading permit, the Township required Debtor to provide the certification of a registered engineer that all Township specifications had been met.

5.    At all relevant times, Debtor was and is a single-purpose Pennsylvania limited liability company created solely for the purpose of the LPA.  At all relevant times, Debtor was under the control of JND Properties, LLC ("JND"), the DeNardos and Parkridge Development, LLC (the "Non-Debtor Control Group").  Debtor was and is nothing more than a legal fiction utilized on an ad hoc basis to shield the Non-Debtor Control Group from responsibility for their actions, exactly as is being attempted through this bankruptcy.  In that regard, it was JND, not the

Debtor, that entered into an agreement with the engineering firm Pennsylvania Soil & Rock ("PS&R") in order to meet the Debtor's obligations to the Township and under the LPA.

6.      To that end, on April 12, 2005, PS&R issued a letter to JND (the "PS&R Letter") which specifically stated the work which needed to be done in order to meet all Township requirements for the development of the Property, including but not limited to the stabilization of a large slope behind certain residential lots along Majestic Hills drive (the "Slope").[1]  Both NVR and the Township relied upon the PS&R Letter.  Indeed, the Township expressly conditioned the issuance of its grading permit for Phase 1 of the Property on Debtor's compliance with all recommendations set forth in the PS&R Letter, including with respect to the Slope.[2]

7.      NVR relied upon Debtor's supposed compliance with the PS&R Letter in connection with Debtor's  certification that the lots were "buildable."  NVR also entered into a separate agreement with PS&R, under which PS&R reviewed certain lots listed in the PS&R Letter, and in 2006 began to purchase and build single family homes for its customers on lots within the Property, including but not limited to a number of lots located above the Slope. The Township likewise issued building and occupancy permits for the homes built by NVR in reliance upon Debtor's and JND's supposed compliance with the PS&R Letter.

8.      Unbeknownst to both NVR and the Township, Joe DeNardo advised PS&R not to comply with the requirements set forth the PS&R Letter for the Slope stabilization to save money. PS&R never advised NVR or the Township of Debtor's and the Non-Debtor Control Group's deliberate non-compliance with the PS&R Letter.

9.      In June 2018, the Slope experienced catastrophic earth movement that threatened adjacent homes and roads.  Although the residences withstood the earth movement, the Township

---

[1] A copy of the PS&R Letter is attached as Exhibit 1.
[2] A copy of the Township's grading permit is attached as Exhibit 2.

was forced to condemn and demolish three homes in order to avoid a public catastrophe and to eliminate the risks to people and property presented by the Slope's potential continued movement. The earth movement dramatically expanded in September and October 2018, leading to a fourth family evacuating their residence.  One of only two roads into the community collapsed as a result of the earth movement.  The only other means of ingress and egress for the Property had previously been closed for months after debris from prior earth movement covered that road, for which Debtor and the Non-Debtor Control Group were responsible. Two homes in the development located elsewhere on the Property also allegedly incurred damage as the result of slope movement.

10.    Debtor's, JND's and the DeNardos' deliberate non-compliance with the PS&R Letter and the deliberate concealment of same caused the Slope instability and failure.

11.    As the result of the conduct of Debtor and the Non-Debtor Control Group, homes were destroyed, their owners displaced, and a community was threatened.  The Township has had to expend millions of dollars to address the infrastructure that was damaged by the earth movement.  NVR has also incurred damages in excess of $1.75 million dollars.

**B.    PENDING DISTRICT COURT AND STATE LITIGATION**.

12.    Multiple parties have filed claims against one another arising out the conduct of the Debtor as directed by the Non-Debtor Control Group and the resulting millions of dollars in damages.  NVR sued the Debtor, JND, the DeNardos, PS&R, engineer Mark Brashear, and Alton Industries, Inc. in the United States District Court for the Western District of Pennsylvania, case styled *NVR, Inc. d/b/a Ryan Homes v. Majestic Hills, LLC*, civil action number 2:18-cv-1335 (the "District Court Litigation").

13.    The Township has claims pending against the Debtor, JND, the DeNardos, PS&R, Mr. Brashear, Alton, and engineering company Morris Knowles & Associates, Inc., in the Court

of Common Pleas of Washington County.  The Township and the Township's Municipal Authority have incurred the cost of repairing the hillside, the roads, and utilities within the Property—spending millions of dollars in taxpayer money (the "State Court Litigation").

