3584734.1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | **ELECTRONICALLY FILED** |
| ) | |
| MAJESTIC HILLS, LLC, ) | |
| ) | |
| Debtor. ) | Case No. 20-21595-GLT |
| ) | |
| -------------------------------------------------------- ) | |
| ) | Chapter 11 |
| MAJESTIC HILLS, LLC, ) | |
| Movant, ) | |
| ) | |
| vs. ) | Hearing Date: June 18, 2020 at 10:00 AM |
| ) | |
| MUTUAL BENEFIT INSURANCE ) | Related to Doc. No. 10 and 12 |
| COMPANY, ) | |
| Respondent ) | |
| vs. ) | |
| ) | |
| WESTFIELD INSURANCE COMPANY, ) | |
| Respondent ) | |
| ) | |

**OBJECTION OF DOUGLAS E. GRIMES AND SUZANNE M. GRIMES TO DEBTOR'S MOTIONS FOR AN ORDER (I) APPROVING THE ASSUMPTION OF THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN THE DEBTOR AND MUTUAL BENEFIT INSURANCE COMPANY AND WESTFIELD INSURANCE COMPANY, (II) APPROVING THE SALE OF CERTAIN INSURANCE POLICIES, AND (III) ISSUING AN INJUNCTION PURSUANT <u>TO THE SALE OF CERTAIN INSURANCE POLICIES</u>**

AND NOW COMES creditors and parties in interest Douglas E. Grimes and Suzanne M. Grimes (the "Grimes") by and through their attorneys, Meyer, Unkovic & Scott LLP, and files the within Objection to Debtor's Motions for an Order (I) Approving the Assumption of the Settlement Agreement and Release Between the Debtor and Mutual Benefit Insurance Company and Westfield Insurance Company, (II) Approving the Sale of Certain Insurance Policies, and (III) Issuing an Injunction Pursuant to The Sale Of Certain Insurance Policies [Docs No 10 and 12) (the "Settlement Motions"):

1. On May 21, 2020 (the "Petition Date"), the Debtor in the above-captioned matter filed with this Court a petition for relief under Chapter 11 of the United States Code (the "Bankruptcy Code").

2. The Grimes have a claim against the Debtor in the amount in excess of $50,000.00 as of the Petition Date, as more fully set forth in their Complaint filed in the Court of Common Pleas of Washington County, Pennsylvania captioned: Douglas E. Grimes and Suzanne M. Grimes v. Majestic Hill, LLC et. Al. at Case No. 2018-5757 (the "Civil Action").

## FACTUAL BACKGROUND

3. The Grimes are husband and wife and residents of Pennsylvania who own the residence and property at 2021 Majestic Drive, Canonsburg, Pennsylvania 15317 (the "Property").

4. The Debtor, Majestic Hills, LLC ("Majestic Hills"), a Pennsylvania limited liability company, with its principal place of business at 411 McMurray Road, Bethel Park, Pennsylvania 15102, is a special purpose entity created by Joseph N. DeNardo and/or JND Properties, LLC[1] in connection with the development and ownership of the Majestic Hills residential community.

5. Majestic Hills was the owner and developer of the Majestic Hills residential community located in North Strabane Township where the Property is located.

6. JND, also a named defendant in the Civil Action, was the developer of the Majestic Hills residential community located in North Strabane Township where the Property is located.

7. NVR, Inc. d/b/a Ryan Homes ("NVR"), a Virginia corporation with its principal place of business at 11700 Plaza America Drive, Suite 500, Reston, Virginia 20190, builds and sells

---

[1] JND Properties, LLC ("JND"), a Pennsylvania limited liability company, with its principal place of business at 3625 Washington Pike, Bridgeville, Pennsylvania 15017, is a special purpose entity created by Joseph N. DeNardo and/or Majestic Hills in connection with the development of the Majestic Hills residential community.

homes under the Ryan Homes, NVR Homes, and Heartland Homes brands was the builder of the Grimes' residence on the Property and is also a named Defendant in the Civil Action.

8. Gateway Engineers, Inc. ("Gateway") a Pennsylvania corporation, with its principal place of business at 100 McMorris Rd, Pittsburgh Pennsylvania 15205, was the engineering firm retained by the Township of North Strabane to investigate and approve of the engineering plans of the Majestic Hills community and is also a named Defendant in the Civil Action.

9. Pennsylvania Soil and Rock Incorporated ("PS&R"), a Pennsylvania corporation with its principal place of business located at 570 Beatty Road, Monroeville, Pennsylvania 15146, and Mark R. Brashear, a licensed civil engineer, provide geotechnical engineering and construction monitoring and testing and is also a named Defendant in the Civil Action.

10. Alton Industries, Inc. ("Alton"), a Pennsylvania corporation, with its principal place of business at 11 Carlton Drive, Eighty Four, Pennsylvania 15330, performed earthwork-related activities on the sidehill embankment adjacent to Lots 37, 38, and 39 of the Majestic Hills community and is also a named defendant in the Civil Action.

11. Majestic Hills Homeowner's Association, Inc. ("Majestic Hills HOA") is under the care of RJ Community Mgt., located at 20475 Route 19, #4, Cranberry Township, Pennsylvania 16066.

12. Majestic Hills, LLC; JND Properties, LLC; Joseph N. DeNardo, individually and t/b/a JND Properties, LLC; Shari DeNardo; NVR, Inc. t/d/b/a Ryan Homes; The Gateway Engineers, Inc.; The Township of North Strabane; Pennsylvania Soil and Rock Incorporated; Mark R. Brashear; Alton Industries, Inc.; and Majestic Hills Homeowner's Association, Inc. are the Defendants in the Civil Action (hereinafter collectively referred to herein as the "Developer Defendants").

13. On December 23, 2004, NVR and Majestic Hills entered into a Lot Purchase Agreement ("LPA") pursuant to which Majestic Hills agreed to develop and sell to NVR one hundred seventy-nine (179) developed single family lots (the "Lots") situated in North Strabane Township, Washington County, Pennsylvania (the "Community Property").

14. Pursuant to the LPA, Majestic Hills was required to complete certain Development Obligations as delineated in the LPA:

    a. to develop and improve the Lots into fully improved building lots in accordance with the development plans approved by the North Strabane Township and/or Washington County, Pennsylvania, the Development Standards contained in Exhibit "D-l" to the LPA, and other required governmental and quasi-governmental agencies;

    b. that all improvements will be of good quality, installed in good and workmanlike manner and suitable for their intended purposes;

    c. to grade the Lots pursuant to the grading plan approved by the North Strabane Township and/or Washington County, that is Exhibit "D-2" (the "Grading Plan") of the LPA; and

    d. that the main structure of each house, including attached/contiguous garages and detached garages, porches, patios and decks constructed by Purchaser, exclusive of outbuildings, shall be built on solid soil and not fill, provided the structure constructed by Purchaser has not less than eleven (11) course of block or a maximum basement depth of seven feet four inches (7'4").

15. All future homeowners of the Majestic Hills residential community, including the Grimes, were intended third-party beneficiaries of the LPA.

16. Majestic Hills breached the LPA by failing to comply with the Development Standards as set forth in the LPA with respect to Lots 37, 38, and 39, as well as the adjacent sidehill embankment as specified herein, and generally by failing to perform in a workmanlike manner in accordance with the standards of the industry.

17. Subsequent to the execution of the LPA and pursuant to its contractual obligations thereunder, Majestic Hills developed the Community Property, which included Lots 37, 38, and 39 in the Majestic Hills community.

18. Lots 37, 38, and 39 were designated as being "low-side lots" and required specific grading standards as defined under Exhibit "D-1" of the LPA.

19. As the developer, Majestic Hills was responsible for the earthwork on the Community Property. This included, inter alia, embankment and keyway excavation; placement of required underdrains and drain outlets; and placement, grading, compaction of fill, and compliance with all government requirements related to the same.

20. JND, acting by and through the DeNardos, having common ownership and control with Majestic Hills, engaged PS&R to provide geotechnical engineering as well as construction monitoring and field reporting services in connection with the development of the Community Property.

21. PS&R and Brashear provided earthwork monitoring for DeNardo and/or JND for the development of the Community Property.

22. PS&R and Brashear's earthwork monitoring reports stated that the contractor had generally performed the earthwork-related construction activities in general compliance with accepted construction practices.

23. In 2005, PS&R reviewed and published geotechnical-related maps and literature relative to the geology, past mining activities, and soils present at the Community Property. It summarized its review and observations relative to the geotechnical conditions of the Property in a Preliminary Review submitted to JND on April 12, 2005.

24. During development of the Community Property, Majestic Hills and JND installed a sidehill embankment on Lots 37, 38, and 39.

25. The sidehill embankment was planned to be approximately 18 to 20 feet thick near the top of the slope, and the toe (bottom) of the sidehill embankment was to be constructed along the southern edge of Forest Lane Drive, a road bordering the rear of Lots 37, 38, and 39.

26. Alton was an agent, employee, or subcontractor of Majestic Hills and performed earthwork-related activities on the sidehill embankment adjacent to Lots 37, 38, and 39 of the Majestic Hills Site, including excavating a keyway, placing underdrains and drain outlets, placing and compacting fill, and grading.

27. PS&R provided earthwork monitoring to JND related to Alton's work on the sidehill embankment.

28. According to PS&R's reports concerning the sidehill embankment, Alton installed an initial 430-foot keyway underdrain of perforated 4-inch diameter drainage pipe atop "nonwoven geotextile fabric" and encased the pipe in "2B limestone."

29. In addition, according to PS&R's reports concerning the sidehill embankment, Alton installed a second 500-foot long section of perforated 4-inch diameter drainage pipe encased in "2B limestone" for "further stability and groundwater infiltration."

30. Alton placed embankment fill in 10- to 12-inch thick loose lifts and compacted that fill.

31. PS&R's earthwork monitoring reports stated that Alton had performed the earthwork-related construction activities in general compliance with accepted construction practices.

32. NVR built the planned community in phases and not all at once.

33. In 2006, Majestic Hills conveyed to NVR the finished building pads for Lots 37, 38, and

34. At the time of NVR's acquisition of Lots 37, 38, and 39, Majestic Hills and PS&R certified to NVR that Lots 37, 38, and 39 were buildable.

35. Thereafter, NVR began construction of detached single family dwellings on Lots 37, 38, and 39.

36. Each of these dwellings was built upon the sidehill embankment previously installed by Majestic Hills, JND, and Alton.

37. The construction of the residence on Lot 38 was completed on or about October 25, 2006.

38. Lots 37, 38 and 39, and the homes built thereon, were sold to NVR's third-party customers.

39. Lot 39 is now identified as 2019 Majestic Drive, Canonsburg, Pennsylvania; Lot 38 is now identified as 2021 Majestic Drive, Canonsburg, Pennsylvania (the Property at issue in this Complaint); and Lot 37 is now identified as 1024 Oakwood Drive, Canonsburg, Pennsylvania.

40. The natural landscape of the hillside where the development was planned, engineered, and constructed contained slopes with "(landslide soils) and/or perched water tables."

41. Accordingly, the Developer Defendants were all aware that it was essential that the proposed fill embankments not trap any water that is presently finding an outlet to the surface.

42. The slopes should have been stable if the fill is properly benched, drained and compacted.

43. Moreover, all of the Developer Defendants were aware that there was a "potential for high water tables throughout the site.

44. The Developer Defendants knew or should have known of these conditions when constructing and developing the planned community and the homes among the hillside.

45. Despite this knowledge, the Developer Defendants failed to include a subsurface material or other remedy to allow water to appropriately dissipate.

46. In addition, Developer Defendants failed to advise as to the proper material to place within the fill behind the homes among the hillside, despite acknowledgement of the water conditions and potential for landslides.

47. Further, the Developer Defendants failed to install sufficient drainage throughout the development.

48. As a result, the development is frequently over-saturated with water.

49. In the construction and sale of the properties and homes along the hillside, the Developer Defendants failed to properly disclose and/or misled those who purchased their homes that the hillside was stable and/or any issues were appropriately rectified.

50. The combination of the Developer Defendants' failure to install the correct fill behind each home, the failure to install proper drainage, and other negligence resulted in, and continues to cause, the landslide at issue.

51. Subsequent to the completion of the construction of the homes on Lots 37, 38, and 39 and their sale, two small landslides occurred at the sidehill embankment.

52. Approximately within the past three years, Majestic Hills and/or JND attempted to repair the sidehill embankment. Such repairs included, but were not limited to, further excavation of the subject embankment and installation of additional drainage pipe and a drainage pipe outlet without a permit, without approved engineering design plans, and without sediment controls.

53. On or about September 23, 2015, the Grimes purchased from the McCombs the Property, also known as Lot No. 38.

54. Sometime in mid to late June 2018, a catastrophic land movement occurred resulting in an active landslide adjacent to and directly affecting Lots 37, Lot 38, and Lot 39.

55. The back yards of those homes slid onto Forest Lane Drive.

56. This landslide created an imminently dangerous situation threatening lives and property.

57. The Grimes were required to vacate their home.

58. The Grimes vacated their home and ceased residing there as of June 2018.

59. On August 29, 2018, the homes constructed on Lots 37, 38, and 39 were condemned by North Strabane Township as they were deemed to be uninhabitable and dangerous as a direct result of the landslide.

60. After the landslide, a geotechnical investigation was conducted by Michael Baker International and determined that the homes were unsafe for occupancy, resulting in their being condemned.

61. The Township announced its plan to demolish the homes sometime prior to the end of October, 2018, and on or about October 5, 2018, two of the three homes were demolished, which included the Grimes'.

62. As a result of these acts and omissions of the Developer Defendants as set forth above, as well as the Developer Defendants' failure to remedy or cure the defects, the Grimes have incurred considerable expense in order to prevent and mitigate the consequences of the potential catastrophe of the active landslide.

63. The hillside continues to move and has caused and will continue to cause costs and damages to the Grimes as their Property is rendered valueless.

64. A number of the claims against Majestic Hills are breach of contract and personal-injury claims arising out of or related to the Landslide (the "Civil Claims") including the claims of the Grimes. A number of the claimants in the Civil Claims have filed lawsuits against Majestic Hills including the Civil Action filed by the Grimes prior to the Petition Date (the "Civil Claimants").

65. The Civil Claims are potentially covered under a number of insurance policies issued to Majestic Hills.

66. The policies, with varying policy periods were purchased by Majestic Hills from at least two different insurers including Mutual Benefit and Westfield Insurance.

67. On May 21, 2020, the same date the Bankruptcy Petition was filed, Majestic Hills filed the Settlement Motions, seeking the Bankruptcy Court's approval of two settlement agreements at Docket No. 10 and 12 (collectively, the "Proposed Settlement"), albeit styled as motions to approve the assumption of the settlement agreement.

68. Despite the pendency of the Civil Action and other lawsuits by the other Civil Claimants neither the Grimes nor any of the other Civil Claimants were aware of or permitted to participate in the negotiation of the proposed settlement agreements (the "Proposed Settlement Agreements").

69. The Proposed Settlement Agreements were intended to form the basis of the Chapter 11 plan, which is was also filed on the Petition Date which is intended to (among other things) provide for a resolution of all of the Civil Claims.

70. Neither the Grimes nor any other Civil Claimant was invited to participate in the negotiation of the Proposed Settlement Agreements or provided any information about the Proposed Settlement Agreements other than the generic summary provided in the Settlement Motions.

71. At this time, the Grimes: (1) have not been provided any information regarding the Proposed Settlement Agreements other than the summary set forth in the Settlement Motions; (2) are unable to evaluate the Proposed Settlement Agreements based upon the limited information provided to date; and (3) object to the Settlement Motions and the Proposed Settlement Agreements to the extent that the Proposed Settlement Agreements, or the proposed Chapter 11 plan it calls for, in any way seek to alter the rights of the Grimes for claims against the insurance policies, or the rights, duties, obligations, or privileges thereunder.

**Standard for Approval of Settlement**

72. Pursuant to Bankruptcy Rule 9019(a), approval of a settlement agreement is within the sound discretion of the Court. See, *Connecticut General Life Insurance Company v. United Companies Fin. Corp.* (*In re Foster Mort. Corp.*), 68 F.3d 914, 917 (5th Cir. 1995); *LaSalle National Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, 162 (7th Cir. 1987); *In re Neshaminy Office Building Associates*, 62 B.R. 798, 803 (E.D. Pa. 1986).

73. The standard for approval of a compromise is whether the proposed settlement is "fair and equitable" and "in the best interest of the estate." *Protective Comm. For Independent Stockholders of TNT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1986).

74. In considering the fairness, reasonableness and adequacy of a settlement, courts in the Third Circuit have considered the following factors:

   a. The probability of success in the litigation;

   b. The difficulties to be encountered in collecting;

   c. The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

   d. The paramount interest of the creditors.

*Official Unsecured Creditors Committee of Pennsylvania Truck Lines, Inc. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390 (Bankr. E.D. Pa. 1987). The settlement should fall "within the reasonable range of litigation possibilities." *In re Penn Central Transportation Company*, 596 F.2d 1102, 1114 (3d Cir. 1979) (citations omitted).

75. In the present case, the Debtor has failed to provide sufficient information for creditors or other parties in interest to evaluate whether the Proposed Settlement Agreements meet the requisite standards for approval.

76. Accordingly, the Grimes respectfully request that this Honorable Court deny the Settlement Motions until the Grimes and other creditors and parties in interest have been provided with sufficient information to evaluate the Proposed Settlement Agreements.

                Respectfully submitted,

                MEYER, UNKOVIC & SCOTT LLP

Dated: June 8, 2020            By:   */s/ Gary M. Sanderson*
                                                      Robert E. Dauer, Jr., Esquire
                                                      Pa. ID # 61699
                                                      Jason M. Yarbrough, Esquire
                                                      Pa. ID #93160
                                                      Gary M. Sanderson, Esquire
                                                      Pa. ID # 313591
                                                      535 Smithfield Street, Suite 1300
                                                      Pittsburgh, Pennsylvania 15222-2315
                                                      TEL:  (412) 456-2800
                                                      FAX:  (412) 456-2864
                                                      E-Mail:  red@muslaw.com
                                                                      jmy@muslaw.com
                                                                      gms@muslaw.com

                                                    Attorneys for: Douglas E. Grimes and Suzanne M. Grimes