# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>Majestic Hills, LLC,<br>    Debtor.<br><br>Majestic Hills, LLC,<br>    Movant,<br>    v.<br>Mutual Benefit Insurance Company,<br>    Respondent.<br><br>Majestic Hills, LLC,<br>    Movant,<br>    v.<br>Westfield Insurance Company,<br>    Respondent. | **Case No.** 20-21595-GLT<br><br>**Chapter 11**<br><br>**Hearing Date:** 06/18/20 @ 10:00 a.m.<br><br>**Response Due:** 06/08/20<br><br>**Related to Document Nos. 10 and 12** |

## OBJECTIONS OF MORRIS KNOWLES & ASSOCIATES, INC. TO DEBTOR'S MOTIONS FOR ENTRY OF ORDERS APPROVING SETTLEMENT AGREEMENTS AND JOINDER IN THE UNITED STATES TRUSTEE'S RESPONSE

AND NOW, comes, Morris Knowles & Associates, Inc. ("**Morris Knowles**"), a named creditor in this bankruptcy proceeding, and files its objections to the Debtor, Majestic Hills, LLC's Motions to Approve Settlement Agreements with Mutual Benefit Insurance Company and Westfield Insurance Company, and also joins in the United States Trustee's Response, and in support thereof, states as follows:

**Introduction & Joinder in the United States Trustee's Response to Motions to Approve Settlement Agreements**

As an introductory matter, Morris Knowles joins in the United States Trustee's Response to the Debtors' Motions to Approve Settlement Agreements (the "**Trustee's Response**") (ECF Docs. 57 and 58). The Trustee's Response indicates that it is currently in the process of appointing a creditors' committee with a formation meeting scheduled for June 17, 2020. Morris

Knowles intends to join the creditors' committee and would like the opportunity to be heard on the Debtor's Motions for Entry of Orders Approving Settlement Agreements (collectively the "**Motions**") (ECF Docs. 10 and 12). Therefore, the hearing on the Motions and the deadline to file a response should be extended to give the creditors' committee the opportunity to review and respond collectively. Further, the Trustee's Response indicates the Debtor's counsel has consented to a 45-day extension of the deadline to file a response to the Motions. Morris Knowles joins the Trustee in this request and respectfully asks the Court to postpone the deadline to respond and the hearing on the Motions in order to allow a creditors' committee to collectively respond.

If the Court is not inclined to grant the Trustee's request, then Morris Knowles files these Objections to the Motions. The purpose of the Motions filed by Debtor Majestic Hills, LLC (the "**Debtor**") seeking approval of its proposed settlements with insurance carriers Mutual Benefit Insurance Company and Westfield Insurance Company is clear. The Debtor is seeking to "settle" millions of dollars in potential liability for a mere fraction of the limits of its insurance policies, which would have the effect of shifting millions of dollars of potential damages to other parties such as Morris Knowles, which is identified as a creditor in these proceedings. The proposed settlements are insufficient given the damages being asserted in the multiple lawsuits underlying this bankruptcy and the policy limits of the insurance policies in question. The proposed settlements would also result in prejudice both to the homeowners affected by the landslides and to the other defendants sued by those homeowners. This Honorable Court should deny the Motions and reject the proposed settlements.

**I.  Factual Background.**

In 2004, the Debtor was contracted by NVR, Inc. d/b/a Ryan Homes ("**Ryan Homes**") to develop the land for 179 single-family lots in the Majestic Hills residential community in North Strabane Township, Washington County, Pennsylvania. Under the agreement with Ryan Homes, the Debtor graded and developed the earthwork for each lot and then sold the lots to Ryan Homes, which constructed residences on the lots.

In June 2018, land movement occurred resulting in a landslide adjacent to and directly affecting Lots 37, Lot 38, and Lot 39 of the Majestic Hills community. The landslide created a situation that eventually resulted in the condemnation and demolition of the homes on Lots 37, 38, and 39 by North Strabane Township. Earth movement on Lot 102 resulted in land conditions, which were remedied by North Strabane Township after the Debtor failed and/or refused to effect remediation. Further, Lot 530 of the Majestic Hills community suffered significant settling and foundation damage due to the use of improper fill.

By 2019, the Debtor was the subject of no less than seven lawsuits related to the Majestic Hills development brought by Ryan Homes, North Strabane Township, and the homeowners who either lost their homes entirely or suffered damage to their homes. Morris Knowles is an engineering firm that was retained to provide civil engineering services on the Majestic Hills project, and Morris Knowles is a party to all seven lawsuits to date. In two of the suits, Morris Knowles is a direct defendant who has been sued by the plaintiffs. In the other five suits, Morris Knowles was joined as a third-party defendant by the Debtor, who asserted claims for contribution and/or indemnification.

The damages being sought from the Debtor are significant. The suit brought by Ryan Homes against the Debtor does not specify a precise damages number, but upon information and

belief, it will likely be seeking damages in excess of $1 million. The suit brought by North Strabane Township asserts that the Township has incurred and will incur costs and expenses in excess of $4 million. The suits brought by the landowners seek the full cost of the destroyed homes; just one of those suits seeks damages in excess of $300,000, but some of the plaintiffs may be seeking damages in excess of $500,000 with the inclusion of all costs expended to date. Further, the Debtor's bankruptcy petition (ECF Doc. 1), indicates that the Debtor's only assets are its claims for indemnification and contribution against other parties. (ECF Doc. 1, pp. 10–14.) The petition states that the Debtor is seeking $6 million in indemnification or contribution from each of Mark Brashear, Ryan Homes, PA Soil and Rock, and The Gateway Engineers and is seeking $1 million in indemnification or contribution from each of Alton Industries, Morris Knowles, Mutual Benefit Insurance Company, North Strabane Township, and Strnisha Excavation. (ECF Doc. 1, pp. 10–14.) Thus, the Debtor's own bankruptcy petition indicates that the Debtor itself considers the damages in play to be in excess of $6 million.

The Debtor held primary and umbrella insurance policies from two companies: Mutual Benefit Insurance Company ("**Mutual Benefit**") and Westfield Insurance Company ("**Westfield**") (Copies of the Mutual Benefit declaration sheets and reservation of rights letter are attached as **Exhibit A**, and copies of the Westfield reservation of rights letters are attached as **Exhibit B**). The Debtor's Motions seek approval of settlement with each of those companies. Under the proposed settlement with Mutual Benefit, it will pay $1 million to buy back the Commercial General Liability and umbrella policies issued to the Debtor in exchange for a general release of all claims. Mutual Benefit will also dismiss its declaratory judgment action in the Huntington County Court of Common Pleas where a summary judgment motion pertaining to its duty to provide coverage is pending. Under the proposed settlement with Westfield, it will pay

$400,000 to buy back the Commercial General Liability and umbrella policies issued to the Debtor in exchange for a general release of all claims. The combined settlement amount from Mutual Benefit and Westfield is therefore $1.4 million.

Notably, the Debtor's Motions do not actually detail the limits of those policies with Mutual Benefit and Westfield. The Debtor has a Commercial General Liability policy with Mutual Benefit with policy limits of $1 million per occurrence and $2 million in the aggregate and an umbrella policy with policy limits of $1 million per occurrence and $1 million in the aggregate, for a total of $3 million. The Debtor has a Commercial General Liability policy with Westfield with policy limits of $1 million per occurrence and $2 million in the aggregate and an umbrella policy with policy limits of $5 million in the aggregate, for a total of $7 million. The Debtor thus proposes to settle with Mutual Benefit for an amount ($1 million) representing 33% of the combined aggregate limits of Mutual Benefit's two policies, and the Debtor proposes to settle with Westfield for an amount ($400,000) representing 6% of the combined aggregate limits of Westfield's two policies. The total amount of the proposed settlements ($1.4 million) represents only 14% of the combined aggregate limit ($10 million) of all four policies.

**II. Standard of Review.**

Under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, the Court may approve a compromise or settlement upon a motion by the trustee and a hearing on the same. Fed.R.Bankr.P. 9019(a); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D.Del. 2005). A court may approve a settlement pursuant to Rule 9019 upon making a determination that it is "fair and equitable" and in the best interest of creditors and the estate. *In re Biolitec, Inc.*, 528 B.R. 261, 266 (Bankr. D.N.J. 2014).

The determination whether to approve the settlement lies within the court's sound discretion, and in evaluating whether a proposed settlement is in the best interest of creditors and the estate, courts look to the following four factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). The inquiry also requires a determination that the settlement agreement is "fair and equitable" and that "no one has been set apart for unfair treatment." *In re Butko*, 584 B.R. 97, 108 (Bankr. W.D.Pa. 2018). Even if proposed settlement is fair and equitable to the parties to the settlement, approval by bankruptcy court is not appropriate if the rights or interests of others who are not parties to settlement will be unduly prejudiced. *In re BG Petroleum, LLC*, 525 B.R. 260, 273 (Bankr. W.D.Pa. 2015).

It is the movant's or proponent's burden to show that a proposed settlement is in the best interests of the estate and the debtor. *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016). Moreover, the "proponent of the settlement has the burden of proving its reasonableness and courts must take into consideration the fairness of the settlement to the other persons, i.e., the parties who did not settle." *Id.* (quoting *Biolitec*, 528 B.R. at 267); *see also Key3Media*, 336 B.R. at 93 ("The Debtors carry a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities … [and] have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved.").

The Debtor's Motions cite *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) for the proposition that "Once a debtor articulates a valid business justification for the assumption of its agreements, then a strong presumption

follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction." (ECF Doc. 10, p. 7). But *Filene's Basement* dealt with the discretion of the debtor to assume a lease. The case did not hold that parties opposing an insurance settlement hold the burden of rebutting any presumption in regard to the fairness of a settlement. The case is therefore distinguishable.

Likewise, *In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986), which is also cited by the Debtor's Motions, did not involve the approval of a settlement under Rule 9019. And neither of those cases involved a bankruptcy court in the Third Circuit. While decisions in the Third Circuit have said that courts should refrain from second-guessing business decisions, they have also consistently held that the Debtor or Trustee bears the burden of demonstrating the fairness of a proposed settlement, and it is for the Court to evaluate whether the proposed settlement is within the range of reasonableness. *See*, *e.g.*, *In re Still*, 444 B.R. 520, 523 (Bankr. E.D.Pa. 2010) ("[W]hen considering the relevant factors the court should avoid second-guessing the Trustee in the exercise of his or her business judgment, but rather should endeavor to ascertain whether the terms of the Trustee's proposed settlement fall below the lowest range of reasonableness."); *Key3Media*, 336 B.R. at 93 ("While a court generally gives deference to a Debtors' business judgment in deciding whether to settle a matter, the Debtors have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved.); *In re Covenant Partners, L.P.*, 555 B.R. 490, 493 (Bankr. E.D.Pa. 2016) ("When considering the relevant factors courts are admonished to avoid second-guessing the Trustee in the exercise of his or her business judgment, and instead endeavor to ascertain whether the terms of the proposed settlement fall below the lowest range of reasonableness. As the proponent of a settlement, the Trustee bears the burden of proof."). None of this precedent from courts in this

circuit say that objectors to a proposed settlement hold any burden of rebuttal. Rather, it remains the burden of the proponent of the settlement to persuade the bankruptcy court that the compromise is fair and equitable and falls with the range of reasonableness.

**III. Argument.**

The Motions should be denied, and the proposed settlements rejected, because the Debtor fails to demonstrate that a settlement representing only 14% of the combined aggregate limit of all four policies is fair and reasonable, particularly to other parties.

First, as demonstrated by the Debtor's own bankruptcy petition, the damages being sought by the plaintiffs in the suits underlying the Debtor's bankruptcy are in excess of $6 million. Indeed, the Debtor has valued its claims for indemnification/contribution from each of Mark Brashear, Ryan Homes, PA Soil and Rock, and The Gateway Engineers at no less than $6 million each, which indicates that the Debtor itself estimates the amount of damages at *no less* than $6 million. But even though the Debtor has potentially $10 million in aggregate insurance coverage, it is seeking to settle for only 14% of the aggregate amount of potential insurance. The result will be a massive shift of liability and damages from the party primarily responsible for the land grading at the Majestic Hills—the Debtor—to other parties. For example, the combined amount of the proposed settlements represents only 35% of the $4 million in damages being sought by North Strabane Township alone. The Debtor and its insurers are seeking to minimize their own financial liability and shift the expense of remediation costs not only to other parties, but also to the damaged homeowners. The proposed settlements are manifestly unfair to the parties who are not settling.

Second, the Motions each assert that the Debtor has "determined" that the amount of the respective settlements is an "an equitable settlement payment given the potential litigation

outcomes." But as explained by the *Key3Media* case, the Debtor carries the burden of providing the court with "sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities." *See Key3Media*, 336 B.R. at 93. The Motions provide no information or analysis on how the Debtor reached that determination or what the "range of reasonableness" would be for a settlement given the policy limits and the amount of potential damages. Instead, the Motions merely make the bald conclusion that the settlements are reasonable. The Debtor has failed to offer sufficient information for this Court to determine whether the settlements are reasonable.

Third, one of the *Martin* factors is "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it." *Martin*, 91 F.3d at 393. In that regard, the Debtor merely asserts that the settlements will allow the Debtor to provide proceeds to the estate "without requiring the Debtor to incur expenses to litigate the existing insurance coverage disputes." (ECF Doc. 10, p. 7; ECF. Doc. 12, p. 7.) But it is clear that "the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." *McMillan v. State Mut. Life Assur. Co.*, 922 F.2d 1073, 1074 (3d Cir.1990). As a pure question of law, whether insurance coverage is available would be a question capable of resolution at summary judgment, and indeed the Debtor states that summary judgment has already been filed in regard to the question of coverage for the Mutual Benefit policies. (ECF. Doc. 10, p. 10.) The expenses of litigating the coverage questions would be minimal, and that factor also advises against approval of the settlements.

Finally, the Debtor has failed to satisfy the requirement for a channeling injunction because it has failed to demonstrate that such an injunction is necessary to its reorganization. In order to obtain a channeling injunction, the Third Circuit has held that a Debtor has the burden of

demonstrating that such an injunction "is both necessary to the reorganization and fair." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 206 (3d Cir. 2011); *see also Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir.2000) (holding that a third-party injunction would only be proper under § 105(a) if the proponents of the injunction demonstrated with specificity that such an injunction was both necessary to the reorganization and fair). The Third Circuit has further explained that courts considering nonconsensual third-party releases/injunctions should "do so with caution" and that courts have an "obligation to approach the inclusion of nonconsensual third-party releases or injunctions in a plan of reorganization with the utmost care and to thoroughly explain the justification for any such inclusion." *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126, 139 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings*, 19-1152, 2020 WL 2621797 (U.S. May 26, 2020). Consequently there must be "specific factual findings" to support the conclusion that a channeling injunction is both fair and necessary to the debtor's reorganization. *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000).

Here, the Motions assert that a channeling injunction is necessary "to carry out and enforce the 'free and clear' nature of the sale" of the insurance policies." (ECF Doc. 10, p. 15; ECF. Doc. 12, p. 15.) But nothing in the Motions explains how that injunction is necessary to the Debtor's reorganization. Neither do the Motions explain how the proposed injunction would be fair when Mutual Benefit and Westfield are paying an amount that represents only 14% of the combined aggregate limit of all four insurance policies. The Debtor has failed to satisfy the requirements for a channeling injunction.

**IV. Conclusion.**

The proposed settlements are insufficient in light of the damages being asserted and the policy limits of the insurance policies in question. Moreover, the proposed settlements would result in prejudice both to the homeowners affected by the landslides and to the other defendants sued by those homeowners. Not only has the Debtor failed to provide information to demonstrate that the settlements are within the range of reasonableness, the Debtor has also failed to show that litigation for the insurance policies would be complex or expensive. And, the Debtor has failed to demonstrate that an injunction against third parties is both fair and necessary. Therefore, this Court should deny the Motions and reject the proposed settlements.

Respectfully submitted,

Date: June 8, 2020	/s/ Samuel H. Simon
Samuel H. Simon
PA ID No. 85503
ssimon@hh-law.com
Catherine S. Loeffler
PA ID No. 311667
loefflercs@hh-law.com
Houston Harbaugh, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
*Attorneys for Creditor, Morris Knowles & Associates, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>Majestic Hills, LLC,<br>   Debtor.<br><br>Majestic Hills, LLC,<br>   Movant,<br>   v.<br>Mutual Benefit Insurance Company,<br>   Respondent.<br><br>Majestic Hills, LLC,<br>   Movant,<br>   v.<br><br>Westfield Insurance Company,<br>   Respondent. | **Case No.** 20-21595-GLT<br><br>**Chapter 11**<br><br>**Hearing Date:** 06/18/20 @ 10:00 a.m.<br><br>**Response Due:** 06/08/20<br><br>**Document No. 10 and 12** |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 8, 2020, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will provide notification of such filing to all registered users. In addition, the following named parties were served via electronic mail in accordance with Fed.R.Bankr.P. 3020(b)(1):

Donald R. Calaiaro, Esquire
Calaiaro Valencik
938 Penn Avenue, Suite 501
Pittsburgh, PA 15222
Email: dcalaiaro@c-vlaw.com
*(Attorney for Debtor Majestic Hills, LLC)*

United States Trustee
Larry E. Wahlquist, Esquire
U.S. Trustee Program/Department of Justice
1001 Liberty Avenue, Suite 970
Pittsburgh, PA 15222
Email: larry.e.wahlquist@usdoj.gov

/s/ Samuel H. Simon
Samuel H. Simon