14.     The affected homeowners have commenced separate actions which have been consolidated under the caption *Douglas E. Grimes v. Majestic Hills, LLC*, case number 2018-5757 in the Court of Common Pleas of Washington County (the "Homeowners' Litigation").  The homeowners seek to recover damages from the Debtor, JND, the DeNardos, PS&R, Mr. Brashear, Alton, Strnisha, Morris Knowles, and NVR.  The aggregate claims appear to be in the $1.5 million range, exclusive of claims for punitive or treble damages.

**C.     PENDING COVERAGE LITIGATION**.

15.     Mutual Benefit initiated coverage litigation in the Court of Common Pleas of Huntingdon County, case styled *Mutual Benefit Insurance Company v. Majestic Hills, LLC, et al.,* case number 2019-9348, seeking a ruling that it does not have a duty to indemnify the Debtor, JND, and the DeNardos under insurance policies issued to them from 2005-2019 (the "Coverage Litigation").  Mutual Benefit brought Westfield Insurance Company ("Westfield") into the Coverage Litigation.  Mutual Benefit's policy information for the 2017-2018 policy period indicates that Mutual Benefit provided primary coverage of $1 million and umbrella coverage of $1 million per occurrence.  Westfield's primary policy provides primary coverage of $1 million per occurrence and one excess policy providing coverage of $5 million per occurrence, for a total of $6 million in coverage for one policy year.  NVR is a party to the Coverage Litigation.

16.     Creditors and the homeowners have claims against the Debtor, JND, and the DeNardos for which the Policies provide coverage.

**D.      MAJESTIC HILLS CHAPTER 11 FILING**.

17.      On May 21, 2020, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The bankruptcy filing was made by an attorney hired and paid by Mutual Benefit and appears to be a pre-packaged bankruptcy filing by a non-operating Debtor to limit and extinguish the liability for Mutual Benefit, Westfield, the Non-Debtor Control Group, and certain other non-debtor parties.

18.      In its Petition, Debtor has indicated that it has no assets other than potential claims, causes of action, and insurance policies.  Debtor has had no revenue for the last two years, and does not operate as a going concern.  There is nothing to reorganize, and Debtor has indicated in the Motion that this Chapter 11 case will result in the termination of Debtor.  With regard to claims that Debtor may have against third-parties, Debtor has indicated that all of these claims are contingent, unliquidated, and disputed.  Debtor has identified approximately 200 claimants in its bankruptcy proceeding; all identified claims appear to relate to the Property.

**E.      THE SETTLEMENT AGREEMENT**.

19.      Creditors only became aware of the negotiated Proposed Settlement through the filing of the Motion.  This is despite the fact that NVR is a party in the Coverage Litigation.  Given all of the pending litigation, to intentionally exclude the largest creditors from the settlement negotiation process demonstrates that the process was not conducted in good faith.  Rather, the goal of the settlement process appears to be to deprive the true parties in interest of a meaningful opportunity to participate.

20.      Specifically, Debtor, the Insurance Company, and the Non-Debtor Control Group now seek to avoid any meaningful input by the claimants as to the proprietary of the Proposed Settlement by endeavoring to have the Proposed Settlement approved pursuant to section 365 of

the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure at the outset

of this case, rather than subjecting this to a vote by Debtor's creditors in the context of a plan of

reorganization.

21.    In addition to Debtor and the Insurance Company, the parties to the Settlement

Agreement include the Non-Debtor Control Group, Ashwood Commons, LLC, and Ashwood

Land Partners, L.P. (collectively, the "Other Insureds") as additional insureds.[3]

22.    As the Proposed Settlement indicates,[4] Debtor and the Insurance Company intend

to place the approval of this Proposed Settlement on a fast-track at the beginning of this case before

a creditors' committee may be appointed or the creditors can organize.  In particular, the Motion

seeks to have this Court: (i) approve the assumption of the Settlement Agreement under

section 365 of the Bankruptcy Code; (ii) sell the Policies back to the Insurance Company; and

(iii) enjoin Creditors from proceeding against the Insurance Company or the Other Insureds.

23.    The Settlement Agreement is between the Insurance Company, Debtor, and the

Other Insureds (none of which is bankrupt and all of which have assets) for the receipt of $1 million

from Mutual Benefit.  The settlement represents a fraction of the policy limits, and it is a fraction

of the more than $7.25 million in damages sought by all of the claimants—all of which have claims

against the Other Insureds with assets and insurance coverage that could compensate these

Creditors for 100% of their claims.

24.    Upon the payments being made under the Settlement Agreement, Debtor indicates

in its Motion that the Insurance Company is to obtain a release from all claims that could be

---

[3] Upon information and belief, Ashwood Commons, LLC, and Ashwood Land Partners, L.P are affiliates of the DeNardos that operate other commercial property unaffiliated with the Property.

[4] The terms of the Proposed Settlement required that Debtor file its motion to approve the Proposed Settlement within fifteen (15) business days of commencing its bankruptcy case.

brought under the Policies, including the claims that could be brought by Creditors based upon the

liability of Debtor and the Other Insureds (the "Third-Party Release"):

a)  Majestic, on behalf of itself and the Estate, and JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, and Ashwood Land Partners, L.L.P., hereby fully, finally, and completely remises, releases, acquits, and forever discharges Mutual Benefit from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected with respect to, relating to, or in any way arising out of the Policies, Mutual Benefit having issued the Policies or having insured Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), or Shari DeNardo including bad faith, unfair or improper claims handling or settlement practices, conspiracy, fraud, violation of any covenant of good faith and fair dealing, violation of any law, regulation, code, or statute, or other any other conduct whether based in contract, tort, or otherwise. … *nor shall Mutual Benefit have any other duty or obligation whatsoever to any other Person with respect to any and all Claims arising out of, in connection with, and relating to the Policies, Mutual Benefit having issued the Policies or having insured Majestic, JND, Parkridge, Joseph N. DeNardo, Shari DeNardo, Ashwood Commons, LLC or Ashwood Land Partners, L.L.P.*

(b) Mutual Benefit hereby fully, finally, and completely remises, releases, acquits and forever discharges Majestic, JND, and Parkridge their members, officers, and/or representatives (in their respective capacities as such), Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo, Ashwood Commons, LLC, Ashwood Land Partners, L.L.P., and the Estate, from any and all Claims whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, suspected or unsuspected with respect to, relating to, or in any way arising out of the Policies.

25.    In addition to the Third-Party Release, Debtor states in its Motion that the

Settlement Agreement contains the following injunction:

To prevent clams that directly or indirectly arise from, are based upon, are attributable to, or derive from the Policies being purchased by Mutual Benefit, the Mutual Benefit Settlement Agreement is conditioned upon the Court entering an order pursuant to section 105(a) of the Bankruptcy Code permanently staying, [restraining], and *enjoining all persons who hold or assert, or may in the future hold or assert, any claim against the Debtor arising out of or in connection with the activities covered by the Policies, or in connection with the Debtor's activities giving rise to claims made or*

*to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies,* from asserting any claim or right to entitlement or taking any other action against Mutual Benefit and its predecessors, successors, subsidiaries affiliates, directors, officers, and representatives, for the purpose of obtaining any recovery or other relief from such protected entities or under or in connection with the Policies.

26.     Although not articulated in the Motion, the language in the Settlement Agreement further clarifies the proposed injunction by specifically stating that, upon approval of the Motion by this Court, any party would be prohibited from proceeding against the Other Insureds or the Insurance Company (the "Injunction"):[5]

> [P]ursuant to Sections 105(a) and 363(f) of the Bankruptcy Code to become effective upon the Approval Date *permanently enjoining the prosecution, continuation or commencement of any interest that any Person holds or asserts or may in the future hold or assert against Majestic, JND, Parkridge, Joseph N. DeNardo (individually and doing business as JND Properties), Shari DeNardo or Mutual Benefit,* and the assertion of any Claim or right to entitlement or taking any other action against Mutual Benefit for the purpose of obtaining any recovery or other relief from Mutual Benefit or under or in connection with the Policies, arising out of or in connection with the activities covered by the Policies, or in connection with Majestic's activities giving rise to claims made or to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies.

## ARGUMENT

27.     The Settlement Agreement should not be approved by this Court.  First, Debtor has failed to meet its high procedural and evidentiary burden in seeking such an overbroad, improper Injunction.  Second, the Proposed Settlement contains a Third-Party Release that can only be raised in the context of a Chapter 11 plan, not through the motion process.  Third, the Proposed Settlement cannot meet the standard under Bankruptcy Rule 9019.  Fourth, the Settlement Agreement is not an executory contract and therefore cannot be assumed by this Court.  However, even if the

---

[5] This Injunction does not include all of the Other Insureds (i.e., Ashwood Commons, LLC, and Ashwood Land Partners, L.P.).

Settlement Agreement is deemed to be an executory contract, it is not in the best interest of the bankruptcy estate to assume it.  Finally, the Policies cannot be sold by Debtor under section 363 of the Bankruptcy Code.  Hence, this Court should deny the Motion.

## A.   DEBTOR HAS FAILED TO MEET ITS PROCEDURAL AND EVIDENTIARY BURDEN IN ORDER TO OBTAIN THE INJUNCTION.

28.     Debtor has failed to meet both its procedural and evidentiary burden in order to obtain injunctive relief under section 105(a) of the Bankruptcy Code.  In its Motion, Debtor seeks the Injunction in order to enjoin all persons who may hold claims against Debtor or the Other Insureds from making claims against Mutual Benefit under the Policies.  Further, the language of the Injunction in the Settlement Agreement provides that Creditors would be precluded from proceeding with any claims against the Other Insureds irrespective of whether the Creditors would ultimately seek recovery under the Policies.

29.     Bankruptcy Rule 7001 requires that an adversary proceeding be commenced in order to "obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief."  Bankruptcy Rule 7065 provides that Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings.  Rule 65 provides that a movant has the burden of demonstrating to the Court the following in order to obtain injunctive relief: substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest. *In re Wedgewood Realty Group, Ltd*., 878 F.2d  693, 700-01 (3d Cir. 1989).

30.     As set forth herein, Debtor seeks to obtain the Injunction outside of the Chapter 11 plan process without filing an adversary proceeding as required under Bankruptcy Rule 7001(7).  Due to Debtor's failure to commence an adversary proceeding, this Court should not consider the Motion.  Furthermore, Debtor utterly fails to argue, let alone meet, the evidentiary standard

required under Bankruptcy Rule 7065, Local Bankruptcy Rule 7065-1, and Federal Rule of Civil Procedure 65 to support such a drastic, overbroad remedy against Creditors. Debtor seeks an injunction prohibiting Creditors from proceeding against the Policies based on claims that they have against Debtor and the Other Insureds. Debtor is attempting to completely eliminate Creditors' rights to proceed against parties that have not even sought bankruptcy protection.

31. Additionally, Debtor has included various case authority in the asbestos litigation context as support for the Injunction.[6] A majority of these cases concerned insurance policy injunctions in the context of plan confirmation. *See generally, In re Geo. V. Hamilton, Inc.,* No. 15-23704 (GLT), Doc. No. 1831 (Bankr. W.D. Pa. Feb. 27, 2018); *In re Global Inds. Technologies, Inc.,* No. 02-21626 (JKF), Doc. No. 9444 (Bankr. W.D. Pa. Sept. 24, 2007); *In re Pittsburgh Corning Corp,* No. 00-22876 (JKF), Doc. No. 7711 (Bankr. W.D. Pa. May 15, 2013). Further, those cases prohibited injured parties of Debtor from pursuing claims against the insurance company based upon ***the creditors' claims against the debtor, not non-debtors***. *Id.; In re Oakfabco, Inc.,* No. 15-27062 (JBS), Doc. No. 764 (Bankr. N.D. Ill. Dec. 18, 2018).

32. The Injunction goes much further here. It prohibits Creditors from being able to pursue claims against the Insurance Company based upon claims that they have against Debtor and the Other Insureds, who are not in bankruptcy and have available assets to satisfy Creditors' claims. Further, the overbroad language of the Injunction in the Settlement Agreement would prohibit Creditors from pursuing the Other Insureds for liability whether or not they ultimately sought recovery under the Policies. This Injunction vastly overreaches and goes much further than any legal authority provided by Debtor. As such, this Court should deny the Motion.

---

[6] Unlike the asbestos cases, the scope of liability and claimants are known to Debtor.

## B.     THE SETTLEMENT AGREEMENT CONTAINS AN IMPERMISSIBLE THIRD-PARTY RELEASE.

33.     The Settlement Agreement contains an impermissible Third-Party Release.  Here, the Third-Party Release is effectively an additional injunction, as it releases the Insurance Company and bars the Creditors from seeking recovery under the Policies for liability of both Debtor and the Other Insureds.  Non-consensual releases by a non-debtor of other non-debtor third parties are to be granted by a bankruptcy court only in extraordinary circumstances.  *Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000).  The Third Circuit has indicated that such releases can only be considered where the release "is both necessary [to the plan of confirmation] and given in exchange for fair consideration."  *Id.* at 214; *In re Lower Bucks Hosp.,* 571 F. App'x 139, 144 (3d Cir. 2014).  In *Opt-Out Lenders v. Millennium Lab Holdings II, LLC (In re Millennium Lab Holdings II, LLC),* 2016 U.S. Dist. LEXIS 45653 (3d Cir. 2016), the Third Circuit further confirmed that such release must have the "[t]he hallmarks of … fairness, necessity to the reorganization, specific factual findings to support these conclusions."  *See also, In re Spansion, Inc.,* 426 B.R. 114, 144 (Bankr. D. Del. 2010) (describing an element as "whether the non-consenting creditors received reasonable compensation in exchange for the release").

34.     As an initial matter, the Third-Party Release is outside of the Chapter 11 plan context and therefore there is no evidence that it is necessary to a successful reorganization.

35.     Furthermore, Debtor's creditors do not support the Third-Party Release.  By this Objection, the two largest creditors of Debtor oppose the release of their claims against the Insurance Company.  Creditors have not received an exchange of adequate consideration, nor is the Third Party Release otherwise fair to the Creditors for the Insurance Company to obtain such a release against them.  Rather, it is clearly evident that Creditors are not receiving any reasonable

compensation in exchange for the Third-Party Release. As such, the Settlement Agreement should not be approved by this Court.

## C.    THE COURT DOES NOT HAVE JURISDICTION TO IMPAIR OR EXTINGUISH CREDITORS' RIGHTS TO PURSUE RECOVERY UNDER THE POLICIES DUE TO LIABILITY OF THE OTHER INSUREDS.

36.    The rights of Creditors to pursue coverage under the Policies due to the liability of the Other Insureds are wholly independent of Debtor's liability under the Policies. This Court does not have jurisdiction or authority to "impair or extinguish" those independent rights. *See In re SportStuff, Inc.*, 430 B.R. 170, 178 (B.A.P. 8th Cir. 2010) (*citing S. Gummow, Bankruptcy and Ins. Law Manual*, p. 166 (ABI 2nd Ed. 2007) (citations and quotations omitted); *In re Forty–Eight Insulations, Inc.*, 133 B.R. 973 (Bankr. N.D. Ill. 1991) (recognizing limitation on bankruptcy court's powers to impair a non-debtor's rights under an insurance policy); *In re PettersCo., Inc.*, 2009 WL 3316881 (Bankr. D. Minn. Aug. 31, 2009).

37.    Creditors have asserted claims against the Other Insureds. If Creditors are successful in their claims against the Other Insureds, they can proceed against the Policies. Debtor's bankruptcy estate does not include: (i) the Other Insured's separate and independent rights and interests as additional insureds under the Policies or (ii) Creditors' rights to pursue recovery under those Policies for the liability of the Other Insureds. *See generally, Waldman v. Stone*, 698 F.3d 910, 918 (B.A.P. 6th Cir. 2012). Therefore, the Third-Party Release and Injunction, which eliminate Creditors' rights to pursue both the Other Insureds and the Policies, are outside of the jurisdiction of this Court and impermissible under the law. Therefore, the Motion should be denied by this Court.

## D.    THE SETTLEMENT AGREEMENT SHOULD NOT BE APPROVED UNDER BANKRUPTCY RULE 9019.

38.    Rule 9019 of the Federal Rules of Bankruptcy Procedure authorizes the court, on motion, and after notice and a hearing, to approve a compromise or settlement.  Fed. R. Bankr. P. 9019.  While settlements are favored in the bankruptcy court, the unique nature of the bankruptcy process requires that judges must carefully examine proposed settlements before approving them. *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).  Ultimately, the court must determine whether the settlement falls within the lowest range of reasonableness.  *See In re G-1 Holdings Inc.*, 420 B.R. 216, 256 (D.N.J. 2009).

39.    To approve a settlement pursuant to Bankruptcy Rule 9019, the Court must balance: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.  *In re WebSci Technologies, Inc.*, 234 Fed. Appx. 26, 29 (3d Cir. 2007) (*quoting In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

40.    In addition, the court must determine whether the proposed settlement is fair and equitable, and in the best interests of the estate.  *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L.Ed.2d 1 (1968); *St. Paul Fire & Marine Ins. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985). "Under the 'fair and equitable' standard, the court looks to the fairness of the settlement to other persons, i.e., the parties who did not settle." *Nutraquest*, 434 F.3d at 645.  The burden is on the proponent to establish that the settlement may be approved.  *See In re Grand Prix Associates Inc.*, No. 09-16545, 2009 Bankr. LEXIS 1779, 2009 WL 1850966, *5 (Bankr. D.N.J. June 26, 2009).

41.    The Proposed Settlement falls woefully short of this standard.  The Proposed Settlement tramples and extinguishes the Creditors' rights to pursue recovery against the Other

Insureds, Mutual Benefit and Westfield, all of whom are non-debtors.  *See, e.g.*, *In re Covington Prop., Inc.*, 255 B.R. 77, 79 (N.D. Fla. 2000) (settlement not fair and equitable, despite increasing liquidity of the bankruptcy estate, because it would curtail creditor's claims against non-debtors).

42.      Creditors, whose claims likely comprise 80% of the total claims in this case, adamantly oppose the Proposed Settlement.  Thus, the Proposed Settlement cannot, by definition, be "in the best interest of the estate as a whole" when the two largest creditors did not get to even participate in the settlement process.[7]  While the Debtor indicates that it cannot afford to litigate the Coverage Litigation, Debtor could simply assign its rights in the Policies over to the Creditors.  *Gray v. Nationwide Mutual Insurance Company,* 422 Pa. 500, 223 A.2d 8 (1996).   This is especially true given that these parties were all litigants in the Coverage Litigation.   This Court should not disregard these objecting Creditors, and the failure of Debtor to bring this Motion in the context of a Chapter 11 plan of confirmation (especially when the full extent of the conditions, circumstances and implications of the Proposed Settlement have not been published to parties in interest as part of any disclosure statement).  *In re Levitt & Sons, Ltd. Liab. Co.,* 475 B.R. 266, 269-70 (Bankr. S.D. Fla. 2012) (holding that the settlement should be brought within the context of a plan so that all creditors would have the right to accept or opt out of the contemplated third-party release and injunction).

43.      Debtor does not operate a business, and has not for at least the last two years.  Debtor has no assets other than conditional, unliquidated claims.  Rather, Debtor has agreed to do the bidding of the Insurance Company and the Other Insureds in an attempt to enable them to obtain a windfall without involving the true parties in interest in the Policies.  This is further

---

[7] A "settlement" between only two parties to a multi-party matter is not a true settlement, and "the procedure to approve a compromise under Fed. R. Bankr. P. 9019(a) cannot be used to impose an injunction on the non-settling parties." *See, e.g., In re Sportstuff*, 430 B.R. at 181.

evidenced by the fact that in the Settlement Agreement, the Insurance Company has dictated a

time frame for Debtor to file its bankruptcy case, a time frame to file the Motion, and the manner

in which Debtor must respond if a party should appeal the order approving the Proposed

Settlement.  This Court should not condone such conduct by Debtor and should deny the Motion.

**E.      THE SETTLEMENT AGREEMENT IS NOT AN EXECUTORY CONTRACT, AND EVEN IF WERE, IT IS NOT IN THE BEST INTEREST OF THE ESTATE TO ASSUME IT.**

44.     The Settlement Agreement is not an executory contract subject to assumption or

rejection under section 365(a) of the Bankruptcy Code.  While not defined in the Bankruptcy Code,

the relevant legislative history indicates that executory contracts "generally include contracts on

which performance remains due to some extent on both sides."  H.R. REP. no. 95-595, at 347

(1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6303-04; S. REP. No. 95-989, at 58 (1978),

*reprinted in* 1978 U.S.C.C.A.N. 5787, 5844; a*ccord Sharon Steel Corp. v. Nat'l Fuel Gas Distrib.

Corp.,* 872 F.2d 36, 39 n.4 (3d Cir. 1989).

45.     An executory contract is "a contract under which the obligation of both the bankrupt

and the other party to the contract are so far underperformed that the failure of either to complete

performance would constitute a material breach excusing the performance of the other."  *In re

Exide Techs.,* 607 F.3d 957, 962 (3d Cir. 2010); *Enters. Energy Corp. v. U.S. (In re Columbia Gas

Sys., Inc.),* 50 F.3d 233, 239 (3d Cir. 1995).  The time for determining whether an agreement is

executory is the bankruptcy petition date.  *Columbia Gas Sys., Inc.,* 50 F.3d 233 at 240.

46.     In *Columbia Gas Systems*, the Third Circuit found that an executory contract in

"bankruptcy is best recognized as a combination of assets and liabilities to the estate; the

performance the non-bankrupt owes to the debtor constitutes an asset, and the performance the

debtor owes the non-bankrupt is a liability."  *Id*.  The Third Circuit then concluded that simply

having the right to collect money under an agreement is not sufficient to rise to the level of performance in analyzing whether the agreement is executory. *Id*. at 243; *In re Supermedia, Inc*., 2013 Bankr. LEXIS 4240, 2013 WL 5567838, at *3 (Bankr. D. Del. Oct. 9, 2013) *Kaye v. A R E Distribution & Alpine Records, LLC (In re Value Music Concepts, Inc.)*, 329 B.R. 111 (Bankr. N.D. Ga. 2005); *In re Structurlite Plastics Corp*., 86 B.R. 922, 926 (Bankr. S.D. Ohio 1988).

47.     If a contract is executory, the business judgment standard is the applicable standard for determining if such a contract should be assumed or rejected. *See In re Tilco, Inc.*, 558 F.2d 1369, 1372 (10th Cir. 1977); *In re C.W. Min. Co.*, 2010 WL 841395 at fn. 28 (Bankr. D. Utah 2010); *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 518 (1984). The role of the bankruptcy court in the assumption/rejection process is as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the debtor. *In re Central Jersey Airport Services, Inc*., 282 B.R. 176, 183 (D.N.J. 2002).

48.     Here, the Settlement Agreement is not an executory contract that can be assumed by this Court. The only performance remaining on the side of the Insurance Company is the payment of the settlement funds upon approval of the Motion. It is the payment of the settlement funds that entitle the Insurance Company to the Third-Party Release and Injunction. This is not sufficient for such Settlement Agreement to be deemed to be an executory contract under section 365 of the Bankruptcy Code.

49.     However, even if the Court were to find that the Settlement Agreement is an executory contract, assumption of this contract would not benefit the estate. As set forth herein, Debtor attempts to resolve all of its claims under the Policies with the Insurance Company for a minimal amount of money in comparison to the amount of the existing coverage. The claims at issue likely entail multiple years of coverage and occurrences under the Policies. Therefore, the

Insurance Company's exposure is likely much more than set forth in the Motion.[8]  While the Insurance Company has disputed that coverage exists, Debtor has failed to meet its burden in articulating with any specificity the strength of these arguments or the total amount of potential recovery against the Insurance Company that is being compromised by the Settlement Agreement.[9]

50.     Furthermore, the Debtor's decision to assume the Settlement Agreement as an executory contract derives from an attempt by Debtor to obtain the impermissible Third-Party Release and Injunction.  Debtor's self-dealing desire to obtain protection for the Other Insureds is the sole reason for this Motion and bankruptcy case.  This is evidenced by the fact that Debtor does not operate as a going concern and consequently has no assets to protect.  Debtor's liabilities and assets are all contingent, unliquidated, and disputed.  There is no conceivable reason as to why Debtor would file this Chapter 11 bankruptcy proceeding except to try and obtain the Third-Party Release and Injunction.  Under these circumstances, it does not benefit the estate of the Debtor for the Settlement Agreement to be assumed by this Court.

## F.   THE POLICIES CANNOT BE SOLD UNDER SECTION 363(B) AND (F) OF THE BANKRUPTCY CODE.

51.     The Policies cannot be sold back to the Insurance Company under section 363 of the Bankruptcy Code.  Debtor argues that the Policies may be sold free and clear of all liens, encumbrances, and other interests of any entity pursuant to sections 363(f)(2), (f)(4) or (f)(5) of the Bankruptcy Code.  However, there is no evidence that the Policies or the proposed settlement funds belong *solely* to the estate under section 541 of the Bankruptcy Code.

52.     A court should only approve a sale if it represents the sound business judgment of the debtor.  *In re G S Distrib.,* 331 B.R. 552, 559 (Bankr. S.D.N.Y. 2006).  A court must determine

---

[8] As a contested matter, Creditors will be seeking discovery from Debtor to further analyze the Proposed Settlement and the benefit of such settlement to the estate.

[9] Debtor has failed to attach a copy of the Policies that are contemplated to be compromised in the Motion.

that the Debtor is making a decision that is not based on self-interest or self-dealing, and that the decision to sell is made on an informed basis, in good faith, and in the honest belief that the sale is in the estate's best interest. *In re Shipman,* 344 B.R. 493, 495 (Bankr. N.D. W. Va. 2006). The business judgment rule is satisfied if: (1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith. *In re Decora Indus.,* 2002 U.S. Dist. LEXIS 27031 at *8 (D. Del. May 20, 2002).

53. Several courts have held that policies cannot be sold free and clear of the rights of third parties against the insurer. *In re Caesars Entertainment Operating Co., Inc.,* 533 B.R. 714, 734 (Bankr. N.D. Ill. 2015), *rev'd on other grounds,* 808 F.3d 1176 (7th Cir. 2015). Furthermore, in *In re SoyNut Butter Co.,* 2018 Bankr. LEXIS 2300 (Bankr. N.D. Ill. 2018), the Bankruptcy Court for the Northern District of Illinois held that a Chapter 7 Trustee could not utilize section 363 to expand debtor's rights beyond those allowed by the Bankruptcy Code to sell more than the debtor's contractual right to the policy proceeds. *Id.* at *11; *see also, In re Adelphia Communs., Corp.,* 364 B.R. 518, 527 (Bankr. S.D.N.Y. 2997); *In re Forty-Eight Insulations, Inc.,* 133 B.R. 937, 978 (Bankr. N.D. Ill. 1991).

54. In this case, the Policies contain multiple insureds in addition to Debtor. Creditors have asserted that they are beneficiaries of these Policies due to their claims against both Debtor and the Other Insureds. In particular, Creditors' claims against the Policies are independent of Debtor's interest in the Policies. Rather, Creditors' entitlement to the insurance proceeds under the Policies is based upon claims against both Debtor and the Other Insureds. Due to the broad injunctive language, the settlement funds are being paid not just to resolve liability under the Policies as it pertains to Debtor, but also as to the Other Insureds. This is an overreaching attempt that is outside of the jurisdiction of this Court.

55.     Moreover, the record is incomplete as to the integrity of the settlement negotiations that gave rise to the Proposed Settlement, and Creditors were specifically excluded from these discussions.  This is despite the fact that one of the Creditors is a party to the Coverage Litigation.  Given the lack of inclusion of Creditors in the settlement process and the overbroad Third-Party Release and Injunction, it is evident that the Proposed Settlement was not derived in good faith.

56.     While Debtor cannot satisfy section 363(b) for such a buyback to take place, it also cannot satisfy section 363(f).  With regard to section 363(f)(2), Creditors do not consent to the sale of the Policies.  Therefore, Debtor cannot sell the Policies under section 363(f)(2).  With regard to section 363(f)(4), Debtor argues that the interests of holders of any claims in the Policies are in *bona fide dispute*.  Creditors assert that there is no genuine issue of material fact as to liability or the application of law to undisputed facts.  With regard to section 363(f)(5), Debtor argues that the Creditors should be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.  Creditors assert that Debtor has not met its burden of proving that Creditors should be compelled to accept a money satisfaction in exchange for their interest.

57.     Consequently, the Policies cannot be sold free and clear under section 363(b) and (f) of the Bankruptcy Code.

## CONCLUSION

WHEREAS, NVR, Inc. and North Strabane Township respectfully request that their Objection be granted and that Debtor's Motion be denied.

Dated:  June 8, 2020                    Respectfully submitted,

                                        /s/ *Kathleen A. Gallagher*
                                        Kathleen A. Gallagher
                                        Pa. I.D. No. 39750
                                        Russell D. Giancola
                                        Pa. I.D. No. 200058
                                        **PORTER WRIGHT MORRIS &
                                        ARTHUR LLP**

6 PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500
kgallagher@porterwright.com
rgiancola@porterwright.com

Tami Hart Kirby
*Admitted pro hac vice, ECF. No. 33*
**PORTER WRIGHT MORRIS &
ARTHUR LLP**
One South Main Street, Suite 1600
Dayton, Ohio 45402
(937) 449-6721
tkirby@porterwright.com

*Counsel for NVR, Inc. d/b/a Ryan Homes
and North Strabane Township